Jeremy E. Deutsch
Krista Bolles
Kathryn A. Johnson (pro hac vice)
51 West 52nd Street
New York, NY 10019

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & MCLENNAN COMPANIES INC., MARSH USA LLC, MERCER (US) LLC, AND MARSH & MCLENNAN AGENCY LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>HOWDEN US SERVICES, LLC, HOWDEN US SPECIALTY, LLC, ALFRED GRONOVIUS, ANDREA AMODEO, CARLOS SERIO, GIOVANNI PEREZ, JANETTE WILCOX, NATHAN COLLINS, RICHARD LENNERTH,<br><br>                    Defendants. | No. 1:25-CV-9130 (JLR)<br><br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT/INTRODUCTION ..................................................................1

LEGAL STANDARD................................................................................................................3

ARGUMENT..............................................................................................................................5

I.  Counts Seven and Eight for Trade Secret Misappropriation Under the DTSA and
    the FUTSA Should be Dismissed ........................................................................................5

    A  Plaintiffs Fail to Appropriately Identify Any Trade Secrets....................................6

II.  This Court Lacks Subject Matter Jurisdiction ..................................................................15

    A  Plaintiffs Fail to Allege Subject Matter Jurisdiction Under the DTSA .................15

    B  Plaintiffs Fail to Allege Any Grounds for Subject Matter Jurisdiction for
        Subject Matter Jurisdiction for Amodeo...............................................................18

    C  State Law Claims Predominate and There is No Reason for this Court to
        Maintain Supplemental Jurisdiction ......................................................................19

III.  Count Ten for Tortious Interference with Business Relationships Should Be
      Dismissed...........................................................................................................................21

IV.  Count Eleven for Conspiracy Should Be Dismissed .........................................................23

V.  The Claims for Faithless Servant, Unfair Competition and Conversion Should Be
    Dismissed..........................................................................................................................244

VI.  The Claims for Aiding and Abetting Breaches of Fiduciary Duty and Breach of
     Loyalty Should be Dismissed ...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Seven, LLC v. Martinez*,
  2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ....................................................................12, 14

*Agudelo v. Recovo Mortg. Mgmt. LLC*,
  2025 WL 1674486 (E.D.N.Y. June 13, 2025) .............................................................................4

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
  2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024) ................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................4

*AutoExpo Ent. Inc. v. Elyahou*,
  2025 WL 2637493 (E.D.N.Y. Sept. 12, 2025) ...........................................................7, 12, 14

*Barton v. Ne. Transp., Inc.*,
  2022 WL 203593 (S.D.N.Y. Jan. 24, 2022) .............................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................4

*Brown v. HP Inc.*,
  2019 WL 5551864 (S.D.N.Y. Oct. 25, 2019) ....................................................................15, 16

*Brown v. Keene*,
  33 U.S. 112, 8 L. Ed. 885 (1834)..............................................................................................16

*Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*,
  632 F. Supp. 3d 471 (S.D.N.Y. 2022).................................................................................22, 23

*Chenming Holdings (Hong Kong) Ltd. v. Sklarov*,
  2025 WL 2695281 (S.D.N.Y. Sept. 22, 2025).........................................................................16

*Compulife Software, Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) ..................................................................................................6

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.*,
  2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024).............................................................9, 11, 25

*Dewitt Stern Grp. v. Eisenberg*,
  257 F. Supp. 3d 542 (S.D.N.Y. 2017).......................................................................................12

4911-5536-8321\5

*Dunlop v. City of New York*,
  2006 WL 2853972 (S.D.N.Y. 2006) ........................................................................................20

*Elsevier Inc. v. Dr. Evidence, LLC*,
  2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .............................................................................8

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
  2013 WL 311084 (S.D.N.Y. Jan. 25, 2013) ...........................................................................16

*Garvey v. Face of Beauty, LLC*,
  634 F. Supp. 3d 84 (S.D.N.Y. 2022) ...........................................................................13, 14, 26

*GMH Cap. Partners v. Fitts*,
  2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) .....................................................10, 11, 13, 14

*Hatteras Enters., Inc. v. Forsythe Cosmetic. Grp., Ltd.*,
  2019 WL 9443845 (E.D.N.Y. Jan. 14, 2019) .........................................................................27

*Iacovacci v. Brevet Holdings, LLC*,
  437 F. Supp. 3d 367 (S.D.N.Y. 2020).......................................................................................5

*Intrepid Fin. Partners, LLC v. Fernandez*,
  2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ......................................................................7, 8

*iOttie Inc. v. HSM Co. Ltd*,
  2025 WL 1905814 (S.D.N.Y. July 9, 2025) ...........................................................................22

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2nd Cir. 2006)...........................................................................................23, 24

*Kleiman v. O'Neill*,
  2008 WL 5582453 (E.D.N.Y. Dec. 30, 2008) .......................................................................21

*Lawrence v. NYC Med. Prac., P.C.*,
  2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019)............................................................................6

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011)...............................................................................25, 26

*McCarthy v. Butler Tibbetts, LLC*,
  2021 WL 5450270 (S.D.N.Y. November 19, 2021)................................................................17

*Mumin v. Uber Techs., Inc.*,
  239 F. Supp. 3d 507 (E.D.N.Y. 2017) ....................................................................................22

*Nachshen v. 53-55 W. 21st Owner LLC*,
  2022 WL 704782 (S.D.N.Y. Mar. 9, 2022) ............................................................................18

*Nano Dimension Ltd. v. Murchinson Ltd.*,
    681 F. Supp. 3d 168 (S.D.N.Y. 2023)..................................................................17, 18

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
    2025 WL 2717309 (S.D.N.Y. Sept. 24, 2025)...........................................................................4

*Padula v. Dinsmore*,
    2025 WL 950722 (D. Conn. Mar. 28, 2025) ...........................................................................18

*Parrish v. Marsh & McLennan Cos., Inc.*,
    No. 654430/2025 (N.Y. Sup. Ct. July 27, 2025) ...................................................................18

*Patrick Cap. Markets, LLC v. Ascend Real Est. Partners, L.P.*,
    2022 WL 294638 (S.D.N.Y. Feb. 1, 2022).............................................................................17

*Pauwels v. Deloitte LLP*,
    No. 19-CV-2313 (RA), 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) ....................................13

*People v. Thain*,
    874 N.Y.S.2d 896 (Sup. Ct. N.Y. Co. 2009) .........................................................................14

*Philip Morris, Inc. v. Heinrich*,
    1998 WL 122714 (S.D.N.Y. Mar. 19, 1998) .........................................................................21

*Plasticware v. Flint Hills Res.*,
    852 F. Supp. 2d 398 (S.D.N.Y. 2012)....................................................................................23

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*,
    2025 WL 1827274 (S.D.N.Y. July 2, 2025) ....................................................................10, 11

*Rather v. CBS Corp.*,
    886 N.Y.S.2d 121 (1st Dept. 2009).........................................................................................26

*Ray Legal Consulting Grp. v. DiJoseph*,
    37 F. Supp. 3d 704 (S.D.N.Y. 2014)................................................................................23, 24

*Rise Dev. Partners, LLC v. Signature Bank*,
    2024 WL 4555758 (S.D.N.Y. Oct. 22, 2024) ........................................................................27

*Roche Freedman LLP v. Cyrulnik*,
    703 F. Supp. 3d 404 (S.D.N.Y. 2023)....................................................................................24

*Sapir v. Rosen*,
    2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021).......................................................9, 11, 12, 13

*Schroeder v. Pinterest Inc.*,
    17 N.Y.3d 678 (1st Dept. 2015).............................................................................................26

*Seagrape Invs. LLC v. Tuzman*,
   2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020)..........................................................................26

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
   68 F.4th 792 (2d Cir. 2023) .......................................................................................................6

*Taboola, Inc. v. Ezoic Inc.*,
   2021 WL 2041639 (S.D.N.Y. May 21, 2021) ...................................................................22, 23

*Taxinet, Corp. v. Leon*,
   2018 WL 3405243 (S.D. Fla. July 12, 2018)............................................................................15

*UBS Sec. LLC v. Dondero*,
   705 F. Supp. 3d 156(S.D.N.Y. 2023)........................................................................................21

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 ..............................................................................................................................21

*United States Liab. Ins. Co. v. M Remodeling Corp.*,
   444 F. Supp. 3d 408 (E.D.N.Y. 2020) .....................................................................................16

*Vital Pharms., Inc. v. Alfieri*,
   2021 WL 9098064 (S.D. Fla. July 2, 2021)..............................................................................15

*VVIG, Inc. v. Alvarez*,
   2019 WL 5063441 (S.D. Fla. Oct. 9, 2019)..............................................................................15

*Wynston Hill Cap., LLC v. Crane*,
   628 F. Supp. 3d 540 (S.D.N.Y. 2022)................................................................................15, 17

*Yong Qin Luo v. Mikel*,
   625 F.3d 772 (2d Cir. 2010)..............................................................................................15, 16

*Zabit v. Brandometry, LLC*,
   540 F. Supp. 3d 412 (S.D.N.Y. 2021)........................................................................................6

**Statutes**

18 U.S.C. § 1836................................................................................................................. passim

28 U.S.C. §1333.......................................................................................................................16

Fla. Stat. §688.001, et seq. ................................................................................................ passim

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .........................................................................................1

Federal Rules of Civil Procedure 12(b)(6)...............................................................................1, 3, 4

Defendants Andrea Amodeo ("Amodeo"), Carlos Serio ("Serio"), Giovanni Perez ("Perez"), Janette Wilcox ("Wilcox"), Nathan Collins ("Collins"), and Richard Lennerth ("Lennerth", collectively with Amodeo, Serio, Perez, Wilcox, and Collins, the "Moving Individual Defendants") submit this memorandum of law in support of their Motion to Dismiss Plaintiff Marsh & McLennan Companies Inc. ("MMC"), Marsh USA LLC ("Marsh"), Mercer (US) LLC ("Mercer") and Marsh & McLennan Agency LLC's ("MMA", collectively with MMC, Marsh, and Mercer, "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT/INTRODUCTION

This is the latest in an expanding series of complaints filed by Plaintiffs after a group of their former employees left to take better opportunities with Howden.  This action was originally brought only against the individual defendants, but Plaintiffs amended their complaint on or about November 10, 2025, in order to add Howden US Services, LLC and Howden US Specialty, LLC (the "Howden Defendants") as additional defendants.  In doing so, they also added a claim for purported violation of Defend Trade Secrets Act (the "DTSA") in order to manufacture federal question jurisdiction, without which the FAC would fall upon the addition of the non-diverse Howden Defendants.  However, the FAC, is conclusory, engages in group pleading, and ultimately, fails to allege a proper basis for this Court to assert subject matter jurisdiction over the claims alleged against the Moving Individual Defendants.

The claims for violation of DTSA and Florida State Trade Secret Acts ("FUTSA") should be dismissed because they contain conclusory allegations that fail to establish causes of action

---

[1] The Moving Individual Defendants respectfully refer the Court to their contemporaneously filed opposition to the Plaintiffs' application for a preliminary injunction for further context in this matter.

1

for which relief can be granted.  Specifically:  Counts Seven and Eight (Trade Secret

Misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836) and Trade Secret

Misappropriation under the Florida Uniform Trade Secrets Act (Fla. Stat. §688.001, et seq.)

against Serio, Perez, Wilcox, Collins, and Lennerth) fail because the FAC does not set forth facts

alleging with the appropriate level of specificity to apprise Defendants of what trade secrets they

supposedly misappropriated.

      Plaintiffs assert that this Court has jurisdiction over the Defendants solely on the basis

that "Marsh McLennan asserts a claim under the Defend Trade Secrets Act" (FAC at ¶ 51).

Once the DTSA claim is dismissed there is no basis for this Court to have subject matter

jurisdiction over this action, and the remaining pendant state law claims against the Moving

Individual Defendants should also be dismissed.  Under any circumstances, Defendant Amodeo

is not alleged to have violated the DTSA at all, and as such, Plaintiffs have not alleged any basis

for subject matter jurisdiction over her in this action where state law claims predominate, and the

FAC should be dismissed against her.

      Additionally, many of Plaintiffs' other claims against the Individual Defendants are

fatally flawed and should be dismissed for failure to state a claim upon which relief can be

granted.  For example:

> • Count Ten (Tortious Interference with Business Relationships) (FAC at ¶ ¶ 284-
>
>    91) against all Moving Individual Defendants fails because Plaintiffs do not allege
>
>    facts with the appropriate level of specificity and in a non-conclusory way that
>
>    support the existence and breach of any valid enforceable contract with which the
>
>    Moving Individual Defendants could have interfered.  Moreover, the hypothetical
>
>    contracts at issue could only be at-will contracts which by their nature are

2

incapable of being tortiously interfered with.  Even if such contracts were capable

of being tortiously interfered with, Plaintiffs do not allege that the Moving

Individual Defendants engaged in conduct directed towards third parties that

caused them to breach their contracts with Plaintiffs.

- Count Eleven (Conspiracy) (FAC at ¶ ¶ 292-97) against all Moving Individual
  Defendants also fails because conspiracy is not a standalone tort and the only tort
  Plaintiffs allege that the Moving Individual Defendants purportedly conspired to
  commit was "interfere[nce] with Marsh McLennan's business relationships and
  contracts". (FAC at ¶ 293).  However, since the claim for tortious interference
  with business relationships fails so must the conspiracy claim.

- Counts Four (Faithless Servant) (FAC at ¶¶ 210-16), Five (Unfair Competition)
  (FAC at ¶¶ 217-26), and Six (Conversion)(FAC at ¶ ¶ 227-35) fail for a host of
  reasons including because they are duplicative of the breaches of contract claims.

- Counts Twelve (Aiding and Abetting Breach of Fiduciary Duty)(FAC at ¶ ¶ 298-
  304) and Thirteen (Aiding and Abetting Breach of Loyalty)(FAC at ¶ ¶ 305-11)
  against all Moving Individual Defendants fail because they are conclusory.

While Plaintiffs would have the Court believe that the Moving Individual Defendants

have misappropriated and used Plaintiffs' purported trade secrets to take customers and solicit

Plaintiffs' employees, the level of actual detail about the alleged activities of the Moving

Individual Defendants is sorely lacking.  The FAC should be dismissed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if the

plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are "merely consistent with" liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 556, 570. Pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading that offers merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to satisfy the pleading requirements. *Iqbal*, 556 U.S. at 678. Moreover, a pleading may not rely on impermissible group pleading to set forth its allegations against multiple parties. *Agudelo v. Recovo Mortg. Mgmt. LLC*, 2025 WL 1674486, at *17 (E.D.N.Y. June 13, 2025) ("To sum up, the TAC is a trackless forest of allegations reflecting an effort to throw everything against the wall and see what sticks. Its pervasive inconsistencies and impermissible group pleading, particularly given the breadth of the new claims and parties, prevent the Moving Defendants from reasonably understanding the theories of liability asserted against them. It is not the job of the Moving Defendants or the Court to guess at the basis for the Plaintiffs' claims or to try to stitch together a coherent theory on the Plaintiffs' behalf." (citation modified)); *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 2025 WL 2717309, at *18 (S.D.N.Y. Sept. 24, 2025) ( "[I]t is well-established in this Circuit

that plaintiffs cannot simply lump defendants together for pleading purposes and that Rule 8 is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.").

## ARGUMENT

## I.    Counts Seven and Eight for Trade Secret Misappropriation Under the DTSA and the FUTSA Should be Dismissed

Plaintiffs' DTSA and FUTSA claims against Serio, Perez, Wilcox, Collins and Lennerth should be dismissed because: (1) Plaintiffs failed to identify any trade secrets with the requisite level of particularity, and as such (2) Plaintiffs failed to allege that the Moving Individual Defendants misappropriated any supposed trade secret.[2]

The DTSA provides a federal claim for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "To state a claim for trade secret misappropriation under this statute, a plaintiff must plausibly allege that '(i) it possessed a trade secret, and (ii) the defendant misappropriated the trade secret.'" *Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *2 (S.D.N.Y. Mar. 25, 2024) (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022)). The elements required to prove a violation of the DTSA and trade secret misappropriation under New York common law are "fundamentally the same," and "[d]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). Likewise, claims under DTSA and FUTSA mirror each other and an analysis of the elements under the one is substantially equivalent to an

---

[2] The FAC does not assert a cause of action for violation of DTSA or FUTSA against Amodeo.

analysis under the other such that separate analysis for the two claims is not required. *Compulife Software, Inc. v. Newman,* 959 F.3d 1288, 1311, n. 13 (11th Cir. 2020).

### A    Plaintiffs Fail to Appropriately Identify Any Trade Secrets

A DTSA plaintiff "bears the burden of identifying a purported trade secret with sufficient specificity.  The specificity requirement place[s] a defendant on notice of the bases for the claim being made against it, and allows a factfinder to determine whether certain information is, in fact, a trade secret."  *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 68 F.4th 792, 800–01 (2d Cir. 2023)(alternation in original) (internal quotation marks and citations omitted); *see also Aira Jewels*, 2024 WL 1255798, at *4 ("[A]lthough there is no heightened pleading requirement on actions brought under the DTSA, . . . district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." (alterations in original) (citation modified)).  While the plaintiff "has no obligation to reveal its secrets in the complaint simply to prove that they exist, that does not mean a party can get away with nebulous descriptions at the highest level of generality."  *Aira Jewels*, 2024 WL 1255798, at *4 (internal quotations omitted); *see also Lawrence v. NYC Med. Prac., P.C.*,  2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) ("The general, unadorned allegations . . . do not sufficiently allege the existence of a trade secret protected by the DTSA."); *Zabit v. Brandometry, LLC,* 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) ("While . . . the Second Circuit has [not] expressly required trade secrets to be identified with any particular degree of specificity, it is evident that a 'vague and indefinite' piece of information cannot be protected as a trade secret." (quoting *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017)).  "[A] complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation."  *Aira Jewels*,

6

2024 WL 1255798, at *4 (internal quotation marks and citations omitted).  Instead, "[t]he pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret."  *Id.* (quoting *Garvey v. Face of Beauty, LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022) (internal quotation marks omitted)).

Plaintiffs only allege purported "trade secrets" in terms of general categories of data or information without any details to define them with sufficient specificity to allow the Court or the Moving Individual Defendants to determine whether an actual trade secret exists or not.  At its most general, the FAC alleges that the purported trade secrets include "compilations of client relationship data, pricing and revenue structures, and internal trainings and strategic documents" (FAC at ¶ 247).  This is clearly insufficient.  *AutoExpo Ent. Inc. v. Elyahou*, 2025 WL 2637493, at *12 (E.D.N.Y. Sept. 12, 2025) ("[T]he Court concludes that Plaintiffs fail to plausibly support the existence of a trade secret. Despite its lengthy allegations about Defendants' conduct, the [FAC] provides little more than one sentence specifying exactly what it claims to be trade secrets."); *Intrepid Fin. Partners, LLC v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Here, Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords Intrepid economic value such that it should be deemed a trade secret.").  Even at its most expansive, the FAC alleges that their purported "trade secrets" consist of:

a. "Compilations of documents containing binders, policies, claim histories, renewal terms, premiums, commission structures, risk analyses, and coverage details across a client's business."  (FAC at ¶ 71(a));

7

b. "Lists of clients with associated revenue, renewal periods and status, fee and commission structures, and detailed contact information and notes developed over time at significant cost." (FAC at ¶ 71(b));

c. "Presentations and models reflecting Marsh McLennan's client, carrier, and partner-specific strategies, placement approaches, and coordinated growth plans by industry." (FAC at ¶ 71(c));

d. "[Internal] Trainings that provide detailed information about how Marsh McLennan operates its business, including detailed processes for onboarding clients, preparing and managing renewals, and delivering Marsh McLennan's service model." (FAC at ¶ 71(d)); and

e. "[C]ompendia of employment-related information for Marsh McLennan's employees, including information on compensation, client relationships, and performance data." (FAC at ¶ 71(e));

This too provides insufficient factual specificity to support a claim for violation of the DTSA. *Intrepid*, 2020 WL 7774478, at *4 ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function."); *Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("While it is not necessary to disclose every detail of an alleged trade secret in a complaint, DRE could have explained that its interpretation of data or process to assess the quality of evidence relies on a specific, proprietary algorithm developed at a certain time and which no one else owns. Alternatively, DRE could have filed a description of the alleged trade secrets under seal. While DRE need not plead the trade secret with specificity in the complaint, it must do more

8

than simply list general categories of information. If that were not the case, then any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret." (citation modified)).  Merely alleging vague and general descriptions in the hopes of hiding behind vague and general concepts does not suffice to state a viable claim under the DTSA:

> If Plaintiffs' strategy was to use as broad a vocabulary as possible in the hopes that some terminology would hit upon a trade secret definition, this strategy backfired, because it prevents Defendants and the Court from meaningfully discerning the protectability of specific documents or information and the uniqueness of their compilation. *See Sit-Up Ltd.*, 2008 WL 463884, at \*10.

> Presented with a haystack of items in which potential trade secrets may lurk, the Court declines Plaintiffs' invitation to go searching for the theoretical needle.

*Sapir v. Rosen*, 2021 WL 4482277, at \*7 (S.D.N.Y. Sept. 30, 2021).

Most tellingly, and fatally for the DTSA claim, Plaintiffs fail to differentiate, and repeatedly conflate, the concepts of trade secrets with that of mere confidential information which is fatal to being able to determine whether a particular item is a trade secret or not.  *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*,  2024 WL 4665114, at \*9 (S.D.N.Y. Sept. 25, 2024) ("Plaintiff's insistence on labeling all the information purportedly shared with XOP Defendants as both "confidential" and "trade secrets" does not transmute the status of the information such that it receives trade secret protections); S*apir*, 2021 WL 4482277, at \*6 (S.D.N.Y. Sept. 30, 2021) ("Plaintiffs' heavy reliance on the 'and/or' construction, conflates the concept of a trade secret with confidential information." (internal citations and punctuation omitted)).  Indeed, on no less than 30 separate occasions, the FAC uses the conflated terms, "confidential information and trade secrets", or "confidential information and/or trade secrets".  (FAC at ¶¶ 1,11,13, 16, 69-70, 73-75, 81-86, 91, 93,, 114-15, 144-46, 242, 261, 277, 301, and 308).  The FAC uses this conflated formulation because it is the same conflated formulation that is used in the various "Confidentiality

9

Agreements" that the Moving Individual Defendants are alleged to have entered into with Marsh. Indeed, the FAC provides no reasonable way to differentiate between the vague and general categories asserted as "trade secrets" and the vague and general categories that the "Confidentiality Agreements" define as "Confidential Information and Trade Secrets". This is demonstrated by the FAC's failure to differentiate between Plaintiffs' purported "trade secrets" (purportedly giving rise to claims under the DTSA) (FAC at ¶246), and Plaintiffs' purported "confidential information" (purportedly giving rise to claims under breach of the various Confidentiality Agreements) which the FAC defines as "including client files, personnel information, strategy documents, financial information, policy documents, quotes, proposals, and strategy meeting agenda" (FAC at ¶ 201), and as such the DTSA claim is fatally deficient. *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *8 (S.D.N.Y. Mar. 28, 2025) ("Here, GMH has not described the alleged trade secrets with sufficient specificity such that their protectability can be assessed, and instead relies on broad categories of information which it refers to interchangeably as both trade secrets and confidential information throughout the complaint. The alleged trade secrets include its confidential communications with PAC, its strategic vision for the acquisition, its financial estimates, potential equity sources, site-visit reports, market analysis, university research, borrowing needs, pricing practices, techniques, sales methods, marketing strategies, return on investment calculations, and voluminous proprietary work product as to how the deal to acquire the PAC Portfolio could be closed and then managed efficiently in subsequent years. Notably, this is the same 'confidential information' that GMH alleges was disclosed in breach of the NDA, however, GMH does not identify any specific materials or documents or explain why these categories of information are trade secrets." (citation modified). However, "confidential materials are not synonymous with trade secrets." *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, 2025 WL 1827274, at *17

10

(S.D.N.Y. July 2, 2025); *Sapir*, 2021 WL 4482277, at *6. The conflation of the two concepts "does not assist the Court in discerning which subsets of this universe of documents are alleged to be trade secrets . . . . [and] is fatal to Plaintiffs' claim [because] the Court cannot meaningfully assess the protectability of the documents described in the Complaint without first knowing which of the documents must be assessed for that protectability." *Sapir*, 2021 WL 4482277, at *6, *see also GMH*, 2025 WL 950674, at *8; and *Converged Compliance*, 2024 WL 4665114, at *9 ("Plaintiff has failed to plead which of these numerous categories of documents they describe in their complaint are trade secrets—as opposed to mere confidential or proprietary information. . . . Plaintiff inconsistently refers to such information as 'confidential information,' 'intellectual property,' and 'trade secrets,' conflating the concepts." (citation modified)).

Finally, even if the vague, general and conflated descriptions of the purported "trade secrets" were to contain sufficient detail, and they do not, most of the categories of documents would not merit trade secret protection under the DTSA because they were not secret. *Prysm*, 2025 WL 1827274, at *17 ("Courts dismiss trade secrets claims when the alleged trade secrets are not, in fact, secret."). The FAC alleges that Plaintiffs' "Client Folders" are shared "with third parties on a need-to-know basis (for example, when soliciting bids for insurance quotes)" (FAC at ¶ 71(a)). There is no allegation as to who those third parties are, how many third parties receive that information, or whether there are any contractual protections in place with those third parties, and as such the "Client Folders" are not entitled to trade secret protection. *Prysm*, 2025 WL 1827274, at *17 ("Generally, information is not afforded trade secret protection if the information has been disclosed to others").

Likewise, the data identified as Plaintiffs' "Compilations of Client Relationship Data and Account Intelligence" (FAC at ¶ 71(b)) are all either information contained in Plaintiffs' contracts

with its clients or were information known to Plaintiffs' clients. *See, e.g., Dewitt Stern Grp. v. Eisenberg*, 257 F. Supp. 3d 542, 582 (S.D.N.Y. 2017) ("[I]nsurance account information such as policy information, expiration dates, terms and conditions, and pricing all belong to clients, not brokers."). There is no allegation in the FAC that the clients were required to protect the secrecy of such information. As such the "Client Relationship Data and Account Intelligence" information does not qualify for trade secret protection. *Sapir*, 2021 WL 4482277, at *6 ("Yet another deficiency to Plaintiffs' trade secret allegations is that many of the documents listed in the Complaint—including all the loans, agreements, and other contracts—are documents that were necessarily shared with at least one other party. Disclosing a trade secret to others who are under no obligation to protect the confidentiality of the information ultimately extinguishes that property right. Indeed, such documents could not have independent economic value, actual or potential, without being known by another person, namely, the other party or parties to the contract." (citation modified)).    Moreover, information concerning customer lists, contact information, customer preferences, customer pricing and revenues and similar internal business information without more specific factual information alleged to demonstrate that information was not known or discoverable within the industry or to the public, or that the pricing, revenues, fees and commissions are based on proprietary formula or algorithm, do not rise to the level of a trade secret under any circumstances. *AutoExpo*, 2025 WL 2637493, at *12 ("[S]uch information is generally deemed to be a compilation of otherwise publicly available information and, therefore, a plaintiff seeking trade secret protection for this information must demonstrate a unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." (citation modified)); *Aira*, 2024 WL 1255798, at *4-5; *24 Seven, LLC v. Martinez*, 2021 WL 276654, at *7–8 (S.D.N.Y. Jan. 26, 2021).

For the same reasons, Plaintiffs' "Client and Partnership Objectives and Profitability 'Playbooks'" (FAC at ¶ 71(c)) which allegedly contain information on "Marsh McLennan's existing business and strategy to grow its business" would likewise not qualify for trade secret protection because it is information that is known to and shared with Plaintiffs' clients and partners. *Sapir*, 2021 WL 4482277, at *6 ("Given the fact that many of the documents described in Plaintiffs' Complaint were, by definition, shared with other parties, Plaintiffs' bare assertion that these documents are protected trade secrets is implausible—whether or not they were also stored on a secure database or governed by confidentiality agreements. *Cf. Pauwels v. Deloitte LLP*, No. 19-CV-2313 (RA), 2020 WL 818742, at *5 (S.D.N.Y. Feb. 19, 2020) (plaintiff did not plead existence of trade secrets when he shared information with a third party without alleging a 'formal agreement' with that third party regarding the information's confidentiality or any limitations on who within or outside the third-party organization could see the information)."). Also, marketing documents and documents concerning the intricacies of an internal business do not generally rise to the level of a trade secret. *Aira*, 2024 WL 1255798, at *4-5; *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 97 (S.D.N.Y. 2022). Other than the conclusory allegation that this information provides economic value because it is not known to others (FAC at ¶ 71(c)), Plaintiffs do not allege plausible facts to support their assertion that this information cannot be duplicated from public sources, or that it is based on proprietary formulas. Plaintiffs also fail to plausibly allege how such information derives independent economic value from not being known. They therefore fail to sufficiently allege that this class of information is a trade secret. *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *9 (S.D.N.Y. Mar. 28, 2025) ("GMH also repeats the language of the DTSA, alleging that its 'trade secret information derives independent economic value from not being generally known to the public and not being readily ascertainable through proper means by others

13

who could obtain economic value from the disclosure or use of the information.' However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (quoting Iqbal, 556 U.S. at 678)(citation omitted)); *Aira*, 2024 WL 1255798, at *5; *Garvey*, 634 F. Supp. 3d at 97 ("Defendants' bare-bones pleading is bereft of non-conclusory allegations that could demonstrate that its customer lists, pricing, and other general business information are trade secrets.").

Plaintiffs do not sufficiently allege that their "Internal Training Documents" (FAC at ¶ 71(d)) are trade secrets. Plaintiffs have not alleged sufficient facts to even allow this Court to understand of what the nature of such training materials actually is or how documents describe how Marsh employees should interact with current and prospective clients rise to the level of a trade secret. *24 Seven*, 2021 WL 276654, at *9 ("Plaintiff fails to allege facts that support a determination or inference that any of the information in these [employee training] materials warrants trade secret protection."); *see also*, *GMH*, 2025 WL 950674, at *9; *Garvey*, 634 F. Supp. 3d at 97.

Finally, "Compendia of Employment Information," which Plaintiffs allege consists of "employment-related information for Marsh McLennan's employees, including information on compensation, client relationships, and performance data" (FAC at ¶ 71(e)) equally do not qualify as trade secrets. Such information is known to Plaintiffs' employees, and Plaintiffs do not allege that their employees generally are prohibited from disclosing such information to third parties. *AutoExpo*, 2025 WL 2637493, at *13; *24 Seven,*2021 WL 276654, at *7–8. This is especially true for employee compensation. *People v. Thain*, 874 N.Y.S.2d 896, 904 (Sup. Ct. N.Y. Co. 2009) (Holding employee compensation information is not a trade secret because "there is no evidence that the intervenors have ever taken measures to prevent employees from sharing compensation

information with third parties or to enforce their purported privacy policies, either with respect to individual compensation or to employee compensation in the aggregate. . . . The employees can have had no reasonable expectation of privacy in this information, when they themselves are free to share it with third parties, and Bank of America's own privacy policy states that this information may be shared with the government.").[3]

Plaintiffs fail to sufficiently allege the existence of protectible trade secrets and thus the DTSA claims should be dismissed. *Aira*, 2024 WL 1255798, at *6. For the same reasons, Plaintiffs' claims under FUTSA must also be dismissed. *Vital Pharms., Inc. v. Alfieri*, 2021 WL 9098064, at *4–5 (S.D. Fla. July 2, 2021); *VVIG, Inc. v. Alvarez*, 2019 WL 5063441, at *3-4 (S.D. Fla. Oct. 9, 2019); *Taxinet, Corp. v. Leon*, 2018 WL 3405243, at *3 (S.D. Fla. July 12, 2018).

## II.    This Court Lacks Subject Matter Jurisdiction

### A    Plaintiffs Fail to Allege Subject Matter Jurisdiction Under the DTSA

Federal District Courts are courts of limited subject matter jurisdiction. *Wynston Hill Cap., LLC v. Crane*, 628 F. Supp. 3d 540, 544–45 (S.D.N.Y. 2022). A party can generally invoke that jurisdiction in one of two ways: federal question jurisdiction which involves suits arising under federal law; or diversity jurisdiction for suits where the amount in controversy exceeds $75,000 and the litigants are citizens of different States. *Id*. A Plaintiff must allege the existence and basis for subject matter jurisdiction in the complaint. *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010); *Brown v. HP Inc.*, 2019 WL 5551864, at *2 (S.D.N.Y. Oct. 25, 2019). Where the District Court lacks jurisdiction, it lacks authority to adjudicate the claims, and it must dismiss the case

---

[3] The Confidentiality Agreements, which are integral to many of the claims asserted in the FAC such that they can be deemed as incorporated by reference therein, expressly provide that they do not prohibit the Moving Individual Defendants from "discussing [wages] with other employees, or with third parties who are not future employers or competitors of the Company." *See, e.g.,* Dkt.# 56-9 (Amodeo Confidentiality Agreement) § 3(a) (cited at FAC ▯ 11). Any information that Marsh allows its employees to share with third parties cannot constitute a trade secret.

before it. *Yong*, 625 F.3d at 775; *Chenming Holdings (Hong Kong) Ltd. v. Sklarov*, 2025 WL 2695281, at *5 (S.D.N.Y. Sept. 22, 2025).

Here, Plaintiffs allege only one ground for primary subject matter jurisdiction before this Court under federal question jurisdiction[4] arising from their DTSA claim. Plaintiffs assert supplemental jurisdiction for their many State law claims, which they allege form part of the same case or controversy as their federal DTSA claims (FAC at ¶ 51). However, as shown in the prior section, Plaintiffs' DTSA claims fail, and as such this Court lacks subject matter jurisdiction and should dismiss the case. *Aira*, 2024 WL 1255798, at *6; *Brown*, 2019 WL 5551864, at *2.

Plaintiffs do not allege diversity jurisdiction in the FAC. *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 411 (E.D.N.Y. 2020) ("[T]he Supreme Court made it clear that a litigant cannot gloss over the facts relating to citizenship and invoke the federal forum. If the litigant cannot find a definitive basis for alleging the citizenship of each defendant, then the case belongs in state court. As Chief Justice Marshall stated, 'the averment of jurisdiction shall be positive, [and] the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred, argumentatively, from its averments.' *Brown v. Keene*, 33 U.S. 112, 114, 8 L. Ed. 885 (1834)." (alteration in original)). It is Plaintiffs' burden to affirmatively allege that complete diversity exists and failing to do so will lead to dismissal for lack of diversity jurisdiction. *Wynston Hill,* 628 F. Supp. 3d at 545.

---

[4] While the FAC sets out the DTSA as its basis for federal question jurisdiction, it also references "28 U.S.C. §1333" as the section of the Federal Code pursuant to which it is claiming such jurisdiction. (FAC at ¶ 51). It is assumed that this is a typographic error, and Plaintiffs intended to write "28 U.S.C. §1331," the Code section for federal question jurisdiction. In any event, 28 U.S.C. 1333 which vest original jurisdiction in federal districts courts for admiralty, maritime and prize ownership and condemnation cases, has no applicability to this case and Plaintiffs do not make out any such jurisdiction so even were it not an error, it does not provide a basis for jurisdiction here. *See generally, Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York,* 2013 WL 311084, at *1 (S.D.N.Y. Jan. 25, 2013).

Plaintiffs fail to sufficiently allege the existence of diversity jurisdiction. Plaintiffs allege that four parties are limited liability companies: Mercer, MMA, and both of the Howden Defendants. (FAC at ¶¶ 19-22). As to Mercer and MMA, it alleges no facts at all as to jurisdiction. *Id.* As to the Howden Defendants, Plaintiffs allege that they are Delaware formed limited liability companies and are affiliated with a company headquartered in London. *Id.* However, the state of formation for a limited liability company is not determinative of its citizenship for diversity jurisdiction purposes and, instead, the plaintiff is required to allege the citizenship of each member of the LLC to determine the LLC's citizenship in order to ascertain whether diversity jurisdiction exists.[5] *McCarthy v. Butler Tibbetts, LLC*, 2021 WL 5450270, at *1 (S.D.N.Y. November 19, 2021) ("[A] limited liability company takes the citizenship of each of its members"). Plaintiffs fail to adequately allege the existence of diversity jurisdiction because they do not allege the citizenship of the members of the various LLC parties. *Id.* at *2. Because the Court lacks both federal question and diversity jurisdiction, it must dismiss the case. *Wynston Hill*, 628 F. Supp. 3d at 545.

Given the lack of subject matter jurisdiction, this Court should decline to exercise supplemental jurisdiction over the remaining State law claims and the matter as a whole should be dismissed. *Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 193 (S.D.N.Y. 2023) ("A district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction. Courts consider the traditional values of judicial economy, convenience, fairness, and comity. Generally, where all federal-law claims are

---

[5] Likewise, if any of the members of the LLC are "themselves non-corporate entities, then a party must allege the identity and citizenship of their members, proceeding up the chain of ownership until the party has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC." *Patrick Cap. Markets, LLC v. Ascend Real Est. Partners, L.P.*, 2022 WL 294638, at *5 (S.D.N.Y. Feb. 1, 2022) (citation modified).

17

eliminated before trial, the balance of the factors will point toward declining to exercise jurisdiction over the remaining state-law claims.")); *Nachshen v. 53-55 W. 21st Owner LLC*, 2022 WL 704782, at *2 (S.D.N.Y. Mar. 9, 2022).

Given the early stage of this case, the existence of a pending New York State Court action in which Plaintiffs could assert their state law claim (*Parrish v. Marsh & McLennan Cos., Inc.,* No. 654430/2025 (N.Y. Sup. Ct. July 27, 2025), the deficient DTSA claim and the lack of subject matter jurisdiction, this Court should dismiss the state law claims. *Padula v. Dinsmore*, 2025 WL 950722, at *13 (D. Conn. Mar. 28, 2025); *Nano*, 681 F. Supp. 3d at 193 ("Here, the balance of factors weighs in favor of declining supplemental jurisdiction. Although the parties have submitted substantial filings in connection with the pending motions, the case is only at a nascent stage. No discovery has occurred, nor has the initial pretrial conference taken place. Moreover, the parties are litigating similar issues in other proceedings that predate this case. Accordingly, because the Court dismisses Plaintiff's Section 13(d) federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's non-federal claims." (citation modified)); *Aira*, 2024 WL 1255798, at *6.

**B   Plaintiffs Fail to Allege Any Grounds for Subject Matter Jurisdiction
for Subject Matter Jurisdiction for Amodeo**

Under any circumstances, Amodeo should be dismissed from this case for lack of subject matter jurisdiction.  Even presuming that the DTSA claim were viable, and it is not, Plaintiffs do not assert a claim against Amodeo under the DTSA. Plaintiffs only assert a DTSA claim against Moving Individual Defendants Serio, Perez, Wilcox, Collins and Lennerth (FAC at p. 67, Count Seven, ¶¶ 236-54).[6]  Thus, there are no federal claims alleged against Amodeo and no basis for

---

[6] Likewise, no claims are brought against Amodeo pursuant to FUTSA (FAC at pg. 70, Count Eight, ¶¶ 255-73).

federal question jurisdiction.  Federal question jurisdiction does not exist with respect to Amodeo, and diversity jurisdiction does not exist for the entirety of the action. The Court should dismiss all claims against Amodeo for lack of subject matter jurisdiction. *Barton v. Ne. Transp., Inc.*, 2022 WL 203593, at *9 (S.D.N.Y. Jan. 24, 2022) ("Absent diversity or federal question jurisdiction, no subject matter jurisdiction exists; accordingly, the Court must grant the Motion and dismiss the claims.").

### C   State Law Claims Predominate and There is No Reason for this Court to Maintain Supplemental Jurisdiction

Upon dismissing the sole federal DTSA claim, the Court should also dismiss the State law claims. Even if the DTSA claim were viable, and it is not, there is no basis for this Court to retain jurisdiction over this matter because the State law claims predominate over the DTSA claim.  It is apparent that the Plaintiffs added a DTSA claim to the FAC at the last minute in an effort to bring the Howden Defendants into this case, after Plaintiffs failed to obtain a preliminary injunction against the Howden Defendants in Delaware. There is a pre-existing case pending in New York State Court in which Plaintiffs could have asserted any of their claims.

The gravamen of all of Plaintiffs' claims, including the DTSA claims, rely on the same duties alleged in the State law claims for breaching the various contracts between the parties.  As previously set forth, the DTSA (and FUTSA) claims both conflate the concept of "confidential information" allegedly protected under the various confidentiality agreements with the notion of trade secrets (*see supra* at 9-11) and thus even if they were viable, and they are not, the essence of the DTSA claims and the essence of the State law claims for breach of the contract requiring non-disclosure of confidential information are the same (compare FAC breach of non-disclosure agreement claim (Count Three) at ¶¶ 199-201 with the DTSA claim (Count Seven), FAC at ¶¶ 246-47).  Likewise, the DTSA claim alleges that upon breaching the non-disclosure agreements,

19

the Defendants used that information to solicit Plaintiffs' clients and employees (FAC at ¶¶ 251, 253), which in itself, merely recapitulates the allegations of Plaintiffs state law claims for non-solicitation of employees (Count One), non-solicitation of clients (Count Two), breach of faithless servant doctrine (Count Four) stemming from solicitation of employees and clients and disclosure of confidential information (FAC at ¶ 214); unfair competition (Count Five) based on solicitation employees and clients and misuse of confidential information (FAC at ¶ 225); conversion (Count Six) based on misuse of confidential information (FAC at ¶¶ 231-34); tortious interference with business relationships (Count Ten) by soliciting clients (FAC at ¶ 288); conspiracy (Count Eleven) enacted by soliciting clients and employees and by misusing confidential information (FAC at ¶¶ 294-95); aiding and abetting breaches of fiduciary duty (Count Twelve) by soliciting employees and clients and misusing confidential information (FAC at ¶ 301); and aiding and abetting breaches of duty of loyalty (Count Thirteen) by soliciting employees and clients and misusing confidential information (FAC at ¶ 308).

Thus, even if the DTSA claim survived, and it should not, it is merely peripheral to the case. The State law claims are the heart of the case, and they predominate. *Dunlop v. City of New York*, 2006 WL 2853972, at \*5 (S.D.N.Y. 2006) ("[S]tate law claims predominate when the federal law claims are merely peripheral or cover a much narrower issue than the state law claims, or where the factual or legal analysis of the claims are unrelated."). Thus, in *Oneida Indian Nation v. Madison County*, all of plaintiff's federal claims were dismissed "with just one narrow exception;" the Second Circuit determined that, "even if the existence of one narrow surviving federal claim means that not all claims over which the district court has original jurisdiction have been dismissed, it has nonetheless become clear that the state-law claims now substantially predominate in this litigation." 665 F.3d 408, 439 (2d Cir. 2011) (citation

20

modified).  Citing to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727(1966), the Second Circuit explained that "[o]nce it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Oneida*, 665 F.3d at 439.  Indeed, "[t]o the extent that the state law claims are more complex or require more judicial resources to adjudicate, or are more salient in the case as a whole than the federal law claims, it can be fairly said that the state law claims predominate." *UBS Sec. LLC v. Dondero*, 705 F. Supp. 3d 156, 168(S.D.N.Y.  2023) (citation modified).  Such is the case here. Even if the DTSA claim were to survive, the Court should still dismiss this action in favor Plaintiffs pursuing their claims in the first-filed New York State case.[7]  *See Kleiman v. O'Neill*, 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008) (declining to exercise supplemental jurisdiction where the state law claims were identical to criminal matters being investigated in a different forum); *Philip Morris, Inc. v. Heinrich*, 1998 WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998) (declining to exercise supplemental jurisdiction over a state law claim where the claim in federal court was identical to the state law claim in another forum, the proceedings in that forum were further along, and bringing those claims to federal court would not "avoid inconsistent results from identical or similar evidence.").

### III.    Count Ten for Tortious Interference with Business Relationships Should Be Dismissed

In order to "state a claim for tortious interference under New York law, a plaintiff must allege (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or

---

[7] Plaintiffs attempt to make much of the Federal case against other defendants currently pending before Judge Daniels in the S.D.N.Y. However, Judge Daniels determined that these cases are not related. The Court should therefore not consider the case before Judge Daniels in deciding whether to retain this case after dismissal of this state law predominated matter. *See* Dkt. Nov. 4, 2025 – Nov. 7, 2025.

used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 482 (S.D.N.Y. 2022) (citation modified).

The first prong of this test requires that the Plaintiffs allege concrete business relationships with specific customers with which the Moving Individual Defendants have allegedly interfered. *iOttie Inc. v. HSM Co. Ltd*, 2025 WL 1905814, at *3-4 (S.D.N.Y. July 9, 2025). Plaintiffs do not allege any concrete business relationships or identify any specific clients or customers, and instead repeatedly use the generic phrases "contractual relationships" or "business relationships" with Marsh McClennan's "clients." (*See, e.g.*, FAC at ¶¶ 285-86). This type of generic language is insufficient, and the claim must be dismissed. *iOttie*, 2025 WL 1905814, at *3-4; *Camelot*, 632 F. Supp. 3d at 483; *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 535 (E.D.N.Y. 2017).[8]

Plaintiffs' allegations also fail the second prong. Plaintiffs only identify alleged conduct which Moving Individual Defendants purportedly directed towards Plaintiffs by way of violating the contracts and duties between Plaintiffs and Moving Individual Defendants. Plaintiffs do not allege conduct that was directed towards any of the purported customers or business relationships. (*See, e.g.*, FAC at ¶ 288). Plaintiffs fail to state a claim for tortious interference because they only identify conduct that was directed toward Plaintiffs. *Plasticware v. Flint Hills Res.*, 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012). To the extent that Plaintiffs are alleging that Moving Individual Defendants interfered with existing contractual relationships with Plaintiffs' clients, such allegation is also deficient because Plaintiffs fail to allege that any client breached

---

[8] A claim for tortious interference with existing contract requires the same level of specificity as to particular contracts and clients, and would similarly be dismissed. *Taboola, Inc. v. Ezoic Inc.*, 2021 WL 2041639, at *8 (S.D.N.Y. May 21, 2021)

22

its contract with Plaintiffs as a result of any interference by the Moving Individual Defendants. *Taboola, Inc. v. Ezoic Inc.*, 2021 WL 2041639, at *9 (S.D.N.Y. May 21, 2021).[9]  Finally, Plaintiffs fail to satisfy the third prong because all of the actions the Moving Individual Defendants allegedly took stem from their purported breaches of their contractual obligations not to solicit clients or to misuse Plaintiffs' confidential information (*see, e.g.,* FAC at ¶ 288). *Plasticware*, 852 F. Supp. 2d at 403.  The claims for tortious interference against Moving Individual Defendants should be dismissed.  *Camelot*, 632 F. Supp. 3d at 483-86; *Plasticware*, 852 F. Supp. 2d at 403-05.

## IV.    Count Eleven for Conspiracy Should Be Dismissed

Plaintiffs fail to state a claim for conspiracy because they do not allege an independent underlying tort which the Defendants allegedly "conspired" to commit. "New York does not recognize an independent tort of conspiracy."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006); *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 722 (S.D.N.Y. 2014). Here the only underlying tort Plaintiffs allege is that Defendants allegedly tortiously "interfere[d] with Marsh McLennan's business relationships and contracts" (FAC at ¶ 293). Because Plaintiffs fail to state a claim for tortious interference with business relationship and/or contract (*supra* at 21-23), their conspiracy claim also fails and should be dismissed.  *Kirch*, 449 F.3d at 401; *Roche Freedman LLP v. Cyrulnik*, 703 F. Supp. 3d 404, 425 (S.D.N.Y. 2023); *Ray Legal*, 37 F. Supp. 3d at 722-23.

---

[9] Indeed, there is nothing alleged in the FAC which would indicate that any client contracts that Plaintiffs had with their clients are anything but contracts terminable at will, which under New York law are incapable of being tortiously interfered with. *Taboola*, 2021 WL 2041639, at *8.

**V.    The Claims for Faithless Servant, Unfair Competition and Conversion Should Be Dismissed**

Plaintiffs assert claims against all of Plaintiffs' claims for breach of the faithless servant doctrine (Count Four), Unfair Competition (Count Five), and conversion (Count 6). Each of these claims should be dismissed for failure to state a claim.

Each of these claims is merely a recapitulation of Plaintiffs' claims for alleged breaches of contract and are duplicative of those claims and of each other. Plaintiffs allege the Moving Individual Defendants breached the faithless servant doctrine (Count Four) by allegedly soliciting employees and clients to leave Marsh McLennan (exactly what is alleged in Counts One and Two of the FAC respectively for Breaches of Contract for Non-Solicitation of Employees and Clients) and by disclosing Plaintiffs' confidential information to a competitor (exactly what is alleged in Count Three for Breach of the Non-Disclosure Agreement) (*compare* FAC at ¶ 214 with FAC at ¶¶ 172-73 [breach of non-solicitation of employees], 182-85 [breach of non-solicitation of clients], and 198-201 [breach of non-disclosure agreement]). As for the unfair competition claim, Plaintiffs allege that Moving Individual Defendants engaged in unfair competition by soliciting employees and clients, and by misusing (including allegedly deleting) confidential information. The unfair competition claim is duplicative of the contract claims (*compare* FAC at ¶¶ 219 [unfair competition by soliciting employees and clients] and 220-21 [unfair competition by taking documents] with 172-73 [breach of non-solicitation of employees], 182-85 [breach of non-solicitation of clients], and 198-201 [breach of non-disclosure agreement]). Under the conversion claim, Plaintiffs assert that the Moving Individual Defendants took (including by deletion) Plaintiffs' confidential information, again, duplicating the claims for breaches of contract (*compare* FAC at ¶¶ 228-32 with 172-73 [breach of non-solicitation of employees], 182-85 [breach of non-solicitation of clients], and 198-201 [breach of

24

non-disclosure agreement]).[10]  The conversion claim is egregious because Plaintiffs acknowledge specifically that the Moving Individual Defendants duty to return the complained of property specifically stems from their contractual obligations to Plaintiffs. (FAC at ¶ 233).  Where a contract governs the subject matter of a dispute between the parties, those claims are contractual in nature and cannot be recast as tort claims, as such, Plaintiffs' claims for faithless servant doctrine (Count Four), Unfair Competition (Count Five), and conversion (Count 6) should be dismissed as duplicative of the breach of contract claims.  *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *12 (S.D.N.Y. Sept. 25, 2024).

## VI.    The Claims for Aiding and Abetting Breaches of Fiduciary Duty and Breach of Loyalty Should be Dismissed

Plaintiffs have failed to state a claim for aiding and abetting either a breach of fiduciary duty or a breach of loyalty. "[A] claim of aiding and abetting breach of fiduciary duty has three elements: (1) existence of a breach of fiduciary obligations, of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damages as a result of the breach." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).  Plaintiffs are required "to allege facts sufficient to establish that the alleged aider and abettor knowingly participated in the alleged breach of fiduciary duty." *Id.*  "Additionally, the aider and abettor must provide substantial assistance to the primary violator. Under New York law, substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Seagrape Invs. LLC v. Tuzman*, 2020 WL 5751232, at *22 (S.D.N.Y. Sept. 25, 2020) (citation modified). Under New York law, "a plaintiff must plead

---

[10] The claims for breach of the faithless servant doctrine, unfair competition and conversion not only duplicate the contract claims but each other as well.

this cause of action with particularity; conclusory allegations are insufficient". *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 689 (1st Dept. 2015). *Garvey,* 634 F. Supp. 3d at 92.

Plaintiffs do not adequately allege the existence of an underlying duty. The general rule in New York is that "employment relationships do not create fiduciary relationships." *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dept. 2009). Here Plaintiffs have not alleged any particularized facts to support the existence of a fiduciary duty, of which the Moving Individual Defendants could have aided and abetted a breach.

Moreover, Plaintiffs do not adequately allege any specific or credible actual breaches of those unspecified fiduciary duties, which Moving Individual Defendants are purported to have aided and abetted. *Garvey*, 634 F. Supp. 3d at 93. Plaintiffs make only the most general group allegations that "Marsh McLennan employees including the Florida Zone Leaders, Baxter Southern, and the Individual Defendants have materially breached their fiduciary duties by" soliciting clients and employees and misappropriating confidential information (FAC at ¶¶ 301, 308), without alleging additional supporting facts, anywhere in the FAC. This is insufficient to plead a breach of duty. *Garvey*, 634 F. Supp. 3d at 93.

Finally, Plaintiffs only generally allege that "Defendants assisted, induced, encouraged, and directed the breaches of … duties to Marsh McLennan." (FAC at ¶¶ 302, 308). This claim should be dismissed because Plaintiffs do not allege any facts to support their conclusory assertion that Defendants provided substantial assistance with respect to the breach of a fiduciary duty. *Rise Dev. Partners, LLC v. Signature Ban*k, 2024 WL 4555758, at *5 (S.D.N.Y. Oct. 22, 2024); *Hatteras Enters., Inc. v. Forsythe Cosmetic. Grp., Ltd.*, 2019 WL 9443845, at *9 (E.D.N.Y. Jan. 14, 2019).

26

CONCLUSION

For the foregoing reasons, Moving Individual Defendants respectfully submit that the

Court should dismiss the FAC in its entirety.

Dated:    New York, New York                    **DORSEY & WHITNEY LLP**
          December 12, 2025


                                          By  /s/ *Jeremy E. Deutsch*
                                              Jeremy E. Deutsch
                                              Krista E. Bolles
                                              51 West 52nd Street
                                              New York, NY 10019
                                              (212) 415-9238
                                              deutsch.jeremy@dorsey.com
                                              bolles.krista@dorsey.com

                                              -and-

                                              Kathryn A. Johnson (pro hac vice)
                                              50 South 6th Street, Suite #1500
                                              Minneapolis, MN 55402
                                              (612) 492-6613
                                              johnson.kate@dorsey.com

                                              *Attorneys for Defendants Andrea Amodeo,*
                                              *Carlos Serio, Giovanni Perez, Janette Wilcox,*
                                              *Nathan Collins, and Richard Lennerth*

4911-5536-8321\5

## CERTIFICATE OF WORD COUNT

As required by S.D.N.Y. Local Rule 7.1(c), I hereby certify that Defendants'

Memorandum of Law In Support Of Defendants' Motion To Dismiss Plaintiffs' First Amended

Complaint contains 8,455 words, excluding the parts of the document that are exempted by rule.

Dated:    New York, New York
          December 12, 2025           */s/Jeremy E. Deutsch*
                                      **JEREMY E. DEUTSCH**

4911-5536-8321\5