IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & MCLENNAN COMPANIES, INC., MARSH USA LLC, MERCER (US) LLC, and MARSH & MCLENNAN AGENCY LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>HOWDEN US SERVICES, LLC, HOWDEN SPECIALTY, LLC, ALFRED GRONOVIUS, ANDREA AMODEO, CARLOS SERIO, GIOVANNI PEREZ, JANETTE WILCOX, NATHAN COLLINS, and RICHARD LENNERTH,<br><br>*Defendants*. | Hon. Jennifer L. Rochon<br><br>No. 1:25-cv-9130-JLR<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

January 9, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    Defendants' Conduct Is Ongoing and Continues to Cause Irreparable Harm. ........ 2

    B.    Defendants Do Not Rebut Marsh McLennan's Strong Likelihood of Success on the Merits. ................................................................................................... 6

        1.    The Individual Defendants Breached Enforceable Contracts. .................... 6

            a.    The Record Establishes Coordinated Breach ............................... 7

            b.    Employee Non-Solicitation Covenants Are Enforceable ............... 7

            c.    Client Non-Solicitation Covenants Are Enforceable ..................... 8

        2.    Howden Tortiously Interfered With Marsh McLennan's Contracts .......... 10

        3.    Defendants Engaged in Unfair Competition ............................................ 10

    C.    The Balance of Equities and the Public Interest Favor Immediate Injunctive Relief ................................................................................................................. 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dewitt Stern Grp., Inc. v. Eisenberg*,
    257 F. Supp. 3d 542 (S.D.N.Y. 2017)..................................................................................4

*In re Document Techs. Litig.*,
    275 F. Supp. 3d 454 (S.D.N.Y. 2017)..................................................................................8

*Eletson Holdings Inc. v. Levona Holdings Ltd.*,
    2025 WL 1950728 (S.D.N.Y. July 16, 2025) .......................................................................6

*Eve Sales Corp. v. Marie Sharp's, USA, LLC*,
    2025 WL 606497 (S.D.N.Y. Feb. 24, 2025) ........................................................................5

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110, 119 (2d Cir. 2009)........................................................................................4

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
    808 F. Supp. 2d 552 (S.D.N.Y. 2011)................................................................................10

*Int'l Bus. Machines Corp. v. De Freitas Lima*,
    2020 WL 5261336 (S.D.N.Y. Sept. 3, 2020).....................................................................11

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
    443 F. Supp. 3d 303 (E.D.N.Y. 2020) .................................................................................4

*Karpinski v. Ingrasci*,
    28 N.Y.2d 45 (1971) ...........................................................................................................6

*KatiRoll Co., Inc. v. Kati Junction, Inc.*,
    2015 WL 5671881 (S.D.N.Y. Sept. 25, 2015)...................................................................10

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*,
    2025 WL 304500 (S.D.N.Y. Jan. 27, 2025) ....................................................7, 8, 9, 11, 12

*Marsh & McLennan Agency LLC v. Alliant Ins. Servs., Inc.*,
    2025 WL 3442819 (S.D.N.Y. Dec. 1, 2025) ...................................................................5, 6

*Marsh USA Inc. v. Karasaki*,
    2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008)............................................................3, 8, 10

*Marsh USA Inc. v. Schuhriemen*,
    183 F. Supp. 3d 529 (S.D.N.Y. 2016).........................................................................10, 12

*Marsh USA LLC v. Parrish*,
    2025 WL 2676389 (S.D.N.Y. Sept. 18, 2025)............................................................1, 6, 7

*MasterCard Int'l Inc. v. Nike, Inc.*,
    164 F. Supp. 3d 592 (S.D.N.Y. 2016)..................................................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Mastrio v. Sebelius*,
　768 F.3d 116 (2d Cir. 2014) ................................................................................................. 11

*Mercer Health & Benefits LLC v. DiGregorio*,
　307 F. Supp. 3d 326 (S.D.N.Y. 2018) ......................................................................... 3, 9, 11

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
　2018 WL 2089342 (S.D.N.Y. May 3, 2018) ........................................................................ 5

*Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*,
　2019 WL 2536104 (Del. Ch. June 20, 2019) ............................................................ 7, 10, 12

*Parrish v. Marsh & McLennan Cos., Inc.*,
　No. 654430/2025, Dkt. No. 77 (N.Y. Sup. Ct.) ..................................................................... 5

*QBE Ams., Inc. v. Allen*,
　2022 WL 889838 (S.D.N.Y. Mar. 25, 2022) ..................................................................... 7, 8

*Tchrs. Ins. & Annuity Ass'n of Am. v. Simon*,
　2023 WL 6386955 (S.D.N.Y. Sept. 29, 2023) ...................................................................... 9

*Ticor Title Ins. Co. v. Cohen*,
　173 F.3d 63 (2d Cir. 1999) .................................................................................................3, 6

*Willis Re Inc. v. Herriott*,
　550 F. Supp. 3d 68 (S.D.N.Y. 2021) ................................................................................... 11

**PRELIMINARY STATEMENT**

Defendants ask this Court to accept a simple story: that their coordinated theft of Marsh McLennan's business was a one-day event remediable by money damages. It was not. The raid is ongoing: former Marsh McLennan employees at Howden continue to service Marsh McLennan clients and use Marsh McLennan's Confidential Information, employees and clients continued to depart for Howden as recently as January 2026, and Marsh McLennan learned today that another client is moving an account to Howden. Schnabolk Reply Decl. ¶ 2. The premise underlying every defense argument—that there's nothing left "to stop"—collapses under Defendants' admissions and the record.

Three courts have analyzed nearly identical conduct and enjoined Howden and others from continuing unlawful raids. In September, Judge Daniels enjoined Marsh's former ringleaders from soliciting Marsh employees and clients or using Marsh's Confidential Information. *Marsh USA LLC v. Parrish*, 2025 WL 2676389, at *2-3 (S.D.N.Y. Sept. 18, 2025). After Defendants filed their oppositions, two additional courts, including Judge Ramos in this District, reached the same conclusions about Howden—based on materially indistinguishable raids directed at Aon and Brown & Brown. Mufson Reply Decl. Exs. 16-30. In the Brown & Brown case, the court found "Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits and that irreparable harm will result" and entered a consented-to order. *Id.* Ex. 28 at 1. Howden also consented to an injunction in a raid case brought by Willis. *Id.* Exs. 12-15.

It is now crystal clear that what happened to Marsh McLennan is part of a coordinated strategy to steal competitors' businesses. Three courts have now examined Howden's raid strategy, found it likely unlawful, and issued injunctions to stop it. The same conclusion—and the same relief—is warranted here.

1

# ARGUMENT

### A.    Defendants' Conduct Is Ongoing and Continues to Cause Irreparable Harm.

Defendants insist any irreparable harm ended on July 21.  But they concede "more recent" resignations could establish ongoing harm (Howden Br. 19)—and, even without discovery, Marsh McLennan has shown exactly that: employees and clients departing for Howden in January 2026.  Schnabolk Reply Decl. ¶ 2.

Gronovius's admissions alone illustrate ongoing harm.  He concedes that, before resigning, he spoke with seven Marsh McLennan employees who then resigned; at least a dozen clients he serviced at Marsh McLennan—including five clients acquired there—followed him to Howden; he executed service agreements for those accounts; and he continues to service former clients and discuss transferring additional lines of coverage.  Gronovius Decl. ¶¶ 21, 25-35.  One Marsh McLennan client to whom Gronovius sent loss runs in October transferred additional coverage lines to Howden in November.  Schnabolk Reply Decl. ¶ 2; Martino Reply Decl. ¶ 6; ECF 55-16.  He also admits printing and sending Marsh McLennan documents to his personal email—in violation of company policy—and deleting a client workbook on the day he resigned and the client transferred.  Gronovius Decl. ¶¶ 36-37, 40-44; Schnabolk Reply Decl. ¶¶ 5-8.  Those admissions (including the Marsh McLennan documents still in his possession) establish continuity.

Other Defendants confirm the same scheme.  Serio does not deny soliciting colleagues before he resigned or client contact through early October concerning business transfers and admits sending mass zip files to clients—one of whom later moved its account.  Serio Decl. ¶¶ 18, 24-31; 11/13/2025 Martino Decl., ECF 58 ¶¶ 8-10.  Wilcox admits contacting employees about her move to Howden, signaling "potential opportunities," emailing confidential documents to her personal account in violation of company policy, and accessing employee data shortly before the raid.  Wilcox Decl. ¶¶ 15-44; Martino Reply Decl. ¶ 4; Fuest Reply Decl. ¶¶ 12-19.  Howden likewise does

2

not deny targeting Marsh McLennan's employees and clients or possessing Marsh McLennan information. Defendants' admissions show a coordinated transfer of relationships, information, and workforce that continues today.

Defendants' attempt to deny ongoing harm is also undermined by material misrepresentations in their declarations. Forensic evidence contradicts Collins's assertion that the files he accessed while a personal USB device was connected to his laptop had been open for days and Defendants' assertion that recycling OneDrive files will not result in permanent deletion. Fuest Reply Decl. ¶¶ 8-9, 22. And Lennerth was not instructed to print a client list (let alone multiple copies of it) or to encourage Amodeo to remain at Marsh McLennan. Sartain Reply Decl. ¶¶ 8-9.

Under Second Circuit and New York law, Defendants' conduct constitutes irreparable harm. Ongoing solicitation and servicing of a former employer's clients entrenches the loss of goodwill and client relationships in ways that cannot be undone later. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999); *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *14 (S.D.N.Y. Oct. 31, 2008).

The law does not require Marsh McLennan to wait until additional clients have already departed. It is enough to show clients are at risk of being lost due to ongoing solicitation or servicing, which Defendants freely admit. *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018). In *Aon*—where Howden executed a nearly identical raid—Judge Ramos enjoined Howden and individual defendants from soliciting or servicing a competitor's clients without evidence that *any* solicited clients had left for Howden. Mufson Reply Decl. Ex. 22 ¶ 3, Ex. 21 at 15-16. Here, the need for injunctive relief is even more compelling because Marsh McLennan has submitted undisputed evidence regarding the transfer of 80 clients since the July 21 raid and ongoing solicitation and servicing. Schnabolk Reply Decl. ¶ 2.

3

Defendants' theft and continued possession of Marsh McLennan's Confidential Information independently establishes irreparable harm under the authority Defendants invoke. *Faiveley Transport Malmo AB v. Wabtec Corp.* recognizes irreparable harm where there is a danger confidential information will be disseminated to third parties. 559 F.3d 110, 119 (2d Cir. 2009). Defendants concede they took Marsh McLennan property that has not been returned. Gronovius Decl. ¶¶ 36-39; Wilcox ¶¶ 15-24; Lennerth Decl. ¶¶ 14-19; Martino Reply Decl. ¶¶ 4-6. Courts applying *Faiveley* consistently treat the ongoing risk of misappropriation of confidential information as irreparable. *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 331 (E.D.N.Y. 2020).

Defendants' reliance on cases stating that "policy information, expiration dates, terms and conditions, and pricing" may not be confidential underscores how far their conduct here exceeds those facts. *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 582 (S.D.N.Y. 2017). The evidence shows that the materials Serio transmitted were not isolated policy summaries, but more than 1,000 files of confidential, non-public Marsh McLennan information—including internal policy records, claims data, renewal schedules, pricing, commissions, and proprietary analyses. 11/13/2025 Martino Decl., ECF 58 ¶¶ 10-12. For example, the "[Client A] – SOI 2024-2025.xlsx" file reflects Marsh's accumulated knowledge of client coverage structure, preferences, and insurance needs—information developed over time and highly valuable to competitors. *Id.* ¶ 11. Likewise, the "Binder Tracker–25-26.xlsx" file details policy structure, participation, premium totals, fees, and commission amounts for an upcoming renewal, revealing internal pricing strategy and compensation information that a client would have no reason to possess. *Id.* ¶¶ 10-11. Serio does not dispute that the purpose of the transmissions was solicitation, or that, in practice, a client seeking a new broker would ordinarily require only a high-level schedule or summary—not Marsh

4

McLennan's internal compilations, analytics, and pricing materials. *Id.*; Serio Decl. ¶¶ 18-20. Instead, both Serio and Howden claim that "[m]uch"—not *all*—of the information at issue is public or client-owned—thereby conceding the remainder *is* confidential. Howden Br. 14-15; Serio Decl. ¶ 18. The record establishes the confidentiality of Marsh McLennan's files. Martino Reply Decl. ¶¶ 4-6; Sartain Decl. ¶¶ 8-9; Martino Decl. ¶¶ 10-24.

Nor can Defendants argue delay. Delay does not defeat injunctive relief where the misconduct is ongoing and the harm continues. *Marsh & McLennan Agency LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 3442819, at *14 (S.D.N.Y. Dec. 1, 2025). In any event, there was no delay. Marsh McLennan acted promptly after the raid, while Howden engaged in misdirection. Immediately after the raid, Howden contacted Marsh McLennan seeking engagement. Mufson Reply Decl. Ex. 1. During that same period—without disclosure and under threat of litigation—Howden prepared and filed a declaratory-judgment action designed to seize the forum. *Id.* ¶¶ 4-12. While the state court declined to dismiss that action, it nonetheless recognized that "plaintiffs commenced [the] litigation" when Marsh McLennan "threatened litigation." *Parrish v. Marsh & McLennan Cos., Inc.*, No. 654430/2025, Dkt. No. 77 at 2-3 (N.Y. Sup. Ct.). That is the hallmark of an "improper anticipatory declaratory judgment action." *Eve Sales Corp. v. Marie Sharp's, USA, LLC*, 2025 WL 606497, at *4 (S.D.N.Y. Feb. 24, 2025). Marsh McLennan was not required to acquiesce in that maneuver. Instead, Marsh McLennan promptly sought emergency relief against the *Parrish* defendants in this District and Howden in Delaware, Mufson Reply Decl. ¶¶ 13-18, and continued its investigation, later revealing trade-secret theft and the Individual Defendants' involvement. Defendants' cited cases—which involve extended inaction—bear no resemblance to Marsh McLennan's efforts here. *Cf. Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018).

Defendants' suggestion that damages suffice is likewise foreclosed by precedent. *Ticor* holds that loss of client relationships and goodwill cannot be reliably quantified. 173 F.3d at 69. The liquidated-damages provisions in the Individual Defendants' agreements neither address the loss of employees nor bar injunctive relief. *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 52 (1971). Judge Daniels rejected this same argument. ECF 56-86 at 75:20-77:2.

### B. Defendants Do Not Rebut Marsh McLennan's Strong Likelihood of Success on the Merits.

Every court to consider Howden's conduct has reached the same conclusion: it likely engaged in unlawful conduct by recruiting competitors' insiders to misappropriate confidential information and raid their workforces and clients. Rather than confront the merits, Howden has shifted positions on threshold issues. In *Parrish*, Howden sought to intervene on the ground that it was a necessary party in this District. Mufson Reply Decl. Ex. 10. Here, it takes the opposite position, arguing this Court *lacks* jurisdiction. Howden Br. 10. Howden cannot "have it both ways"—attempting to invoke this District's jurisdiction when it "benefit[s]" its interests and "distanc[ing]" itself "from this venue" to evade merits review. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1950728, at *3 (S.D.N.Y. July 16, 2025).

On the merits, Defendants ask this Court to disregard what Judge Daniels has already recognized—and what their own submissions fail to rebut: deliberate, unlawful "coordinat[ion]." *Parrish*, 2025 WL 2676389, at *2. The record shows Howden and the Individual Defendants acted in concert, interfering with Marsh McLennan's confidentiality and non-solicitation agreements, to raid Marsh McLennan's business for their own benefit.

#### 1. The Individual Defendants Breached Enforceable Contracts.

Marsh McLennan need not prove its case in full at this stage. *Alliant*, 2025 WL 3442819, at *4. Courts routinely rely on circumstantial evidence to infer solicitation, misuse of confidential

6

information, and coordinated misconduct. *Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104, at *13-16 (Del. Ch. June 20, 2019). That evidence is more than sufficient here.

### a.   The Record Establishes Coordinated Breach.

Defendants admit to communications with Marsh McLennan employees (none of whom applied to Howden) around the time of their departures; facilitating client transfers; continuing to solicit and service Marsh McLennan accounts at Howden; and accessing, retaining, transmitting, or deleting Marsh McLennan Confidential Information. Gronovius Decl. ¶¶ 21, 27, 30-31, 33, 35-42; Amodeo Decl. ¶¶ 13-15, 17, 22; Collins Decl. ¶¶ 18-22, 37-38; Lennerth Decl. ¶¶ 13-15, 18-20, 36; Perez Decl. ¶¶ 14-25; Serio Decl. ¶¶ 18-19, 22-23, 24-26, 28; Wilcox Decl. ¶¶ 15-23, 28-38, 43-44, 48-55; Martino Reply Decl. ¶¶ 4-6; Martino Decl. ¶¶ 10-24; Schnabolk Decl. ¶¶ 35-39. This was coordinated action designed to lift out Marsh McLennan's business. At minimum, Marsh McLennan raises "serious questions on the merits"—all that is required. *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 304500, at *4 (S.D.N.Y. Jan. 27, 2025).

### b.   Employee Non-Solicitation Covenants Are Enforceable

The Individual Defendants argue (Br. 14) employee non-solicitation covenants are categorically unenforceable against at-will employees. New York law rejects that position. Courts in this District routinely enforce employee non-solicitation provisions where they are reasonably tailored to protect legitimate employer interests. Mufson Reply Decl. Ex. 20 at 20-21, Ex. 22 at 2; *Parrish*, 2025 WL 2676389, at *2; *Alliant*, 2025 WL 304500, at *5-8; *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 599-602 (S.D.N.Y. 2016).

Even Defendants' cases ask whether the restriction protects "cognizable employer interests." *QBE Ams., Inc. v. Allen*, 2022 WL 889838, at *11 (S.D.N.Y. Mar. 25, 2022). Marsh McLennan's interests are textbook: protecting a workforce that holds Confidential Information (11/13/2025

7

Schnabolk Decl., ECF 57 ¶¶ 5, 18), manages client relationships developed at Marsh's expense (*id.* ¶¶ 6-7, 18; 11/13/2025 Mufson Decl., ECF 56 Ex. 48 ¶¶ 4, 6-7; Schnabolk Reply Decl. ¶¶ 11-14), and possesses institutional knowledge critical to ongoing operations (11/13/2025 Schnabolk Decl., ECF 57 ¶¶ 5, 18; 11/13/2025 Mufson Decl., ECF 56 Ex. 48 ¶¶ 4-6). *Alliant*, 2025 WL 304500, at *5-7; *Karasaki*, 2008 WL 4778239, at *14.

This is not a case of a few employees quietly "jointly searching for new employment." *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 464-68 (S.D.N.Y. 2017). It is a targeted solicitation of Marsh McLennan employees to facilitate a coordinated lift-out. And Marsh McLennan's covenants are narrowly drawn: they do not apply to *every* employee, *cf. Allen*, 2022 WL 889838, at *10-11, but rather to employees with whom the Defendant had contact or about whom the Defendant obtained Confidential Information. 11/13/2025 Schnabolk Decl., ECF 57 ¶¶ 22-23. Howden itself imposes *stricter* covenants. 11/13/2025 Mufson Decl., ECF 56 Ex. 44 ¶ 9, Ex. 49 at 28-29.

### c. Client Non-Solicitation Covenants Are Enforceable

Defendants' client non-solicitation arguments rest on overstatement and misdirection.

*First*, their "personal client" theory finds no support in New York law and was rejected by Judge Daniels. ECF 56-86 at 58:10-22, 63:2-17. *BDO Seidman v. Hirshberg* recognized only a narrow exception for clients who follow an employee "solely" because of that employee's independent recruitment efforts—without employer "subsid[y]" or "suppor[t]." 93 N.Y.2d 382, 392-93 (N.Y. 1999). Defendants identify no client who fits that description.

New York courts reject the notion that client loyalty defeats enforcement where the employer invested in developing and servicing the relationship. As the court explained in *Karasaki*, the fact that "many of [the employee's] former clients at Marsh were more loyal to him than to Marsh" is "beside the point" where there is "no evidence" the employee "developed those

8

relationships independently of any efforts or expenditures made by Marsh." 2008 WL 4778239, at *17. That principle controls here.

The record shows Marsh McLennan—not Defendants acting alone—subsidized and sustained client relationships through compensation tied to client development, expense accounts, teams, carrier relationships, systems, and proprietary platform resources. 11/13/2025 Schnabolk Decl., ECF 57 ¶¶ 5-7; Schnabolk Reply Decl. ¶¶ 11-14; 11/13/2025 Mufson Decl., ECF 56 Ex. 48 ¶ 4. Defendants also admit they worked with other Marsh McLennan employees and relied on Marsh McLennan systems to service these accounts. Gronovius Br. 2, 5; Serio Decl. ¶¶ 23, 25; Wilcox Decl. ¶¶ 51-53. That is the opposite of independent client development.

*Second*, Gronovius argues (Br. 19) the covenants are overbroad because they reach "prospective" clients. But the covenants do not sweep in the general market or speculative opportunities; they protect only concrete prospective relationships developed through Marsh McLennan's platform and are limited to clients or prospective clients with whom the employee had contact or about whom the employee obtained Confidential Information. Schnabolk Decl. ¶¶ 17-21. Courts have upheld materially identical language. *Alliant*, 2025 WL 304500, at *7.

*Third*, Defendants attempt to redefine "solicitation" so narrowly that the covenants would not cover the conduct they were designed to prevent. Gronovius Br. 19-20. That argument relies on cases outside the employment-covenant context and ignores how New York courts apply the term in restrictive-covenant disputes. In employment cases, solicitation includes announcing a departure, discussing opportunities or compensation, facilitating client transfers, and preparing documents to enable the move—exactly what Defendants here did. *Tchrs. Ins. & Annuity Ass'n of Am. v. Simon*, 2023 WL 6386955, at *13 (S.D.N.Y. Sept. 29, 2023); *DiGregorio*, 307 F. Supp. 3d

9

at 347-48, 352; *Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 536 (S.D.N.Y. 2016); *Karasaki*, 2008 WL 4778239, at *20.

### 2. Howden Tortiously Interfered With Marsh McLennan's Contracts

Howden did not passively benefit from others' decisions—it "made the mass departure happen." *Mountain West*, 2019 WL 2536104, at *18. As *Mountain West* explains, when a competitor "spen[ds] months recruiting and then working closely with [employees] to plan and coordinate their departures," uses Confidential Information to structure offers, and engineers a mass exit to obtain business, it acts as the "puppet master" behind the breach. 2019 WL 2536104, at *1, *16, *18. Howden's reliance (Br. 21-22) on "Guidelines for New Joiners" does not alter that conclusion: paper policies do not negate tortious intent where the conduct shows coordinated inducement. *Mountain West*, 2019 WL 2536104, at *16. Howden made the same argument in *Aon*—and failed. There, Howden invoked identical, self-serving guidelines to disclaim responsibility for a coordinated raid, and Judge Ramos rejected that position. Mufson Reply Decl. Ex. 20 at 6, Ex. 21 at 64:1-7. And any claim of good-faith compliance is belied anyway by Howden's U.S. leaders retaining documents they swore they had returned, in violation of an existing injunction. 11/13/2025 Mufson Decl., ECF 56 Exs. 88-89.

### 3. Defendants Engaged in Unfair Competition

New York's unfair-competition doctrine prohibits competitors from misappropriating another's labor, skill, expenditures, and goodwill for commercial advantage. *KatiRoll Co., Inc. v. Kati Junction, Inc.*, 2015 WL 5671881, at *5 (S.D.N.Y. Sept. 25, 2015). Those who participate in, aid, or ratify such conduct are liable as joint tortfeasors. *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 560 (S.D.N.Y. 2011).

That is what occurred here. Defendants orchestrated and exploited contractual breaches, used Marsh McLennan Confidential Information to execute a mass lift-out, and leveraged that

10

misconduct to establish Howden's U.S. business overnight. That misconduct extends beyond—and is not duplicative of—any single contractual breach, reflecting bad-faith exploitation of Marsh McLennan's investments and goodwill for Defendants' advantage.

### C. The Balance of Equities and the Public Interest Favor Immediate Injunctive Relief.

Marsh McLennan seeks a "prohibitory" injunction requiring Defendants to comply with the law and covenants they voluntarily undertook. *Alliant*, 2025 WL 304500, at *4-5. "Courts in this Circuit routinely apply the ordinary standard rather than the heightened, mandatory injunction standard when deciding whether to issue an injunction in connection with an employment contract." *Int'l Bus. Machines Corp. v. De Freitas Lima*, 2020 WL 5261336, at *6 (S.D.N.Y. Sept. 3, 2020) (citation modified), *aff'd sub nom. Int'l Bus. Machines Corp. v. Lima*, 833 F. App'x 911 (2d Cir. 2021); *contra* Howden Br. 9-11. An injunction enforcing those obligations preserves—not upsets—the last "peaceable" status quo: Marsh McLennan's ability to compete without facing a rival armed with misappropriated Confidential Information and unlawfully diverted relationships. *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014). Defendants remain free to compete—just not by exploiting data, employees, and clients taken in violation of their obligations. In any event, the record establishes the clear or substantial likelihood of success required even under a mandatory-injunction standard. *Alliant*, 2025 WL 304500, at *4.

The equities are not close. Defendants claim they are already complying with their covenants. Howden Br. 3-4. If true, an injunction imposes no hardship whatsoever. *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 104 (S.D.N.Y. 2021); *DiGregorio*, 307 F. Supp. 3d at 351.

The record, however, shows ongoing noncompliance. *Supra* Part A. Allowing that conduct to continue would entrench the harm equity exists to prevent. By contrast, enforcing reasonable, time-limited non-solicitation obligations imposes no undue hardship, particularly where—unlike

11

the cases Defendants invoke (Individual Defs.' Br. 26-27; Gronovius Br. 27-28)—this case involves the misuse of Confidential Information and the exploitation of unlawfully diverted relationships to compete.  *Cf. Alliant*, 2025 WL 304500, at *9; *Mountain West*, 2019 WL 2536104, at *16; *Schuhriemen*, 183 F. Supp. 3d at 537.

Defendants' warnings about client harm and reduced competition misstate both the relief sought and the law.  The injunction does not force clients to return to Marsh McLennan or bar fair competition; it prevents Defendants from continuing to profit from relationships and information obtained through unlawful means.  That relief is fully consistent with the non-solicitation and non-servicing restrictions Judge Ramos recently imposed on Howden and its agents under like circumstances.  Mufson Reply Decl. Ex. 22 at 3; *see also Mountain West*, 2019 WL 2536104, at *23-24.  Enforcing reasonable restrictive covenants protects legitimate investments, promotes compliance with contractual obligations, and preserves fair competition.

## CONCLUSION

The Court should grant Marsh McLennan's application and enter a preliminary injunction, as set forth in the proposed order (ECF 53).

Dated: January 9, 2026

                        Respectfully submitted,

                        */s/ Harris M. Mufson*

| | |
|---|---|
| Karl G. Nelson* | Harris M. Mufson |
| Rachel W. Robertson* | Lee R. Crain |
| Brian Richman | Kelly Herbert |
| GIBSON, DUNN & CRUTCHER LLP | Amanda L. LeSavage |
| 2001 Ross Avenue, Suite 2100 | GIBSON, DUNN & CRUTCHER LLP |
| Dallas, TX 75201 | 200 Park Avenue |
| | New York, NY 10166 |
| | (212) 351-3805 |
| | hmufson@gibsondunn.com |
| | |
| | Jason C. Schwartz* |
| | Ryan C. Stewart* |
| | Amanda C. Machin* |
| | Catherine McCaffrey |
| | Nicole Santora |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1700 M Street, NW |
| | Washington, DC 20036 |
| | |
| | *Attorneys for Plaintiffs* |

\* *pro hac vice*

13

## WORD COUNT CERTIFICATION

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 and Individual Rule 3.C. that this memorandum of law complies with the word limit set forth in this Court's Local Civil Rule 7.1 and Individual Rule 3.C. because it contains 3,499 words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated:  New York, New York
             January 9, 2026

                                                         */s/ Harris M. Mufson*
                                                         Harris M. Mufson