Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T  +1 212.872.1000
F  +1 212.872.1002
akingump.com



**Richard J. Rabin**
+1 212.872.1086/fax: +1 212.872.1002
rrabin@akingump.com

February 11, 2026

VIA ELECTRONIC COURT FILING

The Honorable Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

   Re: *Marsh USA LLC et al. v. Alfred Gronovius et al.*, No. 1:25-cv-09130-JLR
      Response to Marsh Letter Supplementing the Evidentiary Record

Judge Rochon:

  On behalf of all Defendants in this matter, Defendants Howden US Services, LLC and Howden US Specialty, LLC (together, "Howden") respectfully submit this response to the letter, declarations, and documents filed by Plaintiffs Marsh & McLennan Companies, Inc.; Marsh USA LLC; Mercer (US) LLC; and Marsh & McLennan Agency LLC (collectively, "Marsh") around midnight on February 9, 2026, purportedly in further support of Marsh's motion for a preliminary injunction.[1] *See* ECF Nos. 163-168. Marsh's letter is procedurally improper, and the Court should disregard it. Furthermore, the belated materials are months stale and fail to show any "irreparable harm" or otherwise support any need for preliminary injunctive relief. Finally, Marsh's letter misrepresents an order issued by a separate court, in *Alliant Insurance Services Inc. v. Howden US Specialty, LLC et al.*, No. 2026-00841, pending in Harris County, Texas. As discussed below, that court ordered no relief whatsoever against Howden.

  **I.** **The Court Should Disregard Marsh's Untimely and Improper Submission.**

  The preliminary injunction hearing set for February 12, 2026 was scheduled nearly three months ago, on November 19, 2025. Yet, fewer than three days before the hearing—and without seeking leave of court—Marsh filed a letter that purported to "supplement the record." Marsh cites two cases in support of its actions, but neither does. Rather, the plaintiffs in each of those cases requested leave of court to supplement the record, and they did so following the conclusion of a preliminary injunction hearing, not days beforehand. *See Ascentive, LLC v. Opinion Corp.*,

---

[1] Marsh does not purport to submit these materials in connection with Defendants' separate motions to dismiss the first amended complaint in this action. *See* Ex. 1 (email exchange from February 6-8, 2026), at 4.



The Honorable Jennifer L. Rochon
February 11, 2026
Page 2

842 F. Supp. 2d 450, 458 (E.D.N.Y. 2011); *Stephan Co. v. Elizabeth Arden, Inc.*, No. 06-cv-3871-LTSFM, 2006 WL 8430160, at *1 (S.D.N.Y. Dec. 6, 2006); First Motion for Leave to File Supplement Record, *Stephan Co. v. Elizabeth Arden, Inc.*, No. 06-cv-3871-LTSFM (S.D.N.Y. Aug. 4, 2006), ECF No. 29.  In each case, the court permitted each party to fully brief the issues.

### II.     Marsh's Submission Reflects Its Continued Gamesmanship.

Unfortunately, this technique of "litigation by ambush" is not new for Marsh, as it has done the same thing before each of the three scheduled TRO/preliminary injunction hearings in related matters.  It first did so on August 18, 2025 in the Delaware Action, where a day before the scheduled TRO hearing, Marsh misused its reply brief to submit three new affidavits along with eight new exhibits, most of which had been in Marsh's possession at the time it filed its original motion.  It engaged in similar tactics on September 4, 2025 in the *Parrish* Action, when at 8:08 a.m., Marsh emailed the individual defendants a demonstrative for use at a hearing beginning less than two hours later.  Then again in the Delaware Action, at 4:03 p.m. on November 3, 2025, the day before the scheduled hearing on Marsh's TRO (previously held in abeyance) and Howden's motion to dismiss—and well after briefing had closed—Marsh filed a letter attaching 258 pages of exhibits.

Wary that Marsh might use similar tactics in advance of the February 12, 2026 hearing in this matter, Defendants specifically engaged Marsh on the topic of pre-hearing preparations.  On Monday, February 2, 2026, Defendants emailed Marsh, inquiring, *inter alia*:

> We understand that Marsh will present oral argument at the hearing and may reference its previously-submitted declarations.  ***We understand that Marsh does not otherwise intend to*** call live witnesses or ***introduce other evidence***.  If that is not the case, please let us know so that we can coordinate with you on process and scheduling issues prior to the hearing.

Ex. 2 (email exchange from February 2-3, 2026) (emphases added).  On February 3, 2026, Marsh responded, *inter alia*: "Marsh understands that the hearing is scheduled for argument and therefore will not be calling any live witnesses.  Please confirm your understanding of the same." *Id.*

Despite Defendants' clear inquiry, Marsh gave no indication that it would be submitting any other evidence in connection with the hearing.  Yet in the afternoon of Friday, February 6, 2026, Marsh contacted Defendants about the potential sealing of 24 documents that it planned to file in this case.  *See* Ex. 1, at 6-8.  Only after continued prodding did Marsh later reveal that in



addition to the 24 documents, Marsh planned to submit other new evidence, which it refused to identify.  *Id*. at 1.

Defendants also repeatedly asked Marsh what procedural mechanism Marsh "intend[ed] to utilize to request permission to supplement the record."  *Id*. at 1-2, 5-6.  But, again, Marsh declined to engage on the topic or explain how it intended to proceed, other than by "letter."  *Id*. at 1.

### III.    Marsh's New Evidence and Arguments Are Irrelevant, Misleading, and Replete with Evidentiary Concerns.

Marsh's belated submissions should be disregarded.  To the extent they are considered, however, they do little to advance the issues and, given their largely irrelevant nature and evidentiary shortcomings, should be given little weight.

Putting aside issues of hearsay and authenticity, the 24 new documents produced are extremely dated (from July 2025 or earlier), and they do nothing to support any claim of irreparable harm or otherwise support the injunctive relief Marsh seeks.  Most of the documents relate to non-parties, including four recent Howden hires who are parties in the NYS Action and/or the *Parrish* Action.  As Marsh has taken great pains to point out, those four individuals already have been enjoined from certain conduct by Judge Daniels.

The declaration of Megan McClellan, meanwhile, is more notable for what it does not say, than the little it does say.  Ms. McClellan states that since January 9, 2026, two clients have named Howden as their new insurance broker and three employees have resigned from Marsh, one of whom has joined Howden and the others who may wish to do so.  ECF No. 165.  Ms. McClellan does not say these were prior clients of colleagues of any restricted party—or if they ever even met any of the individuals in any of Marsh's multiple pending actions.  Nothing ties these departures with any alleged violation whatsoever.  Marsh has numerous clients and "more than 90,000 [employees] in over 130 countries";[2] the handful in Ms. McClellan's declaration could have come from literally anywhere.  Lastly, Ms. McClellan notes that a client that *already* had moved its business to Howden has opened new lines of business with Howden.  And Ms. McClellan conspicuously fails to respond to or attempt to contradict Mr. Gronovius's assertion that the relevant client was a long-standing personal client of Ms. Lugones or members of her team before the team moved to Marsh, despite citing directly to the portion of Mr. Gronovius's declaration that made this point.  *See* ECF No. 165, at ¶ 5; ECF No. 114, at ¶ 25(g).

---

[2] *See* Marsh, https://www.corporate.marsh.com/global/home.html (last visited February 11, 2026).



The Honorable Jennifer L. Rochon
February 11, 2026
Page 4

### IV. Marsh Misrepresents *Alliant* Temporary Injunction.

Finally, in the last sentence of Marsh's letter, Marsh cites *Alliant Insurance Services Inc. v. Howden US Specialty, LLC et al*., No. 2026-00841 (Harris County, Texas) for the proposition that "[a]ll courts examining Howden's playbook to enter the U.S. insurance market through unlawful conduct have found sufficient grounds to restrain Howden and/or its agents from continuing this course of conduct on similar or more limited records." ECF No. 164 at 3. This assertion is highly misleading.

In fact, the consent injunction in that case restricts only certain specified activities of the three individual defendants in that matter, and it does not restrain Howden. *See* Ex. 3, at 2. To the contrary, the court's order explicitly states:

> It is further **ORDERED**, that for the avoidance of doubt, and notwithstanding anything to the contrary in this Agreed Temporary Injunction or otherwise, ***nothing in this Agreed Temporary Injunction shall be interpreted to prohibit … (i) Defendant Howden or any employee thereof*** except [two of the three individual defendants] ***from soliciting any customer, prospective customer, or employee of Alliant***;

*Id*. (emphasis added).

\*     \*     \*

Howden respectfully asks the Court to disregard Marsh's new evidence or give it the negligible weight that it is due.

Respectfully Submitted,

*/s/ Richard J. Rabin*
_____
Richard. J. Rabin

CC:   All Counsel of Record