**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARSH & MCLENNAN COMPANIES, INC., MARSH USA LLC, MERCER (US) LLC, and MARSH & MCLENNAN AGENCY LLC,

*Plaintiffs*,

v.

HOWDEN US SERVICES, LLC, HOWDEN US SPECIALTY, LLC, ALFRED GRONOVIUS, ANDREA AMODEO, CARLOS SERIO, GIOVANNI PEREZ, JANETTE WILCOX, NATHAN COLLINS, and RICHARD LENNERTH.

*Defendants*.

Case No. 1:25-cv-9130-JLR

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I. Amendment Will Promote Judicial Economy and Ensure Accountability for the Alleged Architect of This Scheme. ............................................................ 4

A. The Motion Is Timely and Based on Recently Discovered Evidence. ......................................................................................... 4

B. The Proposed Amendments Are Plausible and Well-Founded. .................. 6

II. Leave to Amend Does Not Disturb the Existing Preliminary Injunction. ............. 7

CONCLUSION ........................................................................................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Edelman Fin. Engines LLC v. Prime Cap. Inv. Advisors, LLC*,
2026 WL 699554 (D. Del. Mar. 12, 2026) ....................8

*Hughes v. Nat'l Football League*,
2023 WL 8039262 (S.D.N.Y. Nov. 20, 2023) ....................5, 7

*MB 1607, LLC v. Mt. Hawley Ins. Co.*,
2025 WL 2452166 (S.D.N.Y. Aug. 26, 2025) ....................4

*Pasternack v. Shrader*,
863 F.3d 162 (2d Cir. 2017) ....................5

*Perez v. Escobar Constr., Inc.*,
342 F.R.D. 378 (S.D.N.Y. 2022) ....................4, 5, 6

*Sherwin K. Parikh, MD, P.C. v. Accessibe, Inc.*,
2025 WL 1637594 (S.D.N.Y. June 9, 2025) ....................5, 7

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough N.Y. Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ....................7, 8

*Taylor v. Goord*,
2010 WL 3825661 (N.D.N.Y. Sept. 2, 2010) ....................6

*Zayas v. U.S. Bank, N.A.*,
2026 WL 297184 (S.D.N.Y. Feb. 4, 2026) ....................4

### Rules

Fed. R. Civ. P. 15 ....................3

Fed. R. Civ. P. 21 ....................4

**INTRODUCTION**

Based on newly discovered evidence, Marsh McLennan seeks leave to amend its complaint to add the entity behind the misconduct at the center of this case: Howden Group Holdings Limited ("Howden UK"), the London-based parent company of existing Defendants Howden US Services, LLC and Howden US Specialty, LLC ("Howden US") (collectively, "Howden"). As the Court has already found, Marsh McLennan is likely to establish that Howden US executed a plan to build a U.S. insurance brokerage by raiding Marsh McLennan's workforce, stealing its clients, and misappropriating its confidential information and trade secrets through insiders who conspired with Howden US to breach duties they owed to Marsh McLennan. Evidence obtained in discovery has now made clear that Howden UK was not merely the parent of the entities carrying out that plan, but a central participant that directed, coordinated, and benefited from the misconduct, making its joinder both necessary and appropriate.

Marsh McLennan filed its initial complaint in this action on November 3, 2025, against seven former employees (the "Individual Defendants") who executed the scheme on the ground—recruiting their colleagues to resign, diverting clients, and misappropriating confidential information while still on Marsh McLennan's payroll. ECF No. 1. One week later, on November 10, 2025, Marsh McLennan filed the First Amended Complaint ("FAC"), adding Howden US as defendants. ECF No. 34. Howden US directed the Individual Defendants' misconduct, induced their breaches of contract and fiduciary duty, and stood ready to absorb the stolen business. *See, e.g.*, *id.* ¶¶ 1–5.

After a two-day hearing, the Court preliminarily enjoined Defendants from further soliciting certain Marsh McLennan employees and clients, servicing certain Marsh McLennan clients,

and misusing its confidential information, and ordered the return of all Marsh McLennan confidential information. ECF Nos. 180, 181. The Court found Marsh McLennan likely to succeed on its breach of contract and tortious interference claims and noted that, although Defendants had moved to dismiss the Defend Trade Secrets Act ("DTSA") claim, the Court was "not persuaded that the DTSA claim is likely to be dismissed at the pleading stage." ECF No. 181 at 8 n.3.

As discovery has progressed, the full scope of Howden UK's role has come into focus. In the *Parrish* action, Marsh McLennan sued four senior Florida-based managers (the "Florida Zone Leaders") who worked alongside the Individual Defendants to execute the raid. Documents those defendants produced in discovery beginning on January 20, 2026 have revealed that Howden UK and its most senior executives conceived of this conspiracy, maintained regular communications with the Florida Zone Leaders about the employees, clients, and confidential information they planned to steal, equipped their co-conspirators with the tools to execute the scheme, and traveled to the United States to directly solicit Marsh McLennan employees and clients. SAC ¶¶ 2, 21, 56, 100–104.[*] For example, in early July 2025, Howden UK executives traveled to the United States, including New York, to meet directly with Marsh McLennan employees and clients. Those executives included Howden UK's Executive Chairman, Dominic Collins, who, in coordination with Florida Zone Leader Giselle Lugones, met with both a Marsh McLennan client and one of Lugones's direct reports, who ultimately left for Howden. *Id.* ¶ 108. In addition, UK-based Howden Re's Executive Chair, Elliot Richardson, supplied the Florida Zone Leaders with a broker-of-record template and recruitment materials used to facilitate the transfer of Marsh McLennan business. *Id.* ¶¶ 113–14. This recently uncovered evidence makes clear that, when Lugones's employee

[*]Citations to "SAC" refer to the proposed Second Amended Complaint attached as Exhibit 1 to the Motion for Leave to File the Second Amended Complaint.

recruitment playbook listed "Meet London team" among its "To Do's" items, it was referring to Howden UK. *Id.* ¶ 107; ECF No. 56-69 at 2.

Accordingly, Marsh McLennan now moves for leave to file the proposed Second Amended Complaint ("SAC") to add Howden UK as a defendant and assert DTSA and state law claims against it. The SAC further strengthens the allegations concerning Howden UK's involvement in and coordination with Defendants' misconduct, including by alleging that Defendants in the *Parrish* action acted as linchpins who arranged meetings and forged connections between UK executives and Marsh McLennan employees. *See* SAC ¶¶ 107–109. The SAC also clarifies and strengthens the claims that were central to securing the preliminary injunction, including by updating employee and client departure numbers, specific damages, and supplying greater context about the Individual Defendants' misuse and theft of confidential information. *See* SAC ¶¶ 2, 16, 52, 131, 136, 140, 142, 154, 155, 159. The Court's scheduling order sets March 30, 2026 as the deadline to seek leave to amend or join additional parties. ECF No. 149 ¶ 6. This motion is timely filed.

## ARGUMENT

Marsh McLennan's motion for leave to amend should be granted. The proposed SAC adds Howden UK—the alleged architect of the conspiracy already at issue in this litigation—and asserts against it the same categories of claims the Court has already found Marsh McLennan likely to succeed on as to Howden UK's subsidiaries and agents. The motion is timely under the Court's scheduling order, discovery remains in its early stages, and Defendants will suffer no prejudice.

The governing standard is liberal. Under Federal Rule of Civil Procedure 15, courts "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and may deny leave "only 'for good reason,'" including "'futility, bad faith, undue delay, or undue prejudice to the

opposing party.'" *Zayas v. U.S. Bank, N.A.*, 2026 WL 297184, at *1 (S.D.N.Y. Feb. 4, 2026) (Rochon, J.) (citation omitted). Where, as here, the amendment seeks to add a new party, Rule 21 applies the same liberal standard and permits joinder "at any time, on just terms." *See id.* at *2 (citing Fed. R. Civ. P. 21). "The non-movant bears the burden of showing prejudice, bad faith, and futility of amendment." *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 380 (S.D.N.Y. 2022) (cleaned up). And because this motion falls within the deadline set by the Court's scheduling order, Rule 16(b)'s "good cause" requirement does not apply. *MB 1607, LLC v. Mt. Hawley Ins. Co.*, 2025 WL 2452166, at *1 (S.D.N.Y. Aug. 26, 2025) (Rochon, J.); ECF No. 149 ¶ 6. Every consideration favors granting leave.

## I. Amendment Will Promote Judicial Economy and Ensure Accountability for the Alleged Architect of This Scheme.

Granting leave to amend will allow Marsh McLennan's claims against Howden UK, Howden US, and the Individual Defendants—arising from their respective roles in a single conspiracy—to be litigated in one case. That is precisely the outcome the Federal Rules are designed to promote. Without Howden UK in this action, Marsh McLennan would be forced to bring a separate action against Howden UK in this District based on the same underlying facts—burdening the Court, the parties, and judicial resources with duplicative litigation. The SAC avoids that result. And because the motion is timely, the case remains in its early stages, and the proposed amendments are well-founded, Defendants cannot show any basis to deny leave.

### A. The Motion Is Timely and Based on Recently Discovered Evidence.

As discovery has progressed, the full scope of Howden UK's misconduct has come into clearer focus. Marsh McLennan moved for leave promptly once it had a sufficient basis to add Howden UK as a defendant—and within the deadline set by the Court's scheduling order. ECF

No. 149 ¶ 6. The initial complaint, moreover, was filed barely five months ago, and this case remains in the early stages of discovery.

To the extent Defendants contend "that [Marsh McLennan] could have moved to amend earlier," that argument is "insufficient" to defeat amendment. *Hughes v. Nat'l Football League*, 2023 WL 8039262, at *2 (S.D.N.Y. Nov. 20, 2023) (Rochon, J.) (citation omitted). The short passage of time between the filing of the initial complaint and this motion for leave to amend—barely five months—on its own defeats any claim of "undue" delay. *See Sherwin K. Parikh, MD, P.C. v. Accessibe, Inc.*, 2025 WL 1637594, at *3 (S.D.N.Y. June 9, 2025) (finding a six-and-a-half-month delay between the second amended complaint and the initial complaint "not unduly long"). In any event, the "denial of leave to amend, based solely on delay and litigation expense, [i]s an abuse of discretion." *Hughes*, 2023 WL 8039262, at *3 (citing *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017)). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Perez*, 342 F.R.D. at 381 (citation omitted). Delay must be coupled with a showing of prejudice; "even an 'inordinate delay,' for which 'no satisfactory explanation is offered,' requires a finding of prejudice." *Id.* at 382 (citation omitted).

Defendants cannot make that showing of prejudice here. Prejudice typically exists only where an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Perez*, 342 F.R.D. at 382 (citing *Pasternack*, 863 F.3d at 174). None of those circumstances is present here. Discovery remains in its early stages—there is no need to "re-open" anything or alter summary judgment briefing that has not yet begun. *Id.* And because the SAC alleges that Howden US acted as

Howden UK's agent and co-conspirator, the two entities will very likely have overlapping sources of information and overlapping evidence to produce, notwithstanding the positions they have taken in discovery thus far. Adding Howden UK does not "effectively restart" this case; it completes it. *Perez,* 342 F.R.D. at 382; *see also id.* at 381 ("[T]he need for new discovery is not sufficient to constitute undue prejudice on its own.") (citation omitted).

**B. The Proposed Amendments Are Plausible and Well-Founded.**

Marsh McLennan seeks to add Howden UK based on evidence that has only recently come into focus through discovery—much of which the Court itself relied on in entering injunctive relief against Howden US. ECF No. 181 at 21–22. There is nothing strategic or improper about ensuring the entity that allegedly conceived and directed this scheme is joined to the litigation.

Nor are the proposed amendments futile. Leave to amend should be granted where the court cannot "say that under no circumstances would proposed claims provide a basis for relief." *Taylor v. Goord*, 2010 WL 3825661, at *13 (N.D.N.Y. Sept. 2, 2010) (citing *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995)). The SAC clears that threshold with room to spare. It asserts against Howden UK the same legal theories this Court has already found likely to succeed, now supported by additional facts showing Howden UK's direct role in the misconduct. Specifically, the SAC plausibly alleges that Howden UK and its senior executives conspired with Howden US, the Individual Defendants, and the Florida Zone Leaders to raid Marsh McLennan's workforce, divert its clients, and misappropriate its confidential information and trade secrets. *See, e.g.*, SAC ¶¶ 2, 21, 56, 100–104. Those allegations support liability as to Howden UK both for its own conduct and for directing, inducing, and coordinating its agents' breaches of contractual and legal obligations owed to Marsh McLennan. And the Court has already recognized that it "is not persuaded that the DTSA claim is likely to be dismissed at the

pleading stage." ECF No. 181 at 8 n.3. The SAC further strengthens those allegations by identifying Howden UK as the entity that directed the coordinated acquisition and use of Marsh McLennan's trade secrets, including client folders, compilations of client relationship data, pricing and revenue structures, and internal training documents, through its agents and co-conspirators. *See, e.g.*, SAC ¶¶ 2–5, 21, 107–114, 128–129. Armed with Marsh McLennan's trade secrets, Howden UK directed targeted job offers and equipped its co-conspirators with broker-of-record templates and recruitment materials distributed by Howden UK executives to effectuate the transfer of Marsh McLennan's business and trade secrets to Howden US. *Id.* ¶¶ 107–113. The claims against Howden UK therefore stand on, at minimum, the same footing.

In any event, the Court need not conduct a detailed futility analysis at this stage. The "preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Sherwin K. Parikh, MD, P.C.*, 2025 WL 1637594, at *3 (internal citation marks omitted); *see also Hughes*, 2023 WL 8039262, at *3. Consistent with this District's "strong preference to decide cases on the merits with full information," *Hughes*, 2023 WL 8039262, at *2, leave should be granted.

## II. Leave to Amend Does Not Disturb the Existing Preliminary Injunction.

Granting leave to amend will have no effect on the relief the Court has already entered. Here, Marsh McLennan's proposed SAC does not alter the underlying theory of the case. It merely places Howden UK at the head of the conspiracy that the FAC already alleges and asserts against it the same causes of action that were previously brought against its agents. Further, courts consider adding a defendant and strengthening allegations minor alterations that do not materially change the substantive basis for the injunction, and the injunction may remain in place unmodified. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough N.Y. Med. Prac. P.C.*, 120 F.4th 59, 77–79 (2d

Cir. 2024) (finding an appeal of a preliminary injunction ripe notwithstanding the filing of a second amended complaint); *see also Edelman Fin. Engines LLC v. Prime Cap. Inv. Advisors, LLC*, 2026 WL 699554, at *4 (D. Del. Mar. 12, 2026) (finding a TRO request survives an amended complaint where the amendment does not significantly "alter[] the substance of the plaintiff's allegations").

Indeed, the Court's preliminary injunction already binds Howden UK. Rule 65(d)(2)(C) provides that an injunction binds "other persons who are in active concert or participation with" the enjoined parties or their agents, and the Second Circuit has recognized that this provision may extend to newly added defendants. *See State Farm*, 120 F.4th at 77. The Court's injunction expressly covers "Howden, Howden's directors, officers, members, agents, employees, and representatives, and persons in active concert or participation with Howden[.]" ECF No. 180 at 3. The record—including the evidence the Court relied on in enjoining Howden US—is replete with evidence that Howden UK's most senior executives directed and facilitated the very conduct the injunction prohibits. Adding Howden UK as a formal party simply ensures that the entity already bound by this Court's order is also held accountable for its own misconduct.

**CONCLUSION**

For the foregoing reasons, the Court should grant Marsh McLennan leave to file the Second Amended Complaint.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Harris Mufson*

Harris M. Mufson
Lee R. Crain
Amanda L. LeSavage
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-3805
hmufson@gibsondunn.com

Jason C. Schwartz*
Ryan C. Stewart*
Amanda C. Machin*
Catherine McCaffrey
Nicole Santora
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C. 20036

Karl G. Nelson*
Rachel W. Robertson*
Brian Richman
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201

*Attorneys for Plaintiffs Marsh McLennan Companies, Inc., Marsh USA LLC, Mercer (US) LLC, and Marsh & McLennan Agency LLC*

* *pro hac vice*

**WORD COUNT CERTIFICATION**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 and Individual Rule 3.C. that this memorandum complies with the word limit set forth in this Court's Local Civil Rule 7.1 and Individual Rule 3.C. because it contains 2,459 words, excluding the parts of the memorandum exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: New York, New York
March 30, 2026

*/s/ Harris Mufson*
Harris M. Mufson