**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARSH & MCLENNAN COMPANIES, INC.,
MARSH USA LLC, MERCER (US) LLC, and
MARSH & MCLENNAN AGENCY LLC,

<div style="margin-left:2em"> *Plaintiffs*,

v.

HOWDEN US SERVICES, LLC, HOWDEN
US SPECIALTY, LLC, ALFRED
GRONOVIUS, ANDREA AMODEO,
CARLOS SERIO, GIOVANNI PEREZ,
JANETTE WILCOX, NATHAN COLLINS,
and RICHARD LENNERTH,

<div style="margin-left:2em"> *Defendants*.</div>

Case No. 1:25-cv-9130-JLR

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO CLARIFY, ALTER, OR AMEND THE**
**<u>PRELIMINARY INJUNCTION ORDER</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 4

LEGAL STANDARD............................................................................................................. 7

ARGUMENT........................................................................................................................ 9

    I.      The Order Is Clear, Specific, and Fully Complies with Rule 65(d) ...................... 9

    II.     Defendants' Challenges Repackage Arguments the Court Already
            Rejected and Fail on the Merits ...................................................................... 12

         A.     The Order Properly Enjoins Howden's Tortious Interference.................. 12

         B.     The Order's Definition of Confidential Information Is Proper and
              Enforceable ....................................................................................... 18

         C.     The Court Properly Declined to Impose Additional Temporal
              Limitations ........................................................................................ 22

CONCLUSION..................................................................................................................... 24

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*,
  2007 WL 4563485 (S.D.N.Y. Dec. 18, 2007) ..........................................................................8

*Alliant Ins. Servs. Inc. v. Howden US Specialty, LLC et al.*,
  No. 2026-00841 (Tex. Dist. Jan. 21, 2026) ....................................................................2, 19, 20

*Am. ORT, Inc. v. ORT Israel*,
  2009 WL 233950 (S.D.N.Y. Jan. 22, 2009) ..........................................................................23

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012).................................................................................................9, 12

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
  912 F.3d 1054 (7th Cir. 2019) ..............................................................................................17

*BaseCap Analytics Inc. v. Amenn*,
  2023 WL 8113524 (S.D.N.Y. Nov. 22, 2023)........................................................................19

*Cho v. Blackberry Ltd.*,
  991 F.3d 155 (2d Cir. 2021)....................................................................................................8

*Christianson v. Colt Industries Operating Corp.*,
  486 U.S. 800 (1988)................................................................................................................9

*City of New York v. Mickalis Pawn Shop*, LLC,
  645 F.3d 114 (2d Cir. 2011)..............................................................................................17, 20

*Corines, v. Am. Physicians Ins. Tr.*,
  769 F. Supp. 2d 584 (S.D.N.Y. 2011)...............................................................................9, 23

*DeWitt Stern Group, Inc. v. Eisenberg*,
  257 F. Supp. 3d 542 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018).......................21

*Diversified Mortg. Invs. v. U.S. Life Ins. Co. of New York*,
  544 F.2d 571 (2d Cir. 1976).............................................................................................23, 24

*Don King Prods., Inc. v. Douglas*,
  742 F. Supp. 741 (S.D.N.Y. 1990).........................................................................................13

*Drapkin v. Mafco Consol. Grp., Inc.*,
  818 F. Supp. 2d 678 (S.D.N.Y. 2011).................................................................................8, 18

*Environmental Services, Inc. v. Recycle Green Services, Inc.*,
  7 F. Supp. 3d 260 (S.D.N.Y. 2014)........................................................................................13

*ExpertConnect, LLC v. Parmar*,
  773 F. App'x 651 (2d Cir. 2019) ...........................................................................................20

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Federal Election Commission v. Furgatch*,
  869 F.2d 1256 (9th Cir. 1989) ..................................................................................24

*Federal Trade Commission v. Shkreli*,
  2024 WL 1026010 (2d Cir. Jan. 23, 2024) ...........................................................12, 21

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
  730 F.2d 61 (2d Cir. 1984)........................................................................................24

*Gen. Mills, Inc. v. Chobani, LLC*,
  2016 WL 1639903 (S.D.N.Y. Apr. 25, 2016)...........................................................20

*GMA Accessories, Inc. v. Eminent, Inc.*,
  2008 WL 2355826 (S.D.N.Y. May 29, 2008) ......................................................10, 11

*IDG USA, LLC v. Schupp*,
  416 F. App'x 86 (2d Cir. 2011) ............................................................................19, 23

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
  323 F. Supp. 2d 525 (S.D.N.Y. 2004)........................................................................16

*Jones v. United States Postal Service*,
  2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020)...........................................................14

*Kelly v. Evolution Mkts., Inc.*,
  626 F. Supp. 2d 364 (S.D.N.Y. 2009)........................................................................15

*LM Ins. Corp. v. Safety Nat'l Cas. Corp.*,
  705 F. Supp. 3d 83 (E.D.N.Y. 2023) ......................................................................8, 19

*Louis W. Epstein Fam. P'ship v. Kmart Corp.*,
  13 F.3d 762 (3d Cir. 1994)........................................................................................18

*Markovits v. Venture Info Cap., Inc.*,
  129 F. Supp. 2d 647 (S.D.N.Y. 2001)........................................................................20

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*,
  2025 WL 304500 (S.D.N.Y. Jan. 27, 2025) ..........................................................15, 19

*Marsh USA Inc. v. Karasaki*,
  2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008)........................................................15, 16

*Marsh USA Inc. v. Schuhriemen*,
  183 F. Supp. 3d 529 (S.D.N.Y. 2016)........................................................................15

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949)..................................................................................................12

iii

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
970 F.3d 133 (2d Cir. 2020)....................................................................................8

*Nakshin v. Holder*,
360 F. App'x 192 (2d Cir. 2010) .............................................................................8

*OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*,
2007 WL 2900225 (S.D.N.Y. Oct. 4, 2007) ...........................................................9

*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*,
866 F.2d 228 (7th Cir. 1988), *cert. denied*, 493 U.S. 847 (1989)...........................8

*Phillips v. City of New York*,
775 F.3d 538 (2d Cir. 2015)............................................................................12, 13

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
241 F.3d 232 (2d Cir. 2001)...................................................................................12

*Sanders v. Air Line Pilots Association*,
473 F.2d 244 (2d Cir. 1972)...................................................................................21

*Shomo v. Eckert*,
755 F. Supp. 3d 344 (W.D.N.Y. 2024) ................................................................8, 9

*Town of Islip v. E. Air Lines, Inc*,
793 F.2d 79 (2d Cir. 1986).....................................................................................18

*Union Home Mortg. Corp. v. Cromer*,
31 F.4th 356 (6th Cir. 2022) ..................................................................................17

*United States v. Williams*,
2025 WL 2783187 (E.D.N.Y. Sept. 30, 2025) ........................................................9

*Van Buskirk v. United Grp. of Cos., In*c.,
935 F.3d 49 (2d Cir. 2019).......................................................................................7

*Waldman Publishing Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994).....................................................................................14

## Rules

Fed. R. Civ. P. 59(e) ........................................................................................................7

Fed. R. Civ. P. 65(d) ......................................................................................................10

## Treatises

11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1 (3d ed.) ................9

**PRELIMINARY STATEMENT**

After this Court held Defendants accountable for their coordinated, unlawful raid of Marsh McLennan's business, Defendants seek an impermissible do-over under Rule 59(e)'s extraordinary standard. Rule 59(e) sets a deliberately high bar. It is an "extraordinary" remedy, available only in "rare" and "exceptional" circumstances. Defendants identify none. They point to no intervening change in controlling law, no newly discovered evidence, and no clear error or manifest injustice requiring correction. Instead, they ask this Court to revisit issues it already considered and resolved after full briefing, extensive evidentiary submissions, a two-day hearing, and supplemental submissions from both parties. Rule 59(e) does not permit that. It is not a vehicle to advance new arguments or relitigate issues already decided.

The Court's Opinion and Order reflects a careful and deliberate evaluation of the record. The Court tested the parties' positions at length and crafted a preliminary injunction that responds directly to the misconduct it found Marsh McLennan likely to prove: the Individual Defendants' breaches of their restrictive covenants and Howden's tortious interference with Marsh McLennan employees' contractual obligations. The resulting Order is clear, specific, and fully complies with Rule 65(d) and controlling law. Given the scope of Defendants' coordinated raid—which irreparably harmed Marsh McLennan's business and facilitated Howden's entry into the United States market through the systematic and unlawful solicitation of employees and clients and misuse of Confidential Information—that tailored relief was not only appropriate, it was necessary.

The Order implements precisely the relief the Court determined was warranted based on its findings. It imposes targeted restrictions tied to the claims on which Marsh McLennan demonstrated a likelihood of success—requiring Defendants to cease soliciting certain Marsh McLennan employees, soliciting and servicing certain Marsh McLennan clients, and misusing

1

Marsh McLennan Confidential Information, and to return the Confidential Information they took. *See* ECF 180 at 3–5; ECF 181 at 10–11. Those restrictions track the contractual obligations the Individual Defendants agreed to and the conduct the Court found likely unlawful. *See* ECF 180 at 2–5; ECF 181 at 10–11. The Order also includes express carveouts to ensure clarity and avoid overbreadth. *See* ECF 180 at 3–5. In short, the Court did exactly what it stated it intended to do: issue an order that "people clearly understand," "can adhere to," and "can [be] enforce[d] [] appropriately." 2/13/26 Tr. at 271:3–5.

In issuing the Order, this Court joined every court to have considered Howden and its accomplices' misconduct in enjoining it. *See* ECF 56-77 (*Parrish*); ECF 137-22 (*Aon*); ECF 137-15 (*Willis*); ECF 137-28 (*Brown & Brown*); *see also* 2/12/26 Tr. 108:6–11 (citing *Alliant Ins. Servs. Inc. v. Howden US Specialty, LLC et al.*, No. 2026-00841 (Tex. Dist. Jan. 21, 2026)). Each has entered comparable relief—at times with Howden's consent—based on similar evidence that Howden deployed the same unlawful playbook to raid its competitors' businesses across the country: weaponizing senior insiders, tortiously interfering with contractual and legal obligations, misappropriating Confidential Information, and attempting to cover its tracks. *Id.*

Against that backdrop, Defendants now seek to revisit the very relief that every court to consider their conduct has found warranted through a motion that does not satisfy Rule 59(e)'s exacting standard. Defendants' motion rests on three meritless arguments—cast as Rule 65(d) defects—that attempt to relitigate issues the Court has already considered and resolved on a fully developed record or to make new arguments that could have been previously advanced.

*First*, Defendants challenge the scope of the injunction as applied to Howden's tortious interference with Marsh McLennan's contracts. *See* ECF 194 at 8. They argue the Order im-

properly restrains lawful conduct by omitting knowledge and intent requirements, lacking geographic limits, failing to account for "personal clients," and using supposedly vague language. *See id.* at 8–10, 13–14. Those arguments misstate the law and are waived or repackaged positions the Court has already rejected. The Court has already found the underlying contractual provisions enforceable and found a substantial likelihood that Howden knowingly induced breaches of enforceable contracts. *See* ECF 181 at 12, 20. Defendants cannot relitigate those findings, and to the extent they claim uncertainty about any employee's obligations, they can ask.

*Second*, they attack the Order's use of Marsh McLennan's contractual definition of Confidential Information. That argument fails because the Court deliberately considered and rejected Defendants' proposed alternatives and adopted the definition the Individual Defendants themselves agreed to. *See id.* at 30. All courts addressing Howden's and its accomplices' misconduct likewise defined confidential information by reference to the governing agreements—including in *Aon*, *Parrish*, and *Alliant*—and Howden consented to the same in *Willis* and *Brown & Brown*. *See* ECF 56-77 at 2 (*Parrish*); ECF 137-15 at 3 (*Willis*); ECF 137-22 at 2 (*Aon*); ECF 137-28 at 3 (*Brown & Brown*); *Alliant*, TRO at 3. The definition applied here is substantially similar to those used in those cases.

*Third*, Defendants seek to rewrite Marsh McLennan's contracts by imposing additional temporal limitations on the injunction. That argument fails because the Court already grounded the duration of its relief in the underlying contractual provisions and properly declined to impose additional limits that would undermine those agreements and permit ongoing harm.

None of Defendants' arguments identifies new law, new evidence, or clear error. They are simply disagreements with the Court's ruling. The motion therefore fails at the threshold and should be denied.

3

## **BACKGROUND**

This case arises from Defendants' coordinated effort to build Howden's U.S. retail insurance business by unlawfully raiding Marsh McLennan's workforce, clients, and Confidential Information.  On July 21, 2025, nearly 100 Marsh McLennan employees resigned *en masse* in a single, coordinated wave to join Howden.  *See* ECF 181 at 5.  Marsh McLennan clients began moving to Howden almost immediately.  *Id.* at 5–6.  Over the ensuing months, Defendants' conduct continued: by February 2026, Marsh McLennan had lost at least 160 employees and 82 clients to Howden.  *Id.* at 6.  As this Court and Judge Daniels found, this coordinated exodus likely irreparably harmed Marsh McLennan and facilitated Howden's entry into the U.S. market with clients and staff.  *See id.*; ECF 56-77 (*Parrish*).[1]

To halt that ongoing harm, Marsh McLennan moved for injunctive relief on November 13, 2025.  ECF 53.  In support, Marsh McLennan submitted extensive evidence of Defendants' misconduct.  That evidence showed that the Individual Defendants and other Marsh McLennan employees that had since moved to Howden, who still owed contractual and fiduciary obligations to Marsh McLennan, unlawfully solicited Marsh McLennan employees and clients, misused Confidential Information, and surreptitiously coordinated the timing of their departures to most benefit Howden.  *See* ECF 181 at 16–19.

As to the Individual Defendants, the record showed that each "likely breached at least one provision" of his or her restrictive covenant agreements.  ECF 181 at 16, 19.  It showed repeated communications with Marsh McLennan employees and clients prior to their resignations,

---

[1] Contrary to Defendants' mischaracterization of the record, ECF 194 at 12, Defendants targeted and caused the departures of Marsh McLennan employees and clients outside of Marsh USA LLC's Florida Zone, including employees and clients of Marsh & McLennan Agency LLC's McGriff Specialty Group.  *See, e.g.,* ECF 57 ¶¶ 29–30; ECF 138 ¶ 2.

coordinated employee departures to Howden without formal applications, and the use of Confidential Information to facilitate client departures. *See id.* at 16–19. Evidence further showed the access, transfer, or retention of Marsh McLennan's Confidential Information, including nonpublic pitch decks, client lists, renewal pricing and strategies, insurance premium information, and other internal materials. *See id.* at 18–19.

The record likewise showed a "substantial likelihood that Howden induced Marsh employees to breach their contracts with Marsh" for Howden's benefit. *Id.* at 22. For example, "Howden targeted the Florida Zone Leaders and directed them to use Marsh's proprietary data to recruit colleagues and solicit clients." *Id.* at 21. The employee solicitation "playbook" Giselle Lugones created after receiving her Howden offer "necessarily involved input from Howden." *Id.* Marsh McLennan also "presented several documents" that showed Howden "working through and with Lugones and others at Marsh to bring over Marsh employees and clients to Howden," including Howden's Executive Chair sharing "recruitment documents and a BOR template to transfer Marsh clients to Howden." *Id.* at 21–22.

The Court considered that record in full. The parties submitted extensive briefing: five memoranda of law to the Court totaling nearly 125 pages of argument. *See* ECF 60, 113, 115, 125, 136. From February 12 to February 13, 2026, the Court held a preliminary injunction hearing during which it tested both the evidence and the appropriate scope of relief. Defendants raised the same objections they now raise again, arguing that Marsh McLennan's proposed relief was "extraordinarily broad," invited contempt proceedings, contained ambiguous terms concerning the contracts, employees, and clients at issue, and relied on an "unworkable" definition of Confidential Information. *See* ECF 53; 2/13/26 Tr. at 221:24–226:14.

At the preliminary injunction hearing, the Court addressed those concerns directly. It raised questions regarding the scope of the requested relief in relation to the claims asserted against particular Individual Defendants and the breadth of the confidentiality provision. *See* 2/13/26 Tr. at 269:17–273:25. It also made clear "its interest in ensuring the parameters of any injunction be appropriately limited, clear, and unambiguous in order to avoid disputes regarding compliance." ECF 181 at 30. "After extensive discussions about the parameters of various proposed restrictions," the Court invited revised proposed orders from both sides to "clarify the injunctive relief sought in terms of the scope of the confidential information it was seeking to restrict and the parameters of personal clients who fall outside the client non-solicitation restrictions." *Id.* (citing 2/13/26 Tr. at 270:3–274:8, 288:22–289:24). "The Court reviewed the parties' submissions and considered all of the arguments presented." *Id.*

On February 24, 2026, the Court issued a detailed Opinion and Order granting in part Marsh McLennan's motion. ECF 180, 181. The Court found that "Marsh is likely to succeed on the merits of its breach of contract claims against the Individual Defendants and its tortious interference with contract claim against Howden." ECF 180 at 11. It also found that Marsh McLennan had demonstrated irreparable harm, including the ongoing loss of client relationships, employees, and Confidential Information—harm that "cannot be adequately redressed by final relief on the merits" and is "difficult to quantify." *Id.* at 23, 25 (internal citations omitted). The Court concluded that "Marsh has satisfied its burden for its requested prohibitory injunction against Defendants' further solicitation of employees, solicitation and servicing of current and prospective Marsh clients, and misuse of confidential information," *id.* at 10, and that "Marsh is entitled to a mandatory injunction requiring that the Individual Defendants and Howden return all of Marsh's confidential information with a sworn certification," *id.*

6

The Order reflects the Court's careful tailoring of relief to the misconduct and the claims at issue. It closely tracks the contractual obligations the Individual Defendants agreed to, aligns with the claims Marsh McLennan asserted, and includes express carveouts to ensure clarity and avoid overbreadth, including exclusions for "Personal Clients" and clients that moved prior to the Order. *See* ECF 180 at 3–4. With respect to Confidential Information, the Court expressly declined to adopt competing definitions proposed by the parties and instead enforced the definition set forth in the Individual Defendants' agreements. *See* ECF 181 at 30.

The Court's preliminary injunction has been in effect for several weeks. During this time, Marsh McLennan has sought to facilitate Defendants' compliance with the Court's Order, including by providing them with working lists of Marsh McLennan's lost employees and clients and agreeing to an extension for certifications regarding the return of Confidential Information. ECF 189. Defendants did not identify any genuine confusion regarding the Order's requirements during that time. Nor did they indicate any intent to seek reconsideration.

Defendants now move to "clarify, alter, or amend" the preliminary injunction under Rule 59(e) or the Court's inherent authority—raising arguments that were either previously presented and rejected or could have been raised earlier. *See* ECF 194 at 1–4.

### LEGAL STANDARD

A motion to alter or amend a judgment under Rule 59(e) is an "extraordinary" request granted only in "rare," *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019), and "exceptional" circumstances, *Nakshin v. Holder,* 360 F. App'x 192, 193 (2d Cir. 2010). The Second Circuit has emphasized that, because the Rule 59(e) standard is "strict," motions "will generally be denied." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (internal quotation

marks and citation omitted).  The "extraordinary remedy [is] to be employed sparingly in the interest of finality and conservation of judicial resources."  *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

Relief under Rule 59(e) is available only where the movant "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotations marks omitted).  The clear-error standard is particularly demanding.  "A party's disagreement with the court's explication of the relevant legal standards and application of the standards to the facts of [the] case does not satisfy the clear error standard."  *LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, 705 F. Supp. 3d 83, 86 (E.D.N.Y. 2023) (internal quotation marks omitted).  Rather, "the Court must have a clear conviction of error on a point of law that is certain to recur," *Shomo v. Eckert*, 755 F. Supp. 3d 344, 347 (W.D.N.Y. 2024) (internal quotation marks and citation omitted), or must have "overlooked controlling decisions or factual matters that were put before it on the underlying motion" when renewed consideration of those materials would reasonably have led to a different result, *Drapkin*, 818 F. Supp. 2d at 695 (internal quotation marks omitted).  Put differently, reconsideration on clear error or manifest injustice grounds "is not warranted unless the prior decision is 'dead wrong.'"  *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007) (quoting *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988), *cert. denied*, 493 U.S. 847 (1989)).

Under Rule 59(e), "[t]hese criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court."  *Shomo*, 755 F. Supp. 3d at 347 (internal quotation marks and citation omitted).  "It is well-settled that Rule 59 is

8

not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted), even "for a party dissatisfied with a court's ruling," *Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584, 593 (S.D.N.Y. 2011); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1 (3d ed.).  Nor "may [the movant] simply elaborate on arguments it already made," *United States v. Williams*, 2025 WL 2783187, at *3 (E.D.N.Y. Sept. 30, 2025), or "use a motion for reconsideration as a vehicle to advance new theories [it] failed to articulate in the underlying motion," *Corines*, 769 F. Supp. 2d at 593–94.

"Finally, regardless of what the basis for reconsideration is, while acknowledging a court's power to revisit its own decision, the Supreme Court has cautioned that 'as a rule courts should be loathe to do so in the absence of extraordinary circumstances,'" *OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, 2007 WL 2900225, at *1, n.1 (S.D.N.Y. Oct. 4, 2007) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)), such as where the initial decision was "clearly erroneous and would work a manifest injustice," *Christianson*, 486 U.S. at 817.

## **ARGUMENT**

Defendants improperly attempt to use Rule 59(e) as a vehicle to relitigate questions of breadth and specificity they cast as Rule 65(d) defects.  But Rule 65(d) is easily satisfied by the Order and, in any event, does not lower Rule 59(e)'s demanding threshold or authorize a dissatisfied party to reargue tailoring issues the Court already considered and resolved.

### I.    The Order Is Clear, Specific, and Fully Complies with Rule 65(d)

Rule 65(d) requires that an injunction "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required."  Fed.

9

R. Civ. P. 65(d)(1).  The rule is satisfied where the order is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Federal Trade Commission v. Shkreli*, 2024 WL 1026010, at *3 (2d Cir. Jan. 23, 2024) (citation omitted).  It does not require courts to define "unambiguous terms" that are to be "given their plain meaning and construed in light of normal usage" consistent with "general interpretative principles of contract law."  *Id.* (citations omitted).  Nor must "every conceivable example of the prohibited conduct [] be spelled out in the text of the order."  *GMA Accessories, Inc. v. Eminent, Inc.*, 2008 WL 2355826, at *3 (S.D.N.Y. May 29, 2008).

The Order meets that standard.  It is clear and specific in its terms and describes in reasonable detail the conduct Defendants are prohibited from engaging in.  It bars Howden from soliciting Marsh McLennan employees and soliciting or servicing Marsh McLennan clients or prospective clients "through Marsh's current or former employees subject to non-solicitation restrictions."  ECF 180 at 3.  The Order also prohibits, for one year from the date of their resignations, Individual Defendants Gronovius, Amodeo, Serio, Wilcox, and Collins from soliciting Marsh McLennan employees "with whom they came into contact for the purpose of soliciting or servicing business or about whom they obtained Confidential Information during the last two (2) years of their employment" and Individual Defendants Gronovius, Serio, and Perez from soliciting or servicing Marsh McLennan clients or prospective clients "with whom they had contact or about whom they obtained Confidential Information during the last two (2) years of their employment."  *Id.* at 4–5.  It specifically excludes "Personal Clients and clients that have moved their business to Howden prior to this Order" from its client solicitation and servicing restrictions.  *Id.* at 3–4.  The Order further bars Howden from "using, disclosing, retaining, destroying, or otherwise misappropriating any Marsh Confidential Information" and the Individual

10

Defendants from "using, disseminating, or disclosing to any third party" the same Confidential Information. *Id.* at 4–5. The Order requires that Howden and the Individual Defendants return Confidential Information with a sworn certification. *Id.*

Those prohibitions are not abstract. They track the contractual obligations at issue and the conduct the Court found Marsh McLennan likely to prove. They also align with the injunctive relief issued by all other courts examining Howden's ongoing scheme to raid its competitors' businesses across the country. *See* ECF 56-77 at 2 (*Parrish*); ECF 137-22 (*Aon*); ECF 137-15 (*Willis*); ECF 137-28 (*Brown & Brown*).

The Order is also firmly grounded in the Court's findings. The Court found that Marsh McLennan is likely to succeed on its breach of contract claims against the Individual Defendants and its tortious interference claim against Howden, based on evidence of coordinated solicitation of employees and clients and misuse of Confidential Information. *See* ECF 181 at 10–11, 16–22. The injunction directly addresses that conduct. ECF 181 at 16–22. It does not impose new obligations; it enforces the ones that the Individual Defendants and other employees already undertook and the Court found were likely breached. It also reflects the Court's careful attention to clarity and scope, including express carveouts and definitions, where appropriate. *See* ECF 180 at 3–4.

Rule 65(d) does not require more. The Court was not required to define every term or anticipate every hypothetical scenario in which the Order might apply. *See Shkreli*, 2024 WL 1026010, at *3; *GMA Accessories*, 2008 WL 2355826, at *3. Nor was it required to further narrow the Order, particularly where the record demonstrated Defendants' "proclivity for unlawful conduct." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). The Order is not an impermissible "obey-the-law" injunction, *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232,

241 (2d Cir. 2001); it is a targeted remedy tied to specific conduct and specific contractual obligations.

Because the Order is clear, specific, and fully complies with Rule 65(d), Defendants' challenge to its clarity and feigned ignorance therefore fails at the outset.

II.     **Defendants' Challenges Repackage Arguments the Court Already Rejected and Fail on the Merits**

Unable to plausibly claim that they lack notice of the conduct the Order proscribes, Defendants resort to relitigating arguments the Court has already considered and rejected or raising new arguments that could have been advanced earlier. Rule 59(e) does not permit either, as it is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.,* 684 F.3d at 52; *see also Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) (providing arguments "raised for the first time in [a] motion for reconsideration" are waived).

Defendants advance three core arguments. *First*, they contend the injunction improperly restrains Howden's conduct in connection with Marsh McLennan employees' contractual obligations. *Second*, they argue the Order's use of Marsh McLennan's contractual definition of Confidential Information is overbroad and insufficiently specific. *Third*, they seek to impose additional temporal limitations on the injunction. Each argument has already been rejected or waived and, in any event, fails on the merits.

A. **The Order Properly Enjoins Howden's Tortious Interference**

Defendants raise several variations of the same argument: that the Order improperly restrains "lawful conduct" because it does not incorporate knowledge and intent requirements as to Howden, lacks geographic limits and is unenforceable in certain jurisdictions, and does not carve out "personal clients" from the prohibition on interfering with or aiding the violation of Marsh

12

McLennan employees' contracts. ECF 194 at 7–10. Defendants also claim that the Order lacks specificity because it extends to Marsh McLennan contracts Howden claims not to have reviewed and employs supposedly vague terms such as "interfering" and "indirectly." *Id.* at 11–12; 13–14. None has merit.

*First*, Defendants' argument that the Order must contain an explicit knowledge and intent requirement is waived and incorrect. *See* ECF 194 at 7–8. Defendants did not raise that argument during the preliminary injunction proceedings, and they cannot do so now. *See Phillips*, 775 F.3d at 544. In any event, Defendants misstate the law. A plaintiff asserting tortious interference "is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 775 (S.D.N.Y. 1990). It is sufficient that the defendant had knowledge of the existence of the contract. *Id.* The injunction therefore need not recite each element of the tort; it need only prohibit conduct that, if engaged in, would constitute it. *See Environmental Services, Inc. v. Recycle Green Services, Inc.*, 7 F. Supp. 3d 260, 283 (S.D.N.Y. 2014).

Defendants' cited authorities do not support their position. The cases they rely on do not concern tortious interference and they involve injunctions that prohibited conduct unrelated to the underlying violation or remedial scope of the injunction. *See* ECF 194 at 7−8 (citing *Jones v. United States Postal Service*, 2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020)) (injunction aimed at ensuring the timely delivery of election mail should not require approval of all overtime requests); *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994) (injunction addressing the allegedly unlawful misattribution of authorship should not pertain to all substantially similar books). No such mismatch exists here. The Order is tied directly to Marsh McLennan's

13

tortious interference claim and prohibits only the conduct the Court found Marsh McLennan likely to prove.

The Court has already found a "substantial likelihood" that Howden had knowledge of Marsh McLennan employees' contracts and intentionally procured their breach. ECF 181 at 20–22. That finding was based on evidence that restrictive covenants are standard in the industry and on Howden's own materials acknowledging those obligations, including its "Guidelines for New Joiners" and Lugones's playbook. *Id.* at 20–21. Having intentionally recruited employees it knew were bound by restrictive covenants, Howden cannot now rely on hypothetical scenarios in which it lacks knowledge or intent.

Most fundamentally, to the extent Howden claims uncertainty about any individual's contractual obligations, it can simply ask. Marsh McLennan expects employees to share their agreements with prospective employers to ensure compliance. This is expressly addressed in standard agreements, *see, e.g.*, ECF 55-8 at 8 § 16, and to the extent it does not appear in any specific agreement, Marsh McLennan still has no objection to employees sharing their restrictive covenant obligations. Howden's own employment agreements further eliminate any purported uncertainty, requiring that their employees "represent[] and warrant[] that [they are] not a party to or bound by any employment agreement or other agreement containing non-competition provisions, non-solicitation provisions . . . or other restrictive covenants except as have been provided in writing to the Company prior to the execution of this Agreement." *See, e.g.*, ECF 56-44 at 22. The Court is not required to tailor its Order to accommodate hypothetical uncertainty created by Defendants' own failure to confirm the contractual obligations they seek to exploit.

*Second*, Defendants' argument that the Order is overbroad because its non-solicitation restrictions lack geographic limits fails. Those restrictions enforce contractual obligations this

14

Court and Judge Daniels found likely enforceable, after considering and rejecting Defendants' arguments to the contrary. *See* ECF 181 at 12–16; ECF 57-77 at *2–3 (*Parrish*). Other courts in this District have likewise upheld Marsh McLennan's non-solicitation agreements. *See, e.g.*, *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 304500, at *7–8 (S.D.N.Y. Jan. 27, 2025); *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *16–18 (S.D.N.Y. Oct. 31, 2008); *Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 535 (S.D.N.Y. 2016).

In any event, the Order is tethered to the record and Marsh McLennan's "legitimate interest" in protecting employee and client relationships it has expended significant resources to develop. ECF 181 at 12–16. Courts routinely enforce such restrictions without geographic limits where, as here, the business operates on a national and international scale. *See, e.g.*, *Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 374 (S.D.N.Y. 2009). Defendants' arguments as to overbreadth ignore both the Court's findings and the nature of the business at issue. Defendants cannot relitigate enforceability or scope now. ECF 175.

*Third*, Defendants' argument concerning "personal clients" misreads the Order and ignores the record. The Order expressly incorporates a "Personal Clients" carveout consistent with *BDO Seidman*, which is discussed at length in the Court's Opinion and Order. *See* ECF 180 at 3–4; ECF 181 at 14–15, 30. The Order must be read in harmony, not in isolation. Read as a whole, the carveout applies to the client non-solicitation restrictions imposed. Defendants' argument rests entirely on hypotheticals that contradict the Order's plain terms and does not come close to satisfying Rule 59(e).

Nevertheless, Defendants have failed to meet their burden of establishing that any Marsh McLennan client qualifies as a "Personal Client." *See, e.g.*, *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *17 (S.D.N.Y. Oct. 31, 2008) ("no evidence" "Karasaki developed [client]

15

relationships independently of any efforts or expenditures made by Marsh"); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 535–36 (S.D.N.Y. 2004) ("no compelling evidence" of "personal clients").  As the Court recognized, only one Individual Defendant, Gronovius, even attempted to identify "personal clients," but conceded that they were "personal to Lugones or her team, not necessarily Gronovius."  ECF 181 at 15.  Meanwhile, Marsh McLennan presented evidence that it subsidized and supported the development of all client relationships. *Id.*  Defendants did not rebut that showing.

*Finally*, the terms "interfering," "participating in the violation of," "directly," or "indirectly" are not impermissibly vague.  These are familiar, workable terms routinely used in injunctions, including in orders addressing materially identical conduct by Howden.  *See* ECF 56-77 (*Parrish*), 137-15 (*WTW*), 137-22 (*Aon*), 137-28 (*Brown & Brown*).  Defendants' supposed uncertainty stems not from any lack of clarity in the injunction, but from their effort to evade it through contrived hypotheticals divorced from the facts that would matter in any real application. *See* ECF 194 at 13.  But the answer to those hypotheticals is straightforward: it depends on context.  Defendants' argument has the flavor of a child testing a parent's instruction by inventing edge cases divorced from common sense and context.  For example, "[c]an the employee let the client know when the employee's non-solicitation period will end?"  ECF 194 at 13.  Maybe.  If the employee uses that statement as a wink-and-nod invitation to move business once the restriction expires, that can be interference.  But if the client simply asks, and the employee responds with a date—"January 1"—that is not interference.  Likewise, a "former Marsh employee [can] give a presentation about Howden at a conference at which Marsh clients are in attendance," so long as the presentation is general and not directed at those clients. *Id.*  But if a former employee uses that setting—or side conversations with restricted clients—to signal availability

16

to service them once the restriction expires, that crosses the line. The terms of the injunction are clear enough to capture these distinctions.

Defendants' cited authorities are not persuasive. Those cases involved injunctions that either imposed obligations untethered to the underlying claims or failed to identify prohibited conduct. ECF 194 at 11–13; *see Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 363–64 (6th Cir. 2022) (vacating injunction because it generally prohibited the employee from "competing" with his former employer, even though his contract only prohibited employment specifically "in the same or similar capacity"); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 912 F.3d 1054, 1056–59 (7th Cir. 2019) (vacating order where stand-alone injunction was never entered and the "injunction" was merely language buried in a judicial opinion); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144–45 (2d Cir. 2011) (vacating order requiring defendants to act in "full conformity with applicable laws" and adopt "appropriate prophylactic measures," without identifying which laws applied or what conduct was required); *Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 770–72 (3d Cir. 1994) (narrowing district court injunction generally barring violations of "any of the terms" of an easement because that injunction would prevent basic safety measures); *Town of Islip v. E. Air Lines, Inc*, 793 F.2d 79, 83–84 (2d Cir. 1986) (vacating contempt finding where district court did not specify what conduct was prohibited because the district court merely said "permanent injunction granted"). Here, by contrast, the Order pinpoints exactly what Howden cannot do: interfere with specific non-solicitation and confidentiality obligations, solicit through restricted employees, and use Marsh McLennan's Confidential Information.

The injunction therefore aligns squarely with Marsh McLennan's tortious interference claim and the Court's findings. Defendants' attempt to recast that relief as improper fails.

17

**B.  The Order's Definition of Confidential Information Is Proper and Enforceable**

Defendants' challenge to the Order's definition of Confidential Information cannot meet Rule 59(e)'s demanding standard and, in any event, fails on the merits.  They identify no intervening law, new evidence, or clear error—only disagreement with a determination the Court already made after full briefing and argument.  *See Drapkin*, 818 F. Supp. 2d at 696.  In issuing the Order, the Court expressly evaluated competing definitions and chose to track the contractual language the Individual Defendants accepted.  ECF 181 at 30.  That approach is standard, complies with Rule 65(d), and is no broader than Howden's own definition of Confidential Information.  *See* ECF 56-44 Ex. D at 2.  Defendants' proposed "clarifications" would not clarify anything—they would undermine the Order's protections, reinsert rejected carveouts, and permit the very misuse the injunction was designed to prevent.

*First*, Howden has repeatedly argued that the Order should not incorporate the definition of Confidential Information used in Marsh McLennan's contracts, including at the preliminary injunction hearing, ECF 187 at 224:18–25, 225: 9–13, and in its response to Marsh McLennan's post-hearing submission, ECF 175, at 3, ECF 175-1 at 2.  The Court thoroughly considered Defendants' concerns and, at the preliminary injunction hearing, asked Marsh McLennan "[i]f there [wa]s a limited definition of confidential information . . . to propose instead."  ECF 187 at 273:18–20.  After questioning both sides and inviting revised proposals, the Court deliberately chose to "track the contractual language set forth in the CA."  ECF 181 at 30; *see also* ECF 172-16, ECF 173, ECF 175-1.  Rather than "use the more expansive or less expansive definitions proposed by the parties in their proposed orders," it chose "instead to enforce the definition and restriction that was agreed upon by the Individual Defendants in their CAs," ECF 181 at 30, and

18

further described its reasoning in its Opinion and Order, ECF 181 at 18–19.  Courts in this District have repeatedly enforced materially identical contractual provisions in Marsh McLennan's agreements.  *See, e.g.*, ECF 56-77 at 2–3 (*Parrish*); *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 304500, at *8–10 (S.D.N.Y. Jan. 27, 2025).  Defendants' disagreement with the Court's decision is not a basis to reconsider it.  *See LM Ins. Corp.*, 705 F. Supp. 3d at 86.

Second, the Court's use of the contractual definition is consistent with standard practice. *See, e.g.*, *BaseCap Analytics Inc. v. Amenn*, 2023 WL 8113524, at *4 (S.D.N.Y. Nov. 22, 2023); ECF 56-77 at 3 (*Parrish*).  Indeed, Defendants' own authority, *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011), advises "tracking the words of the NCA, which defines trade secrets and confidential information" when drafting a preliminary injunction order.  *See* ECF 194 at 18.  All courts addressing Howden and its accomplices' misconduct have likewise used contractual definitions for "Confidential Information," including in orders binding Howden itself. *See* ECF 137-17 (*Aon*); ECF 137-22 (*Aon*); ECF 137-28 (*Brown & Brown*); ECF 137-15 *(WTW)*; *Alliant*, No. 2026-00841 (Tex. Dist. Jan. 21, 2026); *see also Markovits v. Venture Info Cap., Inc.*, 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) (enjoining the new employer from disclosing confidential information "as defined in the Employment Agreement").

Courts also routinely incorporate those definitions by reference, particularly where the enjoined parties are familiar with them.  *See* ECF 56-77 at 2 n.1 (*Parrish*); ECF 137-17 at 3 (*Aon*); ECF 137-22 at 2 (*Aon*).  The Order is not to be read in a "vacuum," *Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 1639903, at *3 (S.D.N.Y. Apr. 25, 2016), and the Court's Opinion and Order explains and applies the definition of Confidential Information,  ECF 181 at 4–5, 18, 30. Defendants' reliance on *City of New York v. Mickalis Pawn Shop, LLC*, is misplaced; that case

19

involved an injunction that defined "certain conduct by reference to the amended complaint," not contractual provisions known to the parties. 645 F.3d at 146.

*Third*, the Order is sufficiently specific and provides clear notice. The definition of Confidential Information in Marsh McLennan's contracts identifies concrete categories of information tied to Marsh McLennan's business and limits the definition to information not publicly available and developed at Marsh McLennan's expense. ECF 56-3 at 7. By its terms, it excludes publicly available or independently obtained information. *Id.* That level of detail exceeds what Rule 65(d) requires and far surpasses the bare definitions courts have rejected. *Cf. ExpertConnect, LLC v. Parmar*, 773 F. App'x 651, 653 (2d Cir. 2019) (applying terms "confidential and/or proprietary information and/or trade secrets" without further description). And the Opinion and Order details specific misconduct, including the transmission of nonpublic pitch decks, renewal strategies, and client lists to personal email accounts, that squarely fits into those categories. ECF 181 at 18–19.

Defendants' claim of uncertainty is not credible. The Individual Defendants agreed to these industry-standard definitions and worked with the information at issue for years. *See, e.g.*, ECF 56-3. Howden's leadership includes former Marsh McLennan executives, who have already been enjoined from violating identical confidentiality provisions, *see* ECF 56-77 (*Parrish*), and know firsthand what Marsh McLennan treats as confidential under its agreements. ECF 181 at 20–21. Howden uses materially similar definitions in its own agreements, ECF 56-44 Ex. D at 2, which Howden modeled after Marsh McLennan's, ECF 181 at 20–21; ECF 56-69 at 7. Further, "the district court [i]s not required to define unambiguous terms. Terms of an injunction are construed 'according to the general interpretive principles of contract law.'" *Shkreli*, 2024 WL

1026010, at *3 (citation omitted).  Thus, Defendants' attempt to pick apart the definition and take issue with commonly used terms and phrases should be given little consideration.

Defendants' cited authorities do not help them.  Unlike *Sanders*, the injunction here is not an open-ended prohibition but a targeted restriction tied to defined information and proven misconduct.  *Cf. Sanders v. Air Line Pilots Association*, 473 F.2d 244, 247–48 (2d Cir. 1972) (injunction enjoining any breach of the "duty of fair representation" was "so broad as to place the entire conduct of [Defendants'] business under the jeopardy of punishment").  Nor does this case resemble *DeWitt*, which involved only a confidentiality agreement and the question of whether an employee's use of his memory and prior relationships breached that agreement.  *DeWitt Stern Group, Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 582–84 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018); *see also* ECF 58 ¶¶ 10–12; ECF 62 ¶¶ 12–13, 31–32; ECF 57 ¶¶ 34–37.  The materials at issue include proprietary compilations such as renewal schedules revealing strategy and pricing, commission structures exposing internal business models, and client folders aggregating years of policy, claims, and risk analysis.  *See* ECF 58 ¶¶ 10–24.  This information is clearly Marsh McLennan's Confidential Information, not generic recollections or client information.

*Finally*, Defendants' proposed "clarifications" would undermine the Order.  *See* ECF 175-1 at 2–3.  Their attempt to carve out previously known or client-provided information would create a loophole that swallows the rule and invites further misuse.  ECF 194 at 15–16.  Defendants effectively argue that any information involving client data or industry-related information is "client information" or "already known."  *See id.*  They have made this argument before, including that Marsh McLennan's proprietary compilations—client folders reflecting years of relationship capital and strategic approach, renewal schedules, and commission structures—are

21

merely client information that should be exempt from protection. *See, e.g.*, ECF 115 at 19–21; ECF 125 at 14–15. Because much of Marsh McLennan's Confidential Information involves client-specific information in some capacity, allowing Defendants to exempt anything they claim is client-provided or previously known would effectively nullify the confidentiality protections. The Court rejected those carveouts when it declined Defendants' proposed order, and Rule 59(e) does not permit them to repackage those arguments now.

If Defendants have a good-faith question about whether particular materials fall within the Order, Marsh McLennan stands ready to confer and clarify. Defendants have not done so.

### C. The Court Properly Declined to Impose Additional Temporal Limitations

Defendants' final argument—that the Court should impose additional temporal limitations on the Order's restrictions—is improper and fails. The Court already determined an appropriate duration for the injunction by grounding its restrictions in the contractual provisions at issue. The restrictions on Howden appropriately track the restrictive covenants binding Marsh McLennan employees, which are themselves narrowly limited in duration to one to two years. *See, e.g.*, ECF 56-36 at 1–2; ECF 56-2 at 1–2; *cf. IDG USA, LLC v. Schupp*, 416 F. App'x 86, 89 (2d Cir. 2011) (directing the district court to consider the duration of underlying restrictive covenants in fashioning injunctive relief).

The same is true for the restrictions concerning Marsh McLennan's Confidential Information. The contractual provisions governing Marsh McLennan's Confidential Information are not time-limited, and the Court properly enforced them as written. ECF 180 at 3–4; ECF 181 at 30. That approach is standard. Courts addressing materially similar conduct—including the

22

courts evaluating Howden and its accomplices' misconduct—have likewise imposed confidentiality restrictions without temporal limitation for the duration of the injunction. *See, e.g.*, ECF 56-77 at 2 (*Parrish*); ECF 137-22 at 2–3 (*Aon*); ECF 137-15 at 3 (*Willis*).

Defendants' arguments are also procedurally improper. Defendants failed to raise any objection to the duration of the restrictions on Howden during the preliminary injunction proceedings and have therefore waived that argument. *See Am. ORT, Inc. v. ORT Israel*, 2009 WL 233950, at *4 (S.D.N.Y. Jan. 22, 2009) (rejecting reconsideration of injunction scope where defendant could have raised narrowing arguments in the original motion). As to confidentiality, Defendants argued at length about scope and duration, and the Court rejected those arguments after receiving full briefing, argument, and revised proposed orders. *See* ECF 175-1 at 3. They cannot relitigate those same issues now. *See Corines*, 769 F. Supp. 2d at 593. Nor may Defendants use this motion to effectively rewrite the contractual provisions the Court has already found likely enforceable. *See* ECF 181 at 12; *see also Diversified Mortg. Invs. v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976) (providing a preliminary injunction "should not be used as a device for creating a new contract between the parties").

In any event, additional temporal limitations would be inappropriate. The Court found "ample" evidence of ongoing harm from Defendants' conduct, including the continuing loss of employees, clients, and Confidential Information. ECF 181 at 26. Allowing Defendants to continue using or retaining Confidential Information would undermine the very protections the injunction was designed to provide—enabling harm that cannot be undone. *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) ("[a] trade secret once lost is, of course, lost forever"). Unlike in *Federal Election Commission v. Furgatch,* where the Ninth Circuit remanded the injunction, in part, because the district court failed to make findings supporting a

23

likelihood of future violations, 869 F.2d 1256, 1262 (9th Cir. 1989), the Court made precisely those findings, concluding that the risk of ongoing harm was well supported by the record. ECF 181 at 26.

Lastly, Defendants' position ignores the purpose of preliminary injunctive relief: to preserve the status quo pending resolution on the merits. *Diversified Mortg. Invs.*, 544 F.2d at 576. The Order does exactly that. It enforces the contractual obligations that governed the parties' conduct before Defendants' raid and prevents further harm pending resolution on the merits.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion to clarify, alter, or amend the preliminary injunction order.

Dated:    April 10, 2026

Respectfully submitted,

 /s/ Harris M. Mufson

Karl G. Nelson*                              Harris M. Mufson
Rachel W. Robertson*                         Lee R. Crain
Brian Richman                                Amanda L. LeSavage
GIBSON, DUNN & CRUTCHER LLP                  GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100                 200 Park Avenue
Dallas, TX 75201                             New York, NY 10166
                                             (212) 351-3805
                                             hmufson@gibsondunn.com

                                             Jason C. Schwartz*
                                             Ryan C. Stewart*
                                             Amanda C. Machin*
                                             Catherine McCaffrey
                                             Nicole Santora
                                             GIBSON, DUNN & CRUTCHER LLP
                                             1700 M Street, NW
                                             Washington, DC 20036

                                             Attorneys for Plaintiffs Marsh McLennan
                                             Companies, Inc., Marsh USA LLC, Mercer (US)
                                             LLC, and Marsh & McLennan Agency LLC

* *pro hac vice*

25

**<u>WORD COUNT CERTIFICATION</u>**

I, Harris M. Mufson, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 and Individual Rule 3.C. that this memorandum complies with the word limit set forth in this Court's Local Civil Rule 7.1 and Individual Rule 3.C. because it contains 7,168 words, excluding the parts of the memorandum exempted from the word limit by Local Civil Rule 7.1.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.


Dated: New York, New York
    April 10, 2026

                                    */s/ Harris M. Mufson*
                                    Harris M. Mufson

26