**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARSH USA LLC, ET AL.,

　　　　　　　　　　Plaintiffs,

　　　v.

GRONOVIUS, ET AL.,

　　　　　　　　　　Defendants.

Case No. 1:25-cv-09130-JLR

**ORAL ARGUMENT**
**REQUESTED**

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO CLARIFY, ALTER,**
**OR AMEND THE PRELIMINARY INJUNCTION ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.     Marsh's Attempts To Avoid The Merits Are Unavailing ........................................2

    II.    The PI Order's Prohibitions Do Not Comply With Rule 65(d) ..............................4

        A.     The PI Order's prohibitions enjoin lawful conduct. ...................................4

        B.     The PI Order's prohibitions are impermissibly vague. ...............................6

    III.   The PI Order's Definition Of Marsh Confidential Information Does Not Comply With Rule 65(d) ...........................................................................................7

        A.     The definition of Marsh Confidential Information requires Defendants to return and remove information they are permitted and/or obligated to retain. ...........................................................................7

        B.     The definition of Marsh Confidential Information does not comply with Rule 65(d)'s specificity requirements. .................................................9

    IV.   The Court Should Clarify That The Restrictions On Howden Expire In July 2026 Or Impose Some Other Reasonable Duration .......................................10

CONCLUSION .......................................................................................................................11

# TABLE OF AUTHORITIES

## CASES:

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011)..................................................................................6, 10, 11

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,
  945 F.3d 83 (2d Cir. 2019).........................................................................................9

*Dewitt Stern Grp., Inc. v. Eisenberg*,
  257 F. Supp. 3d 542 (S.D.N.Y. 2017)......................................................................7, 8

*ExpertConnect, LLC v. Parmar*,
  773 F. App'x 651 (2d Cir. 2019) ...............................................................................9

*Eyewonder, Inc. v. Abraham*,
  293 F. App'x 818 (2d Cir. 2008) ..............................................................................10

*Federal Election Comm'n v. Furgatch*,
  869 F.2d 1256 (9th Cir. 1989) ..................................................................................11

*Genetec, Inc. v. PROS, Inc.*,
  No. 1:20-CV-07959 (JLR), 2024 WL 3374805 (S.D.N.Y. July 11, 2024)................2

*Grossberg v. Lasermedics, Inc.*,
  No. 95-cv-1122 (DC), 1996 WL 153701 (S.D.N.Y. Apr. 3, 1996) ...........................5

*IGT v. High 5 Games, LLC*,
  No. 17-cv-9792 (ALC), 2018 WL 2939032 (S.D.N.Y. Apr. 17, 2018)....................2

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  No. 1:00-1898, 2015 WL 898886 (S.D.N.Y. Mar. 2, 2015).......................................9

*ING Glob. v. United Parcel Serv. Oasis Supply Corp.*,
  757 F.3d 92 (2d Cir. 2014)........................................................................................2

*Jones v. United States Postal Serv.*,
  No. 20-cv-6516 (VM), 2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020) ....................4

*Kumaran v. Kadlec*,
  No. 1:20-cv-3668 (GHW), 2024 WL 3346084 (S.D.N.Y. July 9, 2024) ..................2

*Louis W. Epstein Fam. P'ship v. Kmart Corp.*,
  13 F.3d 762 (3d Cir. 1994).........................................................................................6

*Sigmon, Tr. for Hindin v. Goldman Sachs Mortg. Co.*,
  No. 1:12-cv-03367 (ALC), 2019 WL 970943 (S.D.N.Y. Feb. 28, 2019)..................5

*Union Home Mortg. Corp. v. Cromer*,
  31 F.4th 356 (6th Cir. 2022) ..................................................................................7

*United States v. Litvak*,
  808 F.3d 160 (2d Cir. 2015)....................................................................................3

*United States v. Quintieri*,
  306 F.3d 1217 (2d Cir. 2002)..................................................................................3

*Valdivia v. Schwarzenegger*,
  599 F.3d 984 (9th Cir. 2010) ..................................................................................9

*Waldman Pub. Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994)......................................................................................4

STATUTES:

FLA. STAT.
    § 626.621..................................................................................................................8
    § 626.748...............................................................................................................8, 9

OTHER AUTHORITIES:

FLA. ADMIN. CODE r. 69B-231.110.............................................................................9

FED. R. CIV. P. 65(d) ...................................................................................................10

iv

**PRELIMINARY STATEMENT**

Marsh's opposition to Defendants' motion (the "Motion") is most notable for what it grudgingly concedes—that in various ways, the text of the Court's PI Order fails to comply with Rule 65(d).[1]  Yet despite acknowledging the Order's textual defects, Marsh proceeds to fight vigorously against the basic clarifications needed to satisfy the governing legal standard.

For instance, Marsh *agrees* that the PI Order cannot properly enjoin lawful activity.  Yet rather than consenting to appropriate clarification, Marsh urges a reading of the Order that would *silently* incorporate knowledge and intent requirements.

Similarly, Marsh *agrees* that "obey-the-law" injunctions are impermissible.  But Marsh then fails to address the ways in which the PI Order, as drafted, constitutes just such an injunction.

And Marsh *agrees* that information provided to Defendants by clients (rather than obtained via their employment at Marsh) is not confidential.  Yet Marsh objects to a clarification that would address this issue.

Marsh repeatedly ducks the foregoing and avers that this Court should not reach the merits of these issues.  Marsh is wrong on all counts.  This Court has the power to modify its own injunction to ensure compliance with legal requirements and prevent unwitting contempt, and Marsh's suggestion that Defendants have "waived" arguments regarding the PI Order's overbreadth lacks merit.

Defendants' Motion does not ask this Court to amend the PI Order to anticipate every possible scenario.  Rather, Defendants ask the Court to clarify the PI Order in certain key respects, including to ensure that it does not enjoin lawful conduct between industry competitors, require

---

[1] Capitalized terms that are used but not defined herein shall have the same meanings as in the Motion.

Defendants to "obey the contract" (whether known or unknown) or hew to ambiguous terms, oblige Defendants to remove information they lawfully (and in some cases, are legally required to) possess, or bind any of the Defendants in perpetuity.

Defendants make this Motion in good faith, in an effort to ensure that they can comply with the PI Order. They have worked tirelessly to do so to date, at considerable expense, including by assiduously identifying and returning Marsh Confidential Information, as broadly defined in the PI Order, to the best of their ability. But because the PI Order is extraordinarily expansive and ambiguous as written, its clarification benefits all parties and the Court.

## ARGUMENT

### I. Marsh's Attempts To Avoid The Merits Are Unavailing

The Court is well within its power to reconsider the PI Order and ensure its compliance with Rule 65(d).

Arguing that Defendants' Motion does not meet the standard for reconsideration, Marsh ignores this Court's inherent power to "clarify[] the scope of an injunction ... to prevent 'unwitting contempt.'" *IGT v. High 5 Games, LLC*, No. 17-cv-9792 (ALC), 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018). Moreover, the Motion easily meets Rule 59(e)'s requirements, which "enable a district court to fix any mistakes and thereby perfect its judgment before a possible appeal." *Genetec, Inc. v. PROS, Inc.*, No. 1:20-CV-07959 (JLR), 2024 WL 3374805, at *4 n.3 (S.D.N.Y. July 11, 2024). An injunction that does not comply with Rule 65(d) is clearly erroneous, threatens improvident contempt motions, and should be amended. *See Kumaran v. Kadlec*, No. 1:20-cv-3668 (GHW), 2024 WL 3346084, at *3 (S.D.N.Y. July 9, 2024); *see also ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014). And while Marsh repeatedly claims that the Court cannot reconsider arguments previously raised (even as it also argues that the Court cannot consider arguments that, it claims, were *not* previously raised), it is

2

well within the Court's power to do so if it determines that its original conclusions require clarification or were mistaken.

Marsh's claims of waiver also are without merit. In briefing and at oral argument, Defendants repeatedly argued that Marsh's proposed injunction order was "extraordinarily broad," "loaded with provisions that … [we]re going to invite contempt proceedings," and in violation of Rule 65(d). ECF No. 187, at 221:24-222:18; ECF No. 175, at 2-3. That is more than sufficient for preservation. *See United States v. Litvak*, 808 F.3d 160, 175 n.17 (2d Cir. 2015) (a party "is not limited to the 'precise arguments' he made before the District Court and may submit 'additional support ... for a proposition presented below.'") (ellipsis in original) (citation omitted). In any case, the PI Order was drafted by the Court *after* briefing and hearing was complete, leaving the Motion as Defendants' first opportunity to address its terms. *See United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) ("An issue is not considered waived" if the party did not have "an opportunity ... to raise it.") (citation omitted).

Further, Marsh ultimately identifies just two purportedly waived arguments, *see* Opp. 13, 23, and is wrong on both counts. First, Howden was clear that Marsh's "extraordinarily broad" injunction would put Defendants in an "[im]possible position" to make certain determinations to ensure compliance—directly due, in part, to the proposal's lack of knowledge and intent requirements. ECF No. 187, at 223:9-25. Second, Howden maintained that restrictions should be tied to the time-limited restrictions governing the Individual Defendants and thus did not waive its objection to a perpetual injunction. *See* ECF No. 175, at 3; ECF No. 172-1, at 6.

Finally, Marsh's suggestion that the PI Order "align[s] with the injunctive relief issued by all other courts," Opp. 11, is demonstrably false. Indeed, the *Parrish* case, which Marsh cites for this proposition, did not impose *any* relief against Howden, and Marsh repeatedly assured Judge

3

Daniels that "*[w]e are not asking the Court to enjoin Howden, to do anything in this case.*" ECF No. 56-86, at 111:10-11 (emphasis added). The order in *Alliant* similarly does not enforce non-solicitation obligations against Howden and explicitly states that "*nothing in this Agreed Temporary Injunction shall be interpreted to prohibit ... Defendant Howden or any employee thereof* except [the two individual defendants] *from soliciting any customer, prospective customer, or employee of Alliant.*" ECF No. 170-3, at 2 (emphasis added). In the other three cases Marsh cites, the client-non-solicitation obligations imposed on Howden were much narrower than the PI Order, focusing on the specific individual defendants before the court and the particular employees and clients with whom they worked. *See* ECF No. 137-22, at 3; ECF No. 137-28, at 3; ECF No. 137-15, at 3.

## II.    The PI Order's Prohibitions Do Not Comply With Rule 65(d)

### A.    The PI Order's prohibitions enjoin lawful conduct.

Courts routinely vacate or modify injunctions that enjoin lawful activity. *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785-786 (2d Cir. 1994); *Jones v. United States Postal Serv.*, No. 20-cv-6516 (VM), 2020 WL 6554904, at *8 (S.D.N.Y. Sept. 29, 2020). This Court should clarify that the PI Order does not enjoin lawful activity by making the following modifications: (1) adding knowledge and intent requirements; (2) limiting the PI Order's restrictions to valid contractual provisions; and (3) carving out Personal Clients from the First Prohibition.

As Marsh does not contest, there can be no tortious interference without "knowledge of [the] contract" and "intentional procurement of [its breach]." PI Op. 20. Marsh nonetheless resists adding these knowledge and intent elements to the PI Order. Opp. 13. This approach would leave an injunction that, by its terms, bars any "interference" with any contractual non-solicit provision of any current or former Marsh employee in any location worldwide, whether the contract was

4

known to Defendants or unknown to them, and whether the current or former employee's breach was procured intentionally or inadvertently.  *See* Br. 8-9.  Marsh answers that if Defendants have questions, they should "ask."  *See* Opp. 14.  While Howden willingly asks new hires about any contractual restrictions, they often have incomplete or outdated information.  Howden should not be held strictly liable—and in contempt—for their imperfect knowledge.  In any event, Marsh's suggestion effectively concedes that knowledge and intent requirements are appropriate and should be explicit in the PI Order.

As Marsh also does not dispute, a party cannot tortiously interfere with non-solicitation clauses that are invalid under governing law.  *See Grossberg v. Lasermedics, Inc.*, No. 95-cv-1122 (DC), 1996 WL 153701, at *3 (S.D.N.Y. Apr. 3, 1996); Br. 9.  Marsh's only response—that courts "routinely enforce ... restrictions without geographic limits" (Opp. 15)—is inapposite.  The issue is not whether an otherwise valid provision can restrict activity beyond state limits; it is that a court cannot enjoin parties from interfering with non-solicitation provisions that are *invalid* under governing law.  The PI Order threatens to do just that by barring Howden from "interfering" with the contracts of roughly 90,000 employees in more than 130 countries—without Howden or the Court ever having seen any such agreement—without any carve-out for invalid clauses.

Finally, Marsh does not contest that Personal Clients should be excluded from the First Prohibition yet resists even that minor clarification.  Marsh argues the carve-out can be implied by reading the PI Order "in harmony, not in isolation."  Opp. 15.  When a drafter includes a term in one provision but not another, however, the doctrine of "*expressio unius*" generally "precludes the court from implying it from the general language of the agreement."  *Sigmon, Tr. for Hindin v. Goldman Sachs Mortg. Co.*, No. 1:12-cv-03367 (ALC), 2019 WL 970943, at *3 (S.D.N.Y. Feb. 28, 2019).

### B.    The PI Order's prohibitions are impermissibly vague.

"Obey-the-law" and "obey-the-contract" injunctions are impermissible because they fail to provide "explicit notice of precisely what conduct is" prohibited.  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011); *see also Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994).  March concedes as much but argues that the PI Order is not an "obey-the-law" injunction because it ties its remedy to "specific contractual obligations." Opp. 11-12.  Plaintiffs' position is unsound.  The PI Order proscribes Howden from interfering with "*any*" Marsh contractual obligations concerning "employee or client solicitation or disclosure of confidential information" without notice of those obligations' actual terms, and without Howden or this Court ever having reviewed such contracts.[2]  PI Order 3 (emphasis added); *see* Br. 11.  It is not enough that these unknown and uninterpreted contractual provisions relate to a particular subject matter (non-solicitation).  *See* Br. 12-13.

The PI Order also is impermissibly vague because it employs ambiguous terms like "interfering with" and "participating in," which do not give Howden sufficient notice of what is prohibited.  *See* Br. 13-14.  Marsh's suggestion that such terms are "routinely" used in injunctions (Opp. 16) is inaccurate.  Of the four injunctions Marsh cites, just one—a temporary restraining order agreed to on consent—employs a like term ("interfering").  *See* ECF 137-28, at 3, ¶ 8 (*Brown & Brown*); *compare* ECF No. 137-22, at 2 (*Aon*) (enjoining Howden from "soliciting"); ECF No. 137-15, at 3 (*Willis Towers Watson ("WTW")*) (similar); ECF No. 56-77, at 3 (*Parrish*) (similar).

---

[2] The only contracts before this Court are those of the Individual Defendants, who were employed in Marsh's Florida Zone and whose contracts are governed by New York law.  *See, e.g.*, PI Op. 2, 12; *contra* Opp. 4 n.1.  Marsh utilizes various different contract templates, which are governed by different state laws and contain different terms, so there can be no assumption that terms applicable to the Florida Zone employees apply nationwide.

6

And as noted, the restrictions on Howden in the *Brown & Brown, Aon,* and *WTW* cases are derivative of those of the specific individual defendants before each court.

In defending these ambiguous terms, Marsh tellingly narrows their meaning to nothing more than "solicit." Marsh thus reasons that a former Marsh employee may present about Howden at a conference attended by current Marsh clients without running afoul of the First Prohibition so long as the former employee does not "signal availability" or directly target the clients. Opp. 16-17. If the First Prohibition amounts to nothing more than a bar on Howden soliciting Marsh clients or employees, then it adds nothing to the Second and Third Prohibitions and should be stricken. Otherwise, Howden will be left with "too much 'guesswork'" as to what else "interfering with" or "participating in" the violation of a contract could mean. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 363 (6th Cir. 2022).

### III. The PI Order's Definition Of Marsh Confidential Information Does Not Comply With Rule 65(d)

#### A. The definition of Marsh Confidential Information requires Defendants to return and remove information they are permitted and/or obligated to retain.

A confidentiality agreement cannot restrict disclosure of information that is "readily available through other sources," including information "permissibly obtained from ... clients." *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 582-583 (S.D.N.Y. 2017). Yet Marsh objects to clearly carving out such "client-provided information" from the definition of Marsh Confidential Information, arguing that it "would create a loophole that swallows the rule and invites further misuse." Opp. 21. To the contrary, the carve-out would ensure that the PI Order does not impermissibly enjoin lawful activity. As this Court has acknowledged, confidentiality agreements are "sometimes written quite broadly" to ensure employees do not disclose anything "arguably confidential," but "a court order is ... different." ECF No. 187, at 271:8-12.

7

The definition in Schedule 1 sweeps *anything* client-related into its ambit.  Schedule 1's limitation of confidential information to items that "have been developed, compiled or acquired by [Marsh] at its effort and expense" is no substitute.[3]  Such information may still be "permissibly obtained from" clients and thus cannot be legally restricted by Marsh.  ECF No. 56-3, at 6; *see Dewitt*, 257 F. Supp. 3d at 582-583 ("information regarding clients and accounts" belonged to "clients, not brokers" and could not legally be restricted).

In attempting to comply with the PI Order, Howden has located numerous examples of client-related information that it must retain to fulfill its obligations to clients.  Often, the information was sent to Howden by the clients, or even by Marsh itself.  Nevertheless, Marsh may view this information as having been "acquired" by Marsh at its expense.  Ultimately the definition of Marsh Confidential Information cannot be reconciled with Howden's obligations to the clients that Howden is expressly permitted to service under the PI Order.

Nor can the definition be reconciled with Howden employees' obligations under State law.  Specifically, Florida Statute § 626.748 requires that "[e]very agent transacting any insurance policy must maintain ... for a period of at least 5 years after policy expiration, such records of policies transacted by him or her as to enable the policyholders and department to obtain all necessary information, including daily reports, applications, change endorsements, or documents signed or initialed by the insured concerning such policies."  FLA. STAT. § 626.748.  Destruction of client materials within this retention period exposes Florida-licensed brokers to serious regulatory consequences.  *See, e.g.*, FLA. STAT. § 626.621(2) (authorizing Department of Financial Services to "deny an application for, suspend, revoke, or refuse to renew or continue the license or

---

[3] Nor can this limitation be understood by Defendants, who have no way of knowing what information was acquired at Marsh's expense.

appointment of any ... agent" for "[v]iolation of any provision of this code"); FLA. ADMIN. CODE r. 69B-231.110 (mandating 2-month suspension for violation of section 626.748).

"[P]rinciples of federalism counsel against a federal court's displacing established state law." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 1:00-1898, 2015 WL 898886, at *3 (S.D.N.Y. Mar. 2, 2015). Consequently, "unless a state law is found to violate a federal law, or unless the [i]njunction is found necessary to remedy a constitutional violation," the injunction must yield to State law. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 995 (9th Cir. 2010); *see, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 124 (2d Cir. 2019) (vacating part of injunction that conflicted with State law).

The parties are working to negotiate an agreement on specific documents Howden will retain or remove from its systems, and we anticipate bringing a proposed stipulation to the Court to so-order that process. The parties may also bring specific disputes over the removal of individual documents to the Court. Nevertheless, the PI Order should be clarified to ensure that the definition of Marsh Confidential Information does not improperly enjoin lawful activity by adopting Schedule 1 in full.

**B.     The definition of Marsh Confidential Information does not comply with Rule 65(d)'s specificity requirements.**

Schedule 1 includes a catchall that circularly defines confidential information as "[a]ny information ... considered by the Company or the Company's clients or prospective clients to be confidential." ECF No. 56-28, at 6; *see also* Br. 17-18. That definition does not comply with the Second Circuit's requirement that any injunction prohibiting the use of confidential information "specifically describe the nature of" the confidential information. *ExpertConnect, LLC v. Parmar*, 773 F. App'x 651, 653 (2d Cir. 2019). It is no answer that Schedule 1 elsewhere identifies particular categories of confidential information; those do not limit the catchall and do not always

comply with the Second Circuit's admonition. *See* Opp. 20; Br. 16; ECF No. 56-28, at 6 (non-specifically defining confidential information to include "any and all information in whatever form relating to any client or prospective client of [Marsh]").[4] Nor can Marsh rely on descriptions found in the PI Opinion to fill in missing detail. *Contra* Opp. 20.

Indeed, Marsh's insistence that the PI Order can incorporate terms and meaning by reference is misplaced given the Second Circuit's clear holding that doing so "is expressly prohibited by Rule 65(d)[.]" *Mickalis Pawn Shop*, 645 F.3d at 146; *see* FED. R. CIV. P. 65(d)(1) ("Every order granting an injunction" must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."). Marsh argues that the rule does not apply where parties are familiar with the external document, Opp. 19, but the Second Circuit has "not been so flexible," *Eyewonder, Inc. v. Abraham*, 293 F. App'x 818, 820 (2d Cir. 2008). Addressing similar arguments, the Second Circuit has explained that Rule 65(d)'s restriction is "essential, unless the enjoined party acquiesces to the extrinsic reference," in part because the restriction "serves an additional purpose—facilitating appellate review." *Id.* (citation omitted). In any case, as a non-party to Schedule 1, Howden is not familiar with how its terms are interpreted.

## IV.    The Court Should Clarify That The Restrictions On Howden Expire In July 2026 Or Impose Some Other Reasonable Duration

Marsh provides no reason that the PI Order should enjoin Howden in perpetuity. Marsh claims that "[t]he restrictions on Howden appropriately track the restrictive covenants binding Marsh McLennan employees, which are themselves narrowly limited in duration to one to two years." Opp. 22. But the only covenants before the Court are those covering the seven Individual

---

[4] Marsh could contend that any document that even names a client meets this definition, leaving Howden to parse what information is "generally available" or acquired at Marsh's "expense."

Defendants, who worked in the same Marsh Florida Zone, and whose restrictions are one year in length and governed by New York law. These restrictions all expire, per their terms, in July 2026, one year after the Individual Defendants' July 21 and July 23, 2025 resignations. Marsh has not presented any "two year" covenants to this Court, nor has it presented any contracts governed by any other state's (or country's) law, giving this Court no opportunity to consider the reasonableness or enforceability of such covenants, much less whether they have been violated. *Id.* at 23-24. Most importantly, Marsh does not argue that the Defendants have exhibited the type of "intransigence and hostility" that "would support the inference that [a defendant] will remain likely to violate" its obligations in perpetuity. *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1262 (9th Cir. 1989). Indeed, this Motion belies any such intransigence, representing Defendants' sincere effort to achieve clarity to ensure compliance with the PI Order.

The preliminary injunction (and any permanent injunction) thus must incorporate a reasonable temporal limit. Injunctive relief should be "tailor[ed] … to the scope of the violation found." *Mickalis Pawn Shop*, 645 F.3d at 145. Accordingly, all the PI Order's restrictions, including those related to Marsh Confidential Information, should run no longer than the Individual Defendants' restrictions. *See* PI Op. 4, 24. The Court has made no finding that Howden is likely to solicit Marsh clients or employees in violation of any other restrictive covenant, and Defendants are assiduously returning and removing all Marsh Confidential Information they have identified.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court grant the Motion to Clarify, Alter, or Amend the Preliminary Injunction Order. Defendants also respectfully request that this Court expedite its consideration of the Motion.

11

Dated: April 17, 2026
      New York, New York

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Richard J. Rabin*
Richard J. Rabin
Michael Kahn
Katherine Porter
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
rrabin@akingump.com
mkahn@akingump.com
kporter@akingump.com

Robert G. Lian, Jr. (*pro hac vice admission*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 887-4358
Facsimile:  (202) 887-4288
blian@akingump.com

Laura P. Warrick (*pro hac vice admission*)
2300 N. Field St., Suite 1800
Dallas, TX 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343
lwarrick@akingump.com

*Attorneys for Defendants Howden US Services, LLC and Howden US Specialty, LLC*

**CARLTON FIELDS, P.A.**

By: */s/ Kevin P. McCoy* (*by permission*)
Kevin P. McCoy (admitted pro hac vice)
David R. Wright (admitted pro hac vice)
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33603
Telephone: 813-223-7000
Fax: 813-229-4133
Email: kmccoy@carltonfields.com
      dwright@carltonfields.com

12

Michael L. Yaeger
730 3rd Ave., 19th Fl.
New York, NY 10017
Telephone: 212-785-2577
Fax: 212-785-5203
Email: myaeger@carltonfields.com

Steven J. Brodie
700 NW 1st Avenue, Ste. 1200
Miami, FL 33136
Telephone: 305-539-7302
Fax: 305-530-0055
Email: sbrodie@carltonfields.com

*Attorneys for Defendant Alfred Gronovius*


**DORSEY & WHITNEY LLP**

By: */s/ Jeremy E. Deutsch* (*by permission*)
Jeremy E. Deutsch
Krista E. Bolles
51 West 52nd Street
New York, NY 10019
(212) 415-9238
deutsch.jeremy@dorsey.com
bolles.krista@dorsey.com

-and-

Kathryn A. Johnson (*pro hac vice*)
50 South 6th Street, Suite #1500
Minneapolis, MN 55402
(612) 492-6613
johnson.kate@dorsey.com

*Attorneys for Defendants Andrea Amodeo,
Carlos Serio, Giovanni Perez, Janette
Wilcox, Nathan Collins, and Richard
Lennerth*

13

## CERTIFICATION

I hereby certify that this Reply was produced on a computer using Microsoft Word 365 and does not exceed 3,448 words, as determined by the computer software's word-count function, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, pursuant to Local Civil Rule 7.1(c).


Dated:  April 17, 2026
New York, New York

 _/s/    Richard J. Rabin_
Richard J. Rabin

14