UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARSH & MCLENNAN COMPANIES
INC.; MARSH USA LLC; MERCER (US)
LLC; and MARSH & MCLENNAN
AGENCY LLC,

                        Plaintiffs,

        -against-                                    Case No. 1:25-cv-09130 (JLR)

HOWDEN US SERVICES, LLC; HOWDEN          **OPINION AND ORDER**
US SPECIALTY, LLC; ALFRED
GRONOVIUS; ANDREA AMODEO;
CARLOS SERIO; GIOVANNI PEREZ;
JANETTE WILCOX; NATHAN COLLINS;
and RICHARD LENNERTH,

                        Defendants.

JENNIFER L. ROCHON, United States District Judge:

        Before the Court are four motions: (1) a motion filed by Defendants Alfred Gronovius

("Gronovius"), Andrea Amodeo ("Amodeo"), Carlos Serio ("Serio"), Giovanni Perez ("Perez"),

Janette Wilcox ("Wilcox"), Nathan Collins ("Collins"), Richard Lennerth ("Lennerth")

(collectively, the "Individual Defendants"), Howden US Services, LLC, and Howden US

Specialty, LLC (collectively "Howden" and, together with the Individual Defendants,

"Defendants") to clarify, alter, or amend the Court's February 24, 2026 preliminary injunction

order; (2) a motion filed by Plaintiffs Marsh USA LLC, Marsh & McLennan Companies Inc.,

and Marsh & McLennan Agency LLC (collectively, "Plaintiffs" or "Marsh") for leave to file a

Second Amended Complaint under Federal Rule of Civil Procedure ("Rule") 15; (3) the

Individual Defendants' motion to dismiss the First Amended Complaint pursuant to Rule

12(b)(6); and (4) Howden's motion to dismiss the First Amended Complaint pursuant to Rule

12(b)(6).  For the following reasons, the Court GRANTS in part and DENIES in part the motion

to clarify, alter, or amend the preliminary injunction order, GRANTS Plaintiffs' motion for leave to amend, and DENIES as moot both motions to dismiss.

## BACKGROUND

The Court assumes familiarity with the facts and background of this matter, *see Marsh & McLennan Cos. Inc. v. Howden US Servs., LLC*, No. 25-cv-09130 (JLR), 2026 WL 508603, at *1-3 (S.D.N.Y. Feb. 24, 2026), and recounts only the relevant facts for the present motions.

This action stems from Howden's 2025 acquisition of numerous Marsh employees and clients. Marsh, a retail insurance brokerage, employed the Individual Defendants as part of Marsh's Florida Zone operations. *Id.* at *1. The Individual Defendants agreed in their employment contracts to be bound by a Non-Solicitation Agreement ("NSA"), which prohibited them from soliciting Marsh's clients or employees for twelve months after their employment ended with Marsh, and a Confidentiality Agreement ("CA"), which prohibited the Individual Defendants from disclosing confidential information as defined in Schedule 1 of the CA. *Id.* at *2-3.

In the summer of 2025, Howden, a British-based retail insurance broker, hired several employees, including the Individual Defendants, from Marsh. *Id.* at *3. According to Marsh, it began losing clients and confidential information soon thereafter. *Id.* Marsh asserts that Howden acquired the clients and information in order to build its American retail insurance brokerage business. *Id.*

On November 3, 2025, Marsh commenced this action against the Individual Defendants, alleging that they breached their respective NSAs and CAs and asserting several other state-law claims. Dkt. 1 ("Compl."). Marsh subsequently filed an amended complaint on November 10, 2025, adding Howden as a defendant and bringing claims for violation of the Defend Trade

2

Secrets Act ("DTSA"), 18 U.S.C. § 1836; tortious interference with contract; and other state law causes of action. *See generally* Dkt. 34 ("Am. Compl." or "First Amended Complaint").

Marsh moved for a temporary restraining order ("TRO"), preliminary injunction, and expedited discovery on November 13, 2025. Dkt. 52; Dkt. 53 ("Proposed PI Order"); Dkt. 60 ("PI Br."). The Court denied the requests for a TRO and expedited discovery but scheduled a preliminary injunction hearing for February 12, 2026. *See* Dkt. 78 (denying the TRO and scheduling preliminary injunction hearing); Dkt. 97 (denying motion for expedited discovery). The parties subsequently completed the preliminary injunction briefing. Dkts. 113, 115, 125, 136.

The Court simultaneously set a briefing schedule for the Individual Defendants and Howden to file motions to dismiss. Dkt. 78. The Individual Defendants and Howden moved to dismiss on December 12, 2025. Dkts. 110, 111, 122, 123. Marsh opposed both motions on January 9, 2026, Dkt. 132, and the Individual Defendants replied on January 23, 2026, Dkts. 150, 152.[1]

The Court then held a two-day preliminary injunction hearing (the "PI Hearing") on February 12 and 13, 2026. *See* Dkt. 185 ("2/12/2026 Tr."); Dkt. 187 ("2/13/2026 Tr."). The Court invited supplemental submissions regarding confidentiality restrictions and New York's "personal client" exception. 2/13/26 Tr. at 269:17-274:7; *id.* at 289:5-24. Marsh provided a revised order, Dkt. 172-1; *see also* Dkt. 172, and Defendants responded with their own proposed order, Dkt. 175-1; *see also* Dkts. 173, 174, 175.

---

[1] Gronovius was not initially a moving party but later joined the other Individual Defendants' motion to dismiss. *See* Dkt. 112, 151.

On February 24, 2026, the Court issued an opinion and order, finding that "Marsh is likely to succeed on the merits of its breach of contract claims against the Individual Defendants and its tortious interference with contract claim against Howden." *Marsh & McLennan Cos. Inc.*, 2026 WL 508603, at \*6.  It further held that, absent injunctive relief, Marsh would continue to suffer irreparable harm from the loss of clients, employees, and confidential information, and the balance of hardships and public interest favored granting an injunction. *Id.* at \*11-14. Accordingly, the Court concluded that Marsh "satisfied its burden for [a] prohibitory injunction against Defendants' further solicitation of employees, solicitation and servicing of current and prospective Marsh clients, and misuse of confidential information," *id.* at \*5, and that "Marsh [was] entitled to a mandatory injunction requiring that the Individual Defendants and Howden return all of Marsh's confidential information with a sworn certification," *id.*

After "review[ing] the parties' submissions and consider[ing] all of the arguments presented," *id.* at \*15, the Court entered a preliminary injunction order that accounted for New York's "personal client" exception to NSAs as recognized in *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1225 (N.Y. 1999).  Dkt. 180 ("PI Order") at 3-4.  As for the definition of "Marsh Confidential Information," the Court declined to adopt the parties' proposed definitions, instead opting for the definition of "Confidential Information and Trade Secrets" set forth in Schedule 1 of the CA.  *Id.* at 2-3.

On March 20, 2026, Defendants moved to clarify, alter, or amend the preliminary injunction order pursuant to Rule 59(e) and the Court's inherent power to clarify the scope of an injunction.  Dkt. 193 ("Mot."); Dkt. 194 ("Br.").  Marsh filed an opposition brief on April 10, 2026, Dkt. 214 ("Opp."), and Defendants replied on April 17, 2026, Dkt. 218 ("Reply").

4

On March 30, 2026, Marsh filed a motion for leave to file a Second Amended Complaint. Dkt. 198 ("SAC Mot."); Dkt. 200 ("SAC Br.").  Howden opposed on April 27, 2026, Dkt. 227 ("SAC Opp."); Dkt. 228 ("Porter Decl."), and Marsh replied on May 19, 2026, Dkt. 237 ("SAC Reply"); Dkt. 238 ("Machin Decl.").[2]  The motions are fully briefed.

## DISCUSSION

The Court will first address the Defendants' motion to clarify, alter, or amend the PI Order.  Then, it will turn to Marsh's motion for leave to file a Second Amended Complaint. Lastly, the Court will address Howden's and the Individual Defendants' motions to dismiss.  *See, e.g.*, *GGC Int'l Ltd. v. Ver*, No. 24-cv-01533 (JPC), 2025 WL 81319, at *1 (S.D.N.Y. Jan. 13, 2025) ("When a court is faced with motions to dismiss one complaint and a motion for leave to file an amended complaint, the court may focus first on the motion for leave to amend because granting the motion for leave to amend moots the pending motions to dismiss." (quoting *Cummins, Inc. v. New York Life Ins.*, No. 10-cv-09252 (TPG), 2012 WL 3870308, at *2 (S.D.N.Y. Sept. 6, 2012))).

### I.   Defendants' Motion to Clarify, Alter, or Amend the PI Order

Defendants move to clarify, alter, or amend the PI Order pursuant to Rule 59(e) and the Court's inherent authority to clarify a previously issued injunction.  Specifically, Defendants argue that the PI Order "does not comply with Rule 65(d)" and is too broad such that the

---

[2] Marsh moved to provisionally seal portions of the proposed Second Amended Complaint to allow Defendants an opportunity to request sealing of information that was collected in discovery in a related action, *Marsh USA LLC v. Michael Parrish et al.*, No. 25-cv-06208 (GBD) (GS) (S.D.N.Y.).  Dkt. 197.  Marsh itself did not seek sealing or make any arguments in support of the redactions.  Defendants did not move to seal any portion of the Second Amended Complaint, and Marsh filed an unredacted version of the same on May 19, 2026.  Dkt. 236-1 ("Proposed SAC").  Given that Marsh has filed an unredacted version of its Proposed Second Amended Complaint, and Defendants have not sought to seal the information, the motion to seal at Dkt. 197 is denied as moot.

enjoined parties may unintentionally transcend its bounds.  Br. at 5-6; Reply at 1-2.  Marsh

opposes, arguing that Defendants do not meet their burden under Rule 59(e) and that the PI

Order complies with Rule 65(d).  Opp. at 1.  For the following reasons, the Court largely agrees

with Marsh.

> ### A.    Legal Standards

Rule 59(e) permits a court to "alter or amend" a prior judgment, including a preliminary

injunction.  Fed. R. Civ. P. 59(e); *see also Nw. Nat'l Ins. Co. of Milwaukee, Wisconsin v. Alberts*,

937 F.2d 77, 81 (2d Cir. 1991) ("[T]he interlocutory order granting a preliminary injunction is a

'judgment' . . . 'under Rule 59 to alter or amend the judgment.'" (quoting *McCowan v. Sears,*

*Roebuck & Co.*, 908 F.2d 1099, 1103 (2d Cir. 1990))).  "A motion for reconsideration is an

extraordinary remedy to be employed sparingly in the interests of finality and conservation of

scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695

(S.D.N.Y. 2011); *accord Sigmon v. Goldman Sachs Mortg. Co.*, No. 12-cv-03367 (ALC), 2019

WL 970943, at *1 (S.D.N.Y. Feb. 28, 2019).  "A court may grant a Rule 59(e) motion 'only

when the movant identifies an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice.'" *Metzler Inv. Gmbh*

*v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (alterations adopted) (internal

quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable*

*Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *Am. ORT, Inc. v. ORT Israel*, No. 07-cv-02332 (RJS),

2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009) ("[T]o prevail the moving party must present

'controlling decisions or factual matters that were put before [the court] on the underlying

motion . . . and which, had they been considered, might have reasonably altered the result before

the court,' or otherwise demonstrate 'the need to correct a clear error or prevent manifest

6

injustice.'" (omission and second alteration in original) (quoting *Herschaft v. New York City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283-84 (E.D.N.Y. 2001)).

"It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also United States v. Glob. Bus. Travel Grp., Inc.*, No. 25-cv-00215 (VM), 2025 WL 487619, at *2 (S.D.N.Y. Feb. 13, 2025) ("Reconsideration is generally not warranted 'unless the prior decision is dead wrong.'" (internal quotation marks omitted) (quoting *OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.*, No. 06-cv-09441 (RWS), 2007 WL 2900225, at *1 n.1 (S.D.N.Y. Oct. 4, 2007))).

In addition to Rule 59(e), the Court also has the inherent authority to "issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent unwitting contempt." *Jones v. United States Postal Serv.*, No. 20-cv-06516 (VM), 2020 WL 6554904, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *IGT v. High 5 Games, LLC*, No. 17-cv-09792 (ALC), 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018)); *accord United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 602 F. Supp. 3d 488, 502 (S.D.N.Y. 2022). "Clarifications of previously issued orders 'add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous,' and 'may be obtained on motion or made *sua sponte* by the court.'" *Jones*, 2020 WL 6554904, at *5 (quoting *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)).

Rule 65(d) requires that "[e]very order granting an injunction and every restraining order . . . (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in

7

reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)-(C). The Second Circuit has "interpreted Rule 65(d) as requiring that 'an injunction . . . be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001)); *accord Fed. Trade Comm'n v. Shkreli*, No. 22-728, 2024 WL 1026010, at *3 (2d Cir. Jan. 23, 2024) (summary order). The Court, however, "[is] not required to define unambiguous terms" that can be "given their plain meaning and construed in light of normal usage." *Shkreli*, 2024 WL 1026010, at *3. Nor does Rule 65(d) require the "[C]ourt to resolve every possible inquiry or contingency that an injunction might raise." *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 60 (2d Cir. 2004); *accord Wheel Pros, LLC v. ASR Motorsport, LLC*, No. 25-cv-00929 (NJC) (ARL), 2026 WL 180313, at *31 (E.D.N.Y. Jan. 23, 2026).

### B.    Application

Defendants argue that the PI Order runs afoul of Rule 65(d) and should be clarified, altered, or amended because (1) the injunction improperly restrains Howden's lawful conduct, Br. at 6-14; (2) the Order's definition of confidential information is overbroad and vague as to all Defendants, *id.* at 14-18; and (3) the injunction against Howden lacks reasonable temporal limitations, *id.* at 18-19. The Court addresses each argument in turn.

### 1. *Improper Restraint on Howden's lawful conduct*

Defendants first argue that the Court should clarify, alter, or amend the PI Order's prohibitions against Howden to clarify the prohibited conduct and avoid prohibiting lawful conduct. The PI Order enjoins "Howden, Howden's directors, officers, members, agents,

8

employees, and representatives, and persons in active concert or participation with Howden"

from:

   a.  interfering with or aiding, assisting, inducing, or participating in the violation of any terms of Marsh's current or former employees' contractual obligations to Marsh with respect to employee or client solicitation or disclosure of confidential information;

   b.  soliciting or servicing clients or prospective clients from Marsh, directly or indirectly, through Marsh's current or former employees subject to non-solicitation restrictions that restrict those individuals' ability to solicit those clients — provided that this prohibition shall not apply to Personal Clients or clients that have moved their business to Howden prior to th[e] [PI] Order.

   c.  soliciting employees from Marsh, directly or indirectly, through Marsh's current or former employees subject to non-solicitation restrictions that restrict those individuals' ability to solicit those employees; and

   d.  using, disclosing, retaining, destroying, or otherwise misappropriating any Marsh Confidential Information.

PI Order at 3-4.  Defendants argue that these restrictions restrain lawful conduct because the PI Order (1) does not incorporate knowledge and intent requirements, (2) lacks geographic limits, (3) does not carve out "personal clients" from the first prohibition on interfering with or aiding violations by Marsh, and (4) fails to provide fair notice of Howden's prohibited conduct.  Br. at 7-14.  The Court disagrees.

   As a threshold matter, to the extent that Defendants seek relief under Rule 59(e), they do not meet their burden.  Defendants do not point to any intervening change in law, newly discovered facts, overlooked data, clear error, or manifest injustice that would alter the Court's decision to impose the challenged prohibitions against Howden.  The Court considered the extensive arguments presented in the context of the preliminary injunction application, held a two-day hearing, and issued a lengthy reasoned opinion addressing all the issues raised.  Indeed, Defendants' arguments focus on issues that were raised or could have been raised in the context of the initial application.  *See, e.g.*, *Cortland Line Holdings LLC v. Lieverst*, No. 18-cv-00307

(TJM) (DEP), 2018 WL 10758581, at *2 (N.D.N.Y. June 13, 2018) (finding that plaintiffs'

argument that the "injunction is overly broad" was "unpersuasive as a motion for

reconsideration" since "that argument was available when the Court issued the injunction").

Nor is clarification pursuant to the Court's inherent authority warranted. Defendants

argue that tortious interference with contract requires that a defendant have knowledge of a

contract between the plaintiff and a third-party and intentionally procure a breach of that

contract. Br. at 8. Because the PI Order does not have "any explicit requirement that Howden

know an individual is a current or former Marsh employee restricted by a non-solicitation or

confidentiality agreement or that Howden intentionally procure the employee's breach of that

contract," Defendants assert that Howden is restrained from lawful conduct. *Id.* at 8-9.

However, the Court already found that Howden likely had knowledge of the NSAs and CAs

contained in Marsh's employment contracts. *Marsh & McLennan Cos. Inc.*, 2026 WL 508603,

at *10-11. Considering those findings, and that a preliminary injunction does not need to

"resolve every possible inquiry or contingency that an injunction might raise," *LaForest*, 376

F.3d at 60, the present injunction is appropriate under the circumstances here. *See, e.g.*, *Marsh &*

*McLennan Agency LLC v. Alliant Ins. Servs., Inc.* (*Oldenburg*), No. 25-cv-06936 (RA), 2025

WL 3442819, at *13, *17 (S.D.N.Y. Dec. 1, 2025) (finding plaintiff was likely to show that

defendant had knowledge of the contracts underlying plaintiff's tortious interference with

contract claim and prohibiting defendant from "soliciting or accepting business from clients

covered by the [restrictive covenants]"); *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F.

Supp. 3d 260, 282-83 (E.D.N.Y. 2014) (finding plaintiffs were likely to succeed "under New

York State law for tortious interference with contract" and enjoining defendants from, among

other things, "interfering with any of [plaintiff]'s contracts with its remaining customers").

The Court is also not persuaded by the Defendants' assertion that the PI Order is overbroad because it does not contain geographic limits.  Br. at 9-10.  Marsh did not highlight any jurisdictions outside New York during the preliminary injunction briefing, and the Court has already found that the NSAs are likely enforceable under New York Law.  *See Marsh & McLennan Cos. Inc.*, 2026 WL 508603, at *8 ("[T]he client non-solicitation clauses in the NSA are likely enforceable.").  The Court's injunction here is consistent with those in similar cases.  *See, e.g.*, *Oldenburg*, 2025 WL 3442819, at *17; *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, No. 24-cv-09914 (MKV), 2025 WL 304500, at *10 (S.D.N.Y. Jan. 27, 2025).

Discussing "personal clients" in the first prohibition against Howden is also unnecessary since the PI Order's restrictions on solicitation of Marsh clients include New York's "personal client" exception.  PI Order at 2-4; *see also Marsh & McLennan Cos. Inc.*, 2026 WL 508603, at *15 ("With respect to personal clients, the Court will track the seminal case of *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220 (1999) in including a carve-out from the client non-solicitation restriction for personal clients who came to Marsh solely to avail themselves of the restricted employees' services and only as a result of their own independent recruitment efforts, which Marsh neither subsidized nor otherwise financially supported as part of a program of client development.").  While not specifically referenced in the first prohibition, the "personal client" exception is included in the injunction generally, and personal clients are carved out of the Court's prohibitions.  *See* PI Order at 3.

The cases Defendants rely on are distinguishable.  In *Jones v. United States Postal Service*, *see* Br. at 7, the district court amended its previously issued preliminary injunction requiring USPS to "pre-approve 'all overtime that has been or will be requested for the time period beginning October 26, 2020, and continuing through November 6, 2020.'"  *Jones*, 2020

WL 6554904, at *7 (citation omitted).  The district court intended the relief to prevent USPS from interfering with voting rights by denying overtime requests related to delivering election mail, but the court found that the "provision could be construed to require USPS to approve all overtime requests, regardless of whether the overtime would relate to ensuring the delivery of Election Mail." *Id.*  Similarly, in *Waldman Publishing Corp. v. Landoll, Inc.*, *see* Br. at 8 n.2, the Second Circuit found an injunction to be overbroad because the conduct underlying it related only to the false designation of the books' origin, but the injunction broadly prohibited the defendant "from publishing and selling any books that are substantially similar to [the plaintiffs' books]." *Waldman*, 43 F.3d 775, 785 (2d Cir. 1994).  Unlike in *Jones* and *Waldman*, here, the PI Order's prohibitions against Howden are specific, unambiguous, and narrowly tailored to prohibit Howden's likely unlawful interference with Marsh's NSAs and CAs.

Defendants also argue that the PI Order contravenes Rule 65(d) because it commands Howden not to interfere with an unknown range of provisions in never-seen contracts, Br. at 11-13, and the PI Order employs vague terms such as "interfering," "participating in the violation of," "directly," or "indirectly," *id.* at 13-14.  Neither argument is persuasive.  As to the first argument, the PI Order prohibits Howden from "interfering with or aiding, assisting, inducing, or participating in the violation of any terms of Marsh's current or former employees' *contractual obligations to Marsh with respect to employee or client solicitation or disclosure of confidential information*."  PI Order at 3 (emphasis added).  Thus, the injunction is limited to interference with the Marsh NSAs and CAs.  Regarding the Defendant's second argument, the Court does not agree that "interfering," "participating in the violation of," "directly," or "indirectly," are too vague when read in the context of the PI Order.  Defendants posit hypotheticals and various edge cases, but such speculation and conjecture do not render an order non-compliant with Rule 65(d).

12

*See LaForest*, 376 F.3d at 60 (noting that Rule 65(d) does not require a "court to resolve every possible inquiry or contingency that an injunction might raise"); *Gen. Mills, Inc. v. Chobani, LLC*, No. 16-cv-00058 (DNH), 2016 WL 1639903, at *3 (N.D.N.Y. Apr. 25, 2016) (denying a motion for reconsideration of a preliminary injunction when defendants arguments of vagueness primarily relied on hypotheticals).

The PI Order is distinguishable from the cases cited by Defendants, in which courts vacated injunctions that were untethered from the underlying action or failed to state what conduct was prohibited.  Br. at 11-13; *see Mickalis Pawn Shop, LLC*, 645 F.3d at 144 (vacating injunction requiring defendants to act in "full conformity with applicable laws" and adopt "appropriate prophylactic measures," without identifying which laws applied or "the ways in which the defendants must alter their behaviour to comply with those laws"); *Town of Islip v. E. Air Lines, Inc*, 793 F.2d 79, 83-84 (2d Cir. 1986) (vacating a finding of contempt of a permanent injunction when the district court only stated "permanent injunction granted"); *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 363-64 (6th Cir. 2022) (vacating injunction that broadly prohibited employee from "competing" with his former employer, even though his contract narrowly prohibited employment "in the same or similar capacity"); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 912 F.3d 1054, 1058-59 (7th Cir. 2019) (vacating an injunction when stand-alone injunction order was never entered); *Louis W. Epstein Fam. P'ship v. Kmart Corp.*, 13 F.3d 762, 771-72 (3d Cir. 1994) (remanding injunction to district court when the order barred violations of "any of the terms" of an easement without any further elaboration).  Here, the PI Order specifies the types of conduct that is restricted — "employee or client solicitation or disclosure of confidential information" — and further describes prohibited actions such as "soliciting or servicing clients, through Marsh's current or former employees subject to non-

solicitation restrictions." PI Order at 3. The Court need not clarify or otherwise narrow the scope of the PI Order to comply with Rule 65(d).

### 2. *Confidential Information*

Defendants next claim that the PI Order's definition of "Marsh Confidential Information" should be amended or clarified. Br. at 14-18. The PI Order prohibits Defendants from using, disseminating, or destroying "Marsh Confidential Information" and requires Defendants to "certify that it has conducted a good-faith search for and returned all Marsh Confidential Information with a sworn certification." PI Order at 3-5. "Marsh Confidential Information" is then defined as "the information included in the 'Confidential Information and Trade Secrets' definition set forth in Schedule 1 of the Marsh USA Inc. CA agreed to by each Individual Defendant." *Id.* at 2-3. Defendants argue that the definition of "Marsh Confidential Information" in the PI Order fails to comply with Rule 65(d) because it requires them to return information they believe they lawfully hold and impermissibly refers to an external document. Br. at 14-18. The Court disagrees with Defendants' first argument but agrees with their second argument.

Defendants object that Marsh Confidential Information broadly includes information that the employee "should know is considered by [Marsh] or [Marsh]'s clients or prospective clients to be confidential, sensitive, proprietary, or a trade secret, or is not readily available to the public." *Id.* at 16-17 (quoting Dkt. 56-28 at 6). During the PI hearing, the Court spent time examining Marsh's proposed definition of confidential information and invited the parties to submit revised versions. 2/13/2026 Tr. at 273:9-20. The parties submitted alternative definitions, and, after reviewing the parties' submissions, the Court ultimately decided it would "not use the more expansive or less expansive definitions proposed by the parties in their proposed orders and instead will enforce the definition and restriction that was agreed upon by

14

the Individual Defendants in their CAs." *Marsh & McLennan Cos. Inc.*, 2026 WL 508603, at *15. On this issue, Defendants do not point to any intervening change in law, any facts the Court overlooked, or clear error that would warrant relief under Rule 59(e).

Referencing the contractual definition of confidential information also aligns with the Second Circuit's approach in *IDG USA, LLC v. Schupp*, 416 F. App'x 86 (2d Cir. 2011) (summary order). There, the Second Circuit found that a preliminary injunction that merely "prohibits the disclosure of trade secrets or confidential information, with no additional description of what secrets or confidential information are to be protected, is insufficiently specific to satisfy Rule 65(d)." *Id.* at 88. To resolve this ambiguity, the Second Circuit noted that the district court could adopt the relevant confidentiality agreement's language as "sufficient to satisfy . . . Rule 65(d)." *Id.* at 88-89. The Court here did exactly that, employing the definition of Confidential Information and Trade Secrets to which the Individual Defendants agreed in their employment agreements. Thus, the Court need not revisit the PI Order's definition of Marsh Confidential Information under Rule 59(e) or the Court's inherent authority.

However, the Court agrees with Defendants that the PI Order should be amended to expressly include the contractual definition in the PI Order, rather than incorporate it by reference. Br. at 17-18. Rule 65(d)(1)(C) requires the Court to "describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The Court therefore will revise the PI Order to directly include the contractual language in Schedule 1.

### 3. Temporal Limitations

Lastly, Defendants argue that the Court should impose a "temporal limitation" for all Defendants with respect to the injunctive relief relating to confidential information and "clarify a

'reasonable' duration" for the restrictions on Howden. Br. at 18-19. The Court does not find that such limitation is appropriate here.

To start, Defendants do not meet the standard for relief under Rule 59(e) as to this argument. As Marsh points out, Defendants sought temporal restrictions in their proposed injunction, *see* Opp. at 23; Dkt. 175-1 at 3, which the Court did not include in the final order. Defendants do not point to any intervening change in law, overlooked data, or newly discovered facts that require a temporal restriction for a preliminary injunction. Nor do they demonstrate clear error or manifest injustice. Thus, Defendants are foreclosed from seeking Rule 59(e) relief.

The Court will also not impose temporal limitations pursuant to its inherent authority. Placing time limits on a preliminary injunction can be appropriate where the order seeks to enforce a contract that is itself time limited. *See IDG USA, LLC*, 416 F. App'x at 89 (instructing the district court to amend the preliminary injunction if the "non-compete and non-solicit clauses" which "have a one-year limit" still "remain current"); *ExpertConnect, LLC v. Parmar*, 773 F. App'x 651, 653 (2d Cir. 2019) (summary order) (remanding preliminary injunction with instructions that the court consider whether the confidentiality agreements have temporal limits and narrow the injunction accordingly). Here the NSAs prohibited the Individual Defendants from soliciting Marsh clients and employees for one year after they left Marsh, and that limitation is included in the Court's order. *See Marsh & McLennan Cos. Inc.*, 2026 WL 508603, at *2. The CAs, however, are not time-limited. Imposing temporal restrictions would therefore impermissibly rewrite those contracts. *See IDG USA, LLC*, 416 F. App'x at 89 (noting that the district court, when tailoring the preliminary injunction on remand, did not need to consider temporal restrictions for "non-disclosure clause" because it lacked any contractual time limits).

16

As for Howden, the PI Order is inherently limited because it remains in place only preliminarily until the case concludes. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018) (purpose of a preliminary injunction is to "maintain the status quo pending resolution of the case."); *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977) ("The preliminary injunction was by its very nature interlocutory, tentative and impermanent."); *accord Equiom (Isle of Man) Ltd. v. Smith Elec. Vehicles US Corp.*, No. 15-cv-02337 (RJS), 2015 WL 5547065, at *1 (S.D.N.Y. Sept. 18, 2015). Defendants rely on inapposite cases that pertain to permanent injunctions, not preliminary injunctions. Br. at 19; *see Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1262 (9th Cir. 1989) ("[T]he record does not justify the imposition of a *permanent* injunction." (emphasis added)); *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 745 (10th Cir. 2011) ("[T]he district court issued a *permanent* injunction against all of the defendants." (emphasis added)). A permanent injunction remains binding unless the Court includes temporal restrictions, whereas a preliminary injunction is, by its nature, temporary during the duration of the action. *See Madison Square Garden Boxing, Inc.*, 562 F.2d at 144. Thus, the concerns regarding temporal limits that were considered in *Fugatch* and *Bowers* do not apply here.

*       *       *

Accordingly, the Court will amend the PI Order to incorporate the definition of confidential information contained in Schedule 1 of the CA, but otherwise denies the relief that Defendants request.

## II.    Motion for Leave to File a Second Amended Complaint

The Court now turns to Marsh's motion for leave to file a Second Amended Complaint to add Howden Group Holdings Limited LLC ("Howden UK") as a defendant and assert DTSA and state law claims against it, bolster the factual allegations against Howden, and add factual

17

allegations regarding the Individual Defendants' misuse of confidential information.  SAC Br.;

*see also* Proposed SAC.[3]  Howden, but not the Individual Defendants, oppose the motion,

arguing that Marsh's motion for leave to amend is untimely, unduly prejudicial, and futile.  SAC

Opp. at 7-18.  For the reasons that follow, the Court grants the motion for leave to amend.

### A.       Legal Standard

Rule 15(a) governs amendments to pleadings before trial.  Under Rule 15(a)(1), "[a]

party may amend its pleading once as a matter of course no later than . . . (A) 21 days after

serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(A)-(B).

"[A]ll other" amendments are governed by Rule 15(a)(2), which permits a party to "amend its

pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.

15(a)(2).  Under Rule 15(a)(2), a "court should freely give leave when justice so requires."  *Id.*

When considering whether to grant a party leave to amend, district courts should "hew to the

liberal standard set forth in Rule 15," because there is a "strong preference for resolving disputes

on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d

Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per

curiam)).  Nonetheless, "it is within the sound discretion of the district court to grant or deny

leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to

the opposing party."  *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019)

(omission adopted) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

---

[3] Marsh refiled its proposed Second Amended Complaint in part to fix typographical errors in the original filing, including a mistaken citation to a criminal provision under the DTSA.  Dkt. 236; *see also* Proposed SAC.  Marsh offered Howden an opportunity to amend their opposition, which Howden declined.  *See* Dkt. 236-3.

Where, as here, a plaintiff seeks to add defendants, Rule 21 permits such joinder "at any time, on just terms." Fed. R. Civ. P. 21; *see also Kyle v. Amtrak*, No. 20-cv-05526 (NRB), 2022 WL 1471250, at *2 n.1 (S.D.N.Y. May 10, 2022). "[T]he standard for deciding whether to permit joinder under Rule 21 is 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (quoting *Rush v. Artuz*, No. 00-cv-03436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001)); *accord New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 249 (S.D.N.Y. 2020).

### B.    Application

Howden argues that granting leave to amend to add Howden UK as a defendant and include additional allegations will cause undue delay and undue prejudice, and that such amendment is futile. SAC Opp. at 6-18. The Court is not persuaded.

Starting with undue delay, Howden argues that Marsh could have included the additional factual allegations and Howden UK as a defendant much earlier in this action. *Id.* at 9. This argument is not persuasive for two reasons. First, "[c]ourts typically find that the moving party did not *unduly* delay when leave to amend is sought within the deadline stipulated to by the parties and approved by the Court in a scheduling order." *Ap-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-cv-12084 (VSB) (KHP), 2023 WL 4865617, at *4 (S.D.N.Y. July 31, 2023); *see also Green v. Dist. Council 1707, Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*, No. 13-cv-08671 (PAE), 2015 WL 4621107, at *2 (S.D.N.Y. Aug. 3, 2015) (finding leave to amend would not cause undue delay when defendant "sought leave to amend its [a]nswer within the deadline stipulated to by the parties and approved by the Court in the Civil Case Management Plan and Scheduling Order"). Here, the parties stipulated to, and the Court entered, a Case Management Order that set the deadline to file amended pleadings by March 30, 2026. Dkt. 149.

19

Marsh met that deadline, filing the present motion for leave to amend on March 30, 2026. *See* SAC Mot.

Second, "[s]imply alleging that the plaintiff could have moved to amend earlier . . . is insufficient to demonstrate undue delay." *Agerbrink*, 155 F. Supp. 3d at 452. Only when delay is paired with "bad faith or undue prejudice," may it be considered undue delay warranting denial of leave to amend. *In re Madison Asset LLC*, No. 20-cv-10299 (MKV), 2021 WL 1894032, at *2 (S.D.N.Y. May 11, 2021); *see also Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-cv-11386 (VSB) (KHP), 2023 WL 242721, at *2 (S.D.N.Y. Jan. 18, 2023) ("Mere delay is not a sufficient reason to deny leave to amend; the delay must be 'undue' in the sense that there was some bad faith or prejudice inherent in it." (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008))). Howden makes no showing of bad faith by Marsh, nor would granting leave to amend prejudice Defendants since discovery is still in its early phases, the parties are far from trial, and Defendants have yet to answer. *See, e.g.*, *In re Madison Asset LLC*, 2021 WL 1894032, at *2 (granting leave to amend when the litigation was still in the early phases and defendant made no showing of bad faith by the plaintiff); *Joint Stock Co. v. Infomir LLC*, No. 16-cv-01318 (GBD) (BCM), 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (finding no undue prejudice when "the parties are far from trial" and "no [d]efendant has answered").

Granting leave to amend would not cause undue prejudice. In evaluating whether a party will suffer undue prejudice by an amended pleading, courts consider whether the amendment would, among other things, "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting

20

*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *accord Green*, 2015 WL 4621107, at \*2. Neither condition is present here. Regarding the first condition, "the need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 100 (S.D.N.Y. 2010) (collecting cases); *see also Spectrum Dynamics*, 2023 WL 242721, at \*3 (finding defendant would not be unduly prejudiced by an amendment near the end of fact discovery even though it would "certainly entail additional time and expense for both parties"). The Court does not agree with Howden that adding Howden UK will significantly increase the costs and complexity of discovery. Opp. at 14-15. Howden UK is a closely related entity to the current Howden defendants. Marsh is bringing similar claims against Howden UK, *see* SAC Br. at 1-2; Proposed SAC, and as Howden acknowledges, Marsh is already seeking third-party discovery from Howden UK, *see* SAC Opp. at 14-15.

Granting leave to amend also will not significantly delay the resolution of this case. Defendants have not answered, and permitting amendments that respond to the motions to dismiss before the Court renders its decisions on those motions will best conserve the parties' resources and streamline the litigation since "the usual practice is to grant leave to amend the complaint" when "a motion to dismiss is granted." *In re Madison Asset LLC*, 2021 WL 1894032, at \*2 (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)).

With respect to Howden's final argument, futility, a proposed amendment is futile when "it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Morales v. New York Univ.*, 585 F. Supp. 3d 610, 613 (S.D.N.Y. 2022) (quoting *Long v. Parry*, 679 F. App'x 60, 63 (2d Cir. 2017) (summary order)). "[T]he Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss." *Env't Sols. Assocs. Grp., LLC v. Conopoco Inc.*, No. 20-cv-

21

10699 (MKV), 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021) (quoting *Chubb INA Holdings Inc. v. Chang*, No. 16-2354-BRM-DEA, 2016 WL 6841075, at *6 (D.N.J. Nov. 21, 2016)); *accord Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 24-cv-00744 (JLR), 2024 WL 4635483, at *6 (S.D.N.Y. Oct. 31, 2024).  Indeed, "[w]hen a plaintiff proposes an amendment in response to a motion to dismiss, 'the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave.'"  *Orient Plus*, 2024 WL 4635483, at *2 (quoting *Pecou v. Bessemer Tr. Co.*, No. 22-cv-01019 (MKV), 2022 WL 3646210, at *2 (S.D.N.Y. Aug. 24, 2022)); *accord Conopoco*, 2021 WL 2075586, at *1.  Here, Marsh has identified facts that allegedly bolster its claims against Defendants, including the newly named Howden UK.  Rather than assessing the sufficiency of the allegations on a motion to amend, the Court will address them in the context of the sure-to-be-renewed motions to dismiss.

As such, the Court finds that justice requires granting Marsh leave to file a second amended complaint.  Given this, the pending motions to dismiss are now moot.  *Pecou*, 2022 WL 3646210, at *2-3 (denying pending motions to dismiss as moot when the court "elect[ed] to grant plaintiff leave to amend").  Thus, the Court will dismiss both motions as moot, without prejudice to refiling with respect to the Second Amended Complaint.[4]

---

[4] The parties also argue over the applicability of the current PI Order to Howden UK if it is added to this action.  *See* SAC Br. at 7-8; SAC Opp. at 16-18.  Marsh argues that Howden UK is already bound because it would be acting in concert with the entities enjoined.  SAC Br. at 7-8.  Howden disagrees, contending that Howden UK was not a party to this action and lacked sufficient notice to be bound by the PI Order.  SAC Opp. at 16-18.  This issue, however, is not relevant to deciding whether to grant leave to amend, nor is it ripe since Howden UK has not yet been joined to this litigation.  As such, the Court will not reach this issue at this time.

## CONCLUSION

For the aforementioned reasons, the motion to clarify, alter, or amend the preliminary injunction is GRANTED in part and DENIED in part. The Court will amend the PI Order to incorporate the definition of "Confidential Information and Trade Secrets" contained in Schedule 1 of the CA. Otherwise, Defendants' requested relief is DENIED.

Marsh's motion seeking leave to file a Second Amended Complaint is GRANTED. Marsh shall file its Second Amended Complaint by July 18, 2026.

The motions to dismiss pending at Dkts. 110 and 122 are DISMISSED as moot without prejudice to refile with respect to the Second Amended Complaint.

The motion to seal is denied as MOOT. The Clerk of the Court is respectfully directed to terminate the open motions at Dkts. 110, 122, 193, 197, and 198.

Dated:  June 15, 2026
        New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge

23