UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARSH & MCLENNAN COMPANIES INC., MARSH USA LLC, MERCER (US) LLC, AND MARSH & MCLENNAN AGENCY LLC,

Plaintiffs,

v.

ALFRED GRONOVIUS, ANDREA AMODEO, CARLOS SERIO, GIOVANNI PEREZ, JANETTE WILCOX, NATHAN COLLINS, RICHARD LENNERTH, HOWDEN US SERVICES, LLC, HOWDEN US SPECIALTY, LLC, HOWDEN GROUP HOLDINGS LIMITED,

Defendants.

Case No. 1:25-cv-9130 (JLR)

**Oral Argument Requested**

**DEFENDANT ALFRED GRONOVIUS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Michael L. Yaeger
CARLTON FIELDS, P.A.
730 Third Avenue, 19th Floor
New York, New York 10017
212.380.9623
myaeger@carltonfields.com

Steve Brodie
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Ste. 1200 |
Miami, Florida 33136-4118
Direct: 305.539.7302
sbrodie@carltonfields.com

Kevin P. McCoy
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
813.229.4272
kmccoy@carltonfields.com

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

I. FACTUAL BACKGROUND .......... 2

II. LEGAL STANDARD .......... 4

III. ARGUMENT .......... 4

A. Marsh Fails to State a Claim for Tortious Interference with Business Relationships. .......... 4

1. The claim should be dismissed because Marsh fails to identify the specific client relationships with which Gronovius allegedly interfered. .......... 5

2. The claim should be dismissed because Marsh fails to allege that Gronovius engaged in wrongful means. .......... 6

3. The Claim Is Duplicative of the Breach of Contract Claims. .......... 7

B. The Claim for Civil Conspiracy Should Be Dismissed. .......... 7

1. The conspiracy claim should be dismissed because it is premised upon Marsh's deficient tortious interference claim. .......... 7

2. The conspiracy claim should be dismissed as duplicative of the breach of contract claims. .......... 8

3. The conspiracy claim should be dismissed as Marsh fails to plausibly allege the elements of civil conspiracy .......... 8

C. Marsh's Faithless Servant Claim Should Be Dismissed As Duplicative of Its Breach of Contract Claims. .......... 9

1. Marsh's faithless servant claim fails to show anything Gronoivus allegedly did materially impacted his performance for Marsh. .......... 10

2. Marsh fails to plausibly allege that Gronovius worked with Howden to create a competing business before he resigned. .......... 11

D. The Unfair Competition Claim Should Be Dismissed As Duplicative of the Breach of Contract Claims. .......... 11

E. The Conversion Claim Should Be Dismissed As Duplicative of the Breach of Contract Claims. .......... 12

F. Marsh Fails to Plausibly Allege Claims for Aiding and Abetting Breaches of Fiduciary Duty and the Duty of Loyalty Against Gronovius. .......... 13

1. Marsh Fails to Adequately Allege the Existence of Fiduciary Duties. .......................... 14

2. Marsh fails to adequately allege a breach of duty. ....................................................... 14

3. Marsh fails to plausibly allege that Gronovius knowingly participated in any underlying tortfeasor's breach of duty or that he substantially assisted any such breach. ........................................................................................................ 15

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. NYU Langone Health Sys.*,
731 F. Supp. 3d 616 (S.D.N.Y. 2024) ........ 9

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
No. 07-CV-9694 (LAP), 2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009) ........ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*,
632 F. Supp. 3d 471 (S.D.N.Y. 2022) ........ 5, 6

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004) ........ 6

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.*,
No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114 (S.D.N.Y. Sep. 25, 2024) ........ 13, 14

*DeWitt Stern Grp., Inc. v. Eisenberg*,
257 F. Supp. 3d 542 (S.D.N.Y. 2017) ........ 7

*Ebel v. G/O Media, Inc.*,
No. 20 CIV. 7483 (PAE), 2021 WL 2037867 (S.D.N.Y. May 21, 2021) ........ 10

*EnviroSource, Inc. v. Horsehead Res. Dev. Co.*,
No. 95 Civ. 5106 (AGS), 1996 WL 363091 (S.D.N.Y. June 28, 1996) ........ 5

*Garvey v. Face of Beauty, LLC*,
634 F. Supp. 3d 84 (S.D.N.Y. 2022) ........ 15

*Hemant Patel, M.D., P.C. v. Bandikatla*,
No. 24-1071, 2025 WL 3264679 (2d Cir. Nov. 24, 2025) ........ 14, 15

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) ........ 8

*Marino v. Grupo Mundial Tenedora, S.A.*,
810 F. Supp. 2d 601 (S.D.N.Y. 2011) ........ 14

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017)....................5

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*,
No. 22-CV-09870 (JLR), 2024 WL 477031 (S.D.N.Y. Feb. 7, 2024)....................15

*Plasticware, LLC v. Flint Hills Res.*,
852 F. Supp. 2d 398 (S.D.N.Y. 2012)....................5

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE Ltd.*,
No. 24 CIV. 9305 (VM), 2025 WL 1827274 (S.D.N.Y. July 2, 2025)....................8

*Rather v. CBS Corp.*,
886 N.Y.S.2d 121 (1st Dept. 2009)....................15

*Ray Legal Consulting Grp. v. DiJoseph*,
37 F. Supp. 3d 704 (S.D.N.Y. 2014)....................8

*Roche Freedman LLP v. Cyrulnik*,
703 F. Supp. 3d 404 (S.D.N.Y. 2023)....................8

*Rocket Pharm., Inc. v. Lexeo Therapeutics, Inc.*,
No. 23-cv-9000 (PKC), 2024 WL 3835264 (S.D.N.Y. Aug. 14, 2024)....................12

*Rossetti v Ambulatory Surgery Ctr. of Brooklyn, LLC*,
125 A.D.3d 548 (1st Dep't 2015)....................13

*Sanders v. Madison Square Garden, L.P.*,
2007 WL 1933933 (S.D.N.Y. July 2, 2007)....................10, 11

*Schroeder v. Pinterest Inc.*,
17 N.Y.S.3d 678 (1st Dept. 2015)....................14

*Seagrape Invs. LLC v. Tuzman*,
2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020)....................14, 15

*Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*,
No. 20 CIV. 4210 (AKH), 2021 WL 665031 (S.D.N.Y. Feb. 19, 2021)....................8, 9

*Spotlight Ticket Mgmt. v. Daigle*,
No. 23-CV-10035 (JPO), 2024 WL 3966900 (S.D.N.Y. Aug. 28, 2024)....................7

*Taboola, Inc. v. Ezoic Inc.*,
No. 17 CIV. 9909, 2019 WL 465003 (S.D.N.Y. Feb. 6, 2019)....................7, 16

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Alfred Gronovius ("Gronovius") submits this memorandum of law in support of his Motion to Dismiss in response to the Second Amended Complaint ("SAC") filed by Plaintiffs Marsh & McLennan Companies Inc. ("MMC"), Marsh USA LLC ("Marsh USA"), Mercer (US) LLC ("Mercer") and Marsh & McLennan Agency LLC's ("MMA") (collectively, "Marsh").

**PRELIMINARY STATEMENT**

Gronovius was an at-will employee of Marsh. He elected to leave and join a competitor, Howden, along with a group of other employees he had worked with for many years. Several clients Gronovius had personal relationships with elected to follow his move to Howden. Relying on those core facts, Marsh names Gronovius as a defendant in a barrage of tort claims. But Marsh does not plausibly allege any of those claims. Indeed, as explained below, the conduct that Marsh complains of relates to and is governed by Gronovius's employment agreements. Marsh's efforts to turn those alleged contract breaches into torts should fail.

Marsh alleges that in the days surrounding his resignation on July 21, 2025, Gronovius solicited employees, solicited and serviced clients, accessed and transmitted certain client and prospect files, and deleted some documents from Marsh's systems. Each of these allegations, however, is either expressly tied to the restrictive covenants Gronovius signed, or is an impermissible inference drawn solely from the timing of routine business activity that Gronovius performed in the ordinary course of his client-facing duties while still employed at Marsh. Marsh does not allege that Gronovius engaged in any wrongful means directed at Marsh's clients. Nor does Marsh allege that he owed or breached any duty truly independent of his contracts, or that he possessed actual knowledge of and substantially assisted any other person's breach of fiduciary duty. Marsh's tort claims against Gronovius should therefore be dismissed both because they fail to state a claim, and because they are duplicative of the breach of contract claims Marsh separately

asserts against him. Accordingly, this Court should dismiss Counts IV, V, VI, X, XI, XII, and XIII of the Second Amended Complaint as against Gronovius for tortious interference with business relationships, civil conspiracy, breach of the faithless servant doctrine, unfair competition, conversion, aiding and abetting breach of fiduciary duty, and aiding and abetting a breach of the duty of loyalty.

## I. FACTUAL BACKGROUND

Each of Marsh's claims against Gronovius is premised on the same underlying conduct.

Gronovius was employed by Marsh as a Corporate Segment Team Leader in the Florida Zone. SAC ¶ 24. Marsh alleges that Gronovius, together with certain other individual defendants, breached his restrictive covenant agreement ("NSA") and confidentiality agreement ("CA") with Marsh by purportedly soliciting employees and clients to join Howden and misusing Marsh's confidential information. *See* SAC ¶¶ 182–223.

*Employee Solicitation.* Marsh alleges that "[b]etween July 15 and July 17, 2025, Gronovius spoke repeatedly with several Marsh McLennan employees about leaving Marsh McLennan," including "at least four interactions with a single colleague." SAC ¶ 134. Marsh does not allege the content of any of these conversations or any facts suggesting they were anything other than ordinary conversations among colleagues. Marsh concludes, based solely on the fact that these employees "and multiple others" resigned "shortly thereafter," that Gronovius solicited them. *Id.*

*Client Solicitation and Servicing.* Marsh alleges that on July 22, 2025, Gronovius "called a Marsh McLennan client he had serviced to solicit that account to move to Howden," and that Gronovius later "prepared [Broker of Record Certifications ("BORs")] for several clients using his personal email account." SAC ¶ 144. Marsh does not identify any of these clients by name or describe the nature of Marsh's business relationship with them. Marsh further alleges that "two clients whose files Gronovius accessed on July 20 and 21 2025 BOR'd immediately after

Gronovius resigned," from which Marsh speculates that Gronovius "used the information he accessed ... to solicit them." *Id.*[1] Separately, Marsh alleges that on October 17, 2025—months after the alleged "raid"—Gronovius contacted a former Marsh client *that had already moved its business to Howden*, discussing information the client needed to renew certain insurance programs, which Marsh alleges shows Gronovius "continues to service the client's account" in "violat[ion]" of his NSA's twelve-month client non-servicing restriction. SAC ¶ 147.

*Confidential Information.* Marsh alleges that in the months before his resignation, Gronovius emailed a confidential document from his work account to his personal email, and that in his final days at Marsh he "accessed and printed" client files for two clients that later moved their business to Howden, as well as a compilation of client prospect information. SAC ¶ 150. Marsh concedes that "some of these individual documents were, on their own, accessible to third parties," but baldly asserts that the "unique compilation" of the documents was confidential. SAC ¶ 151. Because Marsh alleges Gronovius "lacked authority or justification" for accessing and transmitting these documents, it concludes "it is reasonable to infer" he used them to benefit Howden. SAC ¶ 150. In other words, Marsh replaces proper allegations with mere speculation.

*Deletion of Documents.* Marsh alleges that on the day of his resignation, Gronovius "accessed and deleted" client files for two Marsh clients who had recently submitted BORs to move their business to Howden. SAC ¶ 163. Marsh does not allege any facts describing what, if anything, was actually lost to Marsh as a result, nor does it Gronovius deprived Marsh of any documents by deleting every copy of any document in Marsh's possession.

All Marsh's tort claims against Gronovius (employee solicitation, client solicitation, and breach of his CA), as well as Marsh's claims for tortious interference with business relationships,

[1] By "BOR'd," we understand Marsh to mean "submitted Broker of Record certifications."

civil conspiracy, breach of the faithless servant doctrine, unfair competition, conversion, aiding and abetting breach of fiduciary duty, and aiding and abetting a breach of the duty of loyalty—are premised on the same alleged underlying conduct. Marsh should proceed under whatever remedies it has, or lacks, in the employment contract governing Gronovius's conduct during his employment. This includes the restrictive covenants applicable to the year following his employment, which have now expired.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not enough for a plaintiff to allege facts that are "merely consistent with" liability; the complaint must "nudge[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 556, 570. Pleadings that "are no more than conclusions ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. ARGUMENT

### A. Marsh Fails to State a Claim for Tortious Interference with Business Relationships.

This Court should dismiss Marsh's tortious interference claim as against Gronovius because Marsh fails to identify any specific client or business relationship with which Gronovius allegedly interfered and fails to allege that he employed any wrongful means beyond his own alleged breach of contract. Also, the claim is duplicative of the breach of contract claims.

To state a claim for tortious interference under New York law, a plaintiff must allege "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 482 (S.D.N.Y. 2022) (citation modified). Marsh fails to allege these elements.

**1. The claim should be dismissed because Marsh fails to identify the specific client relationships with which Gronovius allegedly interfered.**

"[T]o survive a motion to dismiss, a plaintiff must adequately allege[] specific business relationships with which Defendant allegedly interfered." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 535 (E.D.N.Y. 2017) (quotations omitted); *see Plasticware, LLC v. Flint Hills Res.*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) (dismissing claim for failure to "allege[] specific business relationships with which Defendant allegedly interfered," where plaintiff merely claimed interference with unidentified "existing customers").

Marsh alleges that Gronovius solicited an unidentified "Marsh McLennan client he had serviced," SAC ¶ 144, and that "two clients" whose files he accessed later submitted Broker of Record certifications, again without identifying either client, *id.*, Marsh's continued-servicing allegation, SAC ¶ 147, likewise refers only to an unnamed "former client." Marsh never identifies any of these clients or describes the nature of Marsh's business relationships with them. "A general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship will not withstand a motion to dismiss." *EnviroSource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (AGS), 1996 WL 363091, at *14 (S.D.N.Y. June 28, 1996) (quotations and citations omitted). By itself, this is a sufficient basis to dismiss the tortious interference claim. *See Camelot*, 632 F. Supp. 3d at 482–83,

488 ("Courts dismiss tortious interferences claim where a plaintiff fails to 'identif[y a] specific business relationship [ ] with which [the defendant is alleged to have] interfered.'") This is even more problematic here because the name of the client would allow Gronovius to specifically address the "personal client" exception to liability that this Court recognized in its Order dated February 24, 2026. (Dkt. 180, p. 3).

**2. The claim should be dismissed because Marsh fails to allege that Gronovius engaged in wrongful means.**

Marsh's tortious interference claim fails for the additional reason that it does not allege that Gronovius engaged in any wrongful means in allegedly soliciting or servicing clients. Rather, Marsh alleges only that Gronovius breached his contractual obligations to Marsh, which as a matter of law cannot sustain a tortious interference claim. "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91 (2004). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions," but not "persuasion alone," even when knowingly directed at interference with contract. *Id.* at 191 (quotations and citations omitted).

Marsh's own allegations confirm that the alleged conduct underlying its tortious interference claim—the purported soliciting and servicing clients and using client confidential information to do so—is the exact conduct "in violation of [Gronovius's] restrictive covenants." SAC ¶ 302; *see* SAC ¶¶ 196, 199–200 (breach of contract claim based on the identical solicitation and servicing conduct). Because the "crux" of Marsh's allegations is that Gronovius breached his contracts with Marsh, the tortious interference claim should be dismissed. *See Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07-CV-9694 (LAP), 2009 WL 1110783, at *1 (S.D.N.Y.

Apr. 21, 2009); *Spotlight Ticket Mgmt. v. Daigle*, No. 23-CV-10035 (JPO), 2024 WL 3966900, at *10–12 (S.D.N.Y. Aug. 28, 2024) (dismissing tortious interference claim based on alleged breach of fiduciary duty, client solicitation, and disclosure of confidential information).

As for the two clients whose files Gronovius allegedly "accessed" before they "BOR'd," Marsh does not allege that Gronovius solicited them at all—it merely speculates, based on timing alone, that he "used the information he accessed ... to solicit them." SAC ¶ 144. Such guess work is insufficient to allege wrongful means, or indeed any actionable conduct whatsoever. *See Taboola, Inc. v. Ezoic Inc*., No. 17 CIV. 9909, 2019 WL 465003, at *10 (S.D.N.Y. Feb. 6, 2019) ("'[M]ere speculation unsupported by the specific allegations of actual knowledge' is not enough to survive a motion to dismiss a claim of tortious interference with contractual relations"). It is equally plausible that these clients learned Gronovius was leaving and told him they intended to follow him wherever he chose to work, based on their longstanding relationship.

**3. The Claim Is Duplicative of the Breach of Contract Claims.**

The tortious interference claim (Count X) should be dismissed for the additional reason that it is duplicative of Marsh's breach of contract claims. As set forth above, Marsh's tortious interference claim rests on the exact same allegations as its breach of contract claims against Gronovius for soliciting and servicing clients. *Compare* SAC ¶ 302, *with* SAC ¶¶ 196, 199–200. Marsh does not allege that, in purportedly tortiously interfering with Marsh's client relationships, Gronovius breached any duty independent of his NSA. Accordingly, the claim should be dismissed. *See DeWitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 587 (S.D.N.Y. 2017) (dismissing tortious interference claim as duplicative of breach of contract claim).

**B. The Claim for Civil Conspiracy Should Be Dismissed.**

**1. The conspiracy claim should be dismissed because it is premised upon Marsh's deficient tortious interference claim.**

Because the tortious interference with business relations claim against Gronovius is deficient for the reasons explained above, it cannot serve as the basis for a civil conspiracy claim, which must also be dismissed. "[A] civil conspiracy claim should be dismissed if the underlying tort claim either is not adequately pleaded or has been dismissed." *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE Ltd.*, No. 24 CIV. 9305 (VM), 2025 WL 1827274, at *17 (S.D.N.Y. July 2, 2025) (quotations omitted); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). "Under New York law, there is no independent tort for [civil] conspiracy." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 722 (S.D.N.Y. 2014).

**2. The conspiracy claim should be dismissed as duplicative of the breach of contract claims.**

The conspiracy claim also should be dismissed for the additional, independent reason that it is duplicative of the breach of contract claims. The tortious interference claim, and thus the conspiracy claim, are premised on Gronovius's alleged solicitation and servicing of clients, including through the alleged use of confidential information, in alleged breach of his NSA and CA. *See* SAC ¶¶ 144, 147, 150. Because the crux of the conspiracy claim is a breach of contract, it must be dismissed. *See Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*, No. 20 CIV. 4210 (AKH), 2021 WL 665031, at *3 (S.D.N.Y. Feb. 19, 2021); *Roche Freedman LLP v. Cyrulnik*, 703 F. Supp. 3d 404, 425 (S.D.N.Y. 2023) ("[A] breach of contract may not serve as a basis for a civil conspiracy claim").

**3. The conspiracy claim should be dismissed as Marsh fails to \plausibly allege the elements of civil conspiracy.**

The conspiracy claim should be dismissed because Marsh fails to allege plausibly the elements of a civil conspiracy. Indeed, Marsh fails to plead facts to support its legal conclusion that Gronovius entered into an agreement with Howden, the Florida Zone Leaders, and Southern to "unlawfully interfere" with Marsh's relationships and contracts, or that they knowingly

participated in any such plan by converting Marsh's property and misappropriating its trade secrets, SAC ¶¶301-309. *See Abadi v. NYU Langone Health Sys.*, 731 F. Supp. 3d 616, 623 (S.D.N.Y. 2024) (holding conclusory allegations did not support an inference that defendants reached an agreement to achieve an unlawful end); *Spartan Capital*, 2021 WL 665031, at *2–3 (holding plaintiff failed to allege "facts to show an agreement existed between the Defendants or . . . intentional participation in such a plan."). Instead, Marsh simply supposes that because Gronovius was offered a position of employment along with others who left at the same time, he was part of a conspiracy concerning the departures of others besides himself. But that does not a conspiracy make.

### C. Marsh's Faithless Servant Claim Should Be Dismissed As Duplicative of Its Breach of Contract Claims.

Marsh's claim for breach of the faithless servant doctrine should be dismissed because it is duplicative of the breach of contract claims and, as explained in Section III.D and III.E, is also duplicative of the unfair competition and conversion claims.

Marsh alleges that, as a "high-ranking" Florida Zone employee who "acquired confidential [information] and trade secrets relating to Marsh McLennan's business," Gronovius owed fiduciary duties and a duty of loyalty to Marsh. SAC ¶¶ 225–26. Marsh claims that, during his employment, Gronovius breached such duties by purportedly: (i) soliciting employees and clients to join Howden; (ii) improperly accessing and transmitting Marsh's confidential documents and deleting documents; and (iii) working with Howden to build a U.S. business to compete with Marsh. SAC ¶ 228.

But as explained below, a faithless servant claim cannot be made simply because an employee is working for another. *Sanders v. Madison Square Garden, L.P.*, 2007 WL 1933933, at *4 (S.D.N.Y. July 2, 2007). Instead, there must be a showing that the conduct materially affected the employee's

job performance. *Id.* at *4. As other courts have explained, "[a]n employer can recover compensation paid to a faithless servant if it shows (1) that the employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part." *Ebel v. G/O Media, Inc.*, No. 20 CIV. 7483 (PAE), 2021 WL 2037867, at *5 (S.D.N.Y. May 21, 2021) (quotations omitted). "New York courts have applied the faithless-servant doctrine only in the limited circumstances where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Id*. at *17 ("[I]t is important to ensure that this doctrine does 'not stretch so far,' given its severe penalty: forfeiture of an employee's entire salary during the period of faithlessness.").

Marsh's allegations fall short of showing Gronovius was a faithless servant.

**1. Marsh's faithless servant claim fails to show anything Gronoivus allegedly did materially impacted his performance for Marsh.**

Marsh's faithless servant claim as to Gronovius is identical to the three breach of contract claims Marsh brings against him individually. *First*, the claim that Gronovius engaged in faithless servitude by soliciting employees, SAC ¶ 228, is identical to the breach of contract claim that he "individually breached the employee non-solicitation provisions of [his] NSA[] by soliciting other Marsh McLennan employees ... to work for Howden." SAC ¶ 186. *Second*, the claim that Gronovius engaged in faithless servitude by soliciting and servicing clients, SAC ¶ 228, is identical to the breach of contract claim that he "breached the client non-solicitation provisions of [his] NSA[] by soliciting Marsh McLennan's clients ... and transfer[ring] their accounts to Howden" and by "continuing at Howden to service a former client." SAC ¶¶ 199–200. *Third,* the claim that Gronovius engaged in faithless servitude by "improperly access[ing] and transmit[ting] Marsh McLennan's confidential documents," SAC ¶ 228, merely replicates the breach of contract claim

that he "breached [his] CA[] by improperly accessing and transmitting Marsh McLennan's confidential information." SAC ¶ 215. Finally, Marsh fails to plausibly allege that anything Gronovius was doing materially affected his performance of his responsibilities; i.e., the service he provided to clients. Absent such allegations, the Court should follow *Sanders*, 2007 WL 1933933, at *4, and dismiss this claim.

**2. Marsh fails to plausibly allege that Gronovius worked with Howden to create a competing business before he resigned.**

To the extent Marsh claims that Gronovius engaged in faithless servitude by allegedly "work[ing] with [Howden UK] to create" a U.S. business "to directly compete with Marsh" while he was still employed by Marsh, SAC ¶ 228, such claim should be dismissed because it lacks any allegation of fact in support. Marsh devotes nearly thirty paragraphs to allegations concerning Howden UK's communications and coordination with the Florida Zone Leaders and senior MMA leadership regarding the creation of Howden's U.S. business. SAC ¶¶ 99–126, 131–32. Gronovius is not mentioned once in those allegations. Marsh does not allege any facts to suggest there was any communication or coordination whatsoever between Gronovius and Howden UK, much less that he actively worked with Howden UK to create a competing business before he resigned. The only thing Marsh actually alleges is that Gronovius purportedly breached his NSA and CA. *See* SAC ¶¶ 127–128. The faithless servant claim should therefore be dismissed as duplicative of the breach of contract claims.

**D. The Unfair Competition Claim Should Be Dismissed As Duplicative of the Breach of Contract Claims.**

The unfair competition claim should be dismissed as against Gronovius because it, too, is duplicative of the breach of contract claims. To state a claim for unfair competition, a plaintiff must allege that the defendant "unfairly exploit[ed] the skill, expenditures and labors of a competitor" and did so in "an unethical way." *Rocket Pharm., Inc. v. Lexeo Therapeutics, Inc.*, No. 23-cv-9000

(PKC), 2024 WL 3835264, at *8 (S.D.N.Y. Aug. 14, 2024) (quotations omitted). Where "a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim must be dismissed as duplicative of the breach claim." *Id.*

Marsh alleges that Gronovius engaged in unfair competition by (i) soliciting employees and clients to move to Howden, SAC ¶ 233, and (ii) taking and misusing Marsh's confidential information and trade secrets and deleting documents, SAC ¶¶ 234–35. This is the identical alleged conduct underlying the breach of contract claims against Gronovius for solicitation of employees (Count I), solicitation and servicing of clients (Count II), and misuse of confidential information (Count III). Marsh's conclusory assertion that Gronovius and the other individual defendants attempted to "gut" Marsh's business and "port it over to Howden," SAC ¶ 239, is unsupported by any additional facts. Because Marsh does not allege "any acts of unfair competition separate from the acts forming the basis of its [breach of contract and other tort] claims" as to Gronovius, the unfair competition claim should be dismissed as duplicative. *Rocket Pharmaceuticals*, 2024 WL 3835264, at *9.

**E. The Conversion Claim Should Be Dismissed As Duplicative of the Breach of Contract Claims.**

The conversion claim against Gronovius also should be dismissed because it is duplicative of the breach of contract claims and the unfair competition and faithless servant claims. "Under New York law, conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114, *13 (S.D.N.Y. Sep. 25, 2024) (quotations omitted). A plaintiff must show that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over

the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Id.* (quotations omitted).

Marsh alleges that Gronovius "exercised control and dominion" over Marsh's property by "printing Marsh's documents, emailing them outside of Marsh McLennan (including to personal email accounts) ... and by deleting Marsh's documents." SAC ¶¶ 243–44. In so doing, Marsh alleges Gronovius breached his "contractual[] obligat[ion] to return all Marsh McLennan property ... upon the termination of ... employment," SAC ¶ 247, and unlawfully retained it "despite contractual [] obligations to return" it, SAC ¶ 248. Because Marsh's conversion claim rests on the exact same alleged conduct as its breach of contract claim against Gronovius for violation of his CA, it should be dismissed as duplicative. *See Rossetti v Ambulatory Surgery Ctr. of Brooklyn, LLC*, 125 A.D.3d 548, 549 (1st Dep't 2015) (conversion claims "based on the same allegations as underlie the breach of contract claims . . . [and] should be dismissed as duplicative"); *Converged Compliance*, 2024 WL 4665114, at *12, 15.

The conversion claim is especially deficient here because Marsh expressly concedes that Gronovius's duty to return the property at issue stems specifically from his contractual obligations to Marsh. *See* SAC ¶¶ 247–48. Where a contract governs the subject matter of a dispute between the parties, those claims are contractual in nature and cannot be recast as tort claims. *See Converged Compliance*, 2024 WL 4665114, at *12.

### F. Marsh Fails to Plausibly Allege Claims for Aiding and Abetting Breaches of Fiduciary Duty and the Duty of Loyalty Against Gronovius.

This Court should dismiss Marsh's claims for aiding and abetting breach of fiduciary duty and breach of the duty of loyalty as wholly conclusory. Marsh fails to allege who the underlying tortfeasors are, what the specific breaches are, that Gronovius engaged in or aided and abetted any

particular breach, or how he purportedly did so. "[A] claim of aiding and abetting breach of fiduciary duty has three elements: (1) existence of a breach of fiduciary obligations, of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damages as a result of the breach." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011). "[S]ubstantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Seagrape Invs. LLC v. Tuzman*, 2020 WL 5751232, at *22 (S.D.N.Y. Sept. 25, 2020) (citation modified). "[C]onclusory allegations are insufficient." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 689 (1st Dept. 2015).

**1. Marsh Fails to Adequately Allege the Existence of Fiduciary Duties.**

Marsh fails to adequately allege the existence of an underlying duty. The general rule in New York is that employment relationships do not create fiduciary duties. *See* the mere communication of confidential information is not sufficient in and of itself to create a fiduciary relationship between two parties." *Hemant Patel, M.D., P.C. v. Bandikatla*, No. 24-1071, 2025 WL 3264679, at *5 (2d Cir. Nov. 24, 2025); *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dept. 2009). Marsh's assertion that Gronovius owed Marsh fiduciary duties rests solely on the allegation that he "acquired confidential [information] and trade secrets relating to Marsh McLennan's business," SAC ¶ 226, but "the mere communication of confidential information," even in the context of an employment relationship, "is not sufficient" to create a fiduciary relationship. *Hemant Patel*, 2025 WL 3264679, at *5; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *7 (S.D.N.Y. Feb. 7, 2024)

**2. Marsh fails to adequately allege a breach of duty.**

In addition to failing to identify who the alleged underlying tortfeasors are, Marsh does not adequately allege any specific or credible breach of fiduciary duty by Gronovius that anyone else

could have aided and abetted. As set forth above, Marsh fails to adequately state a claim against Gronovius for breach of fiduciary duty, and instead merely alleges that he breached contractual obligations. In *Garvey*, the court explained that "beyond [] general, conclusory statements" the defendants failed to allege "supporting factual allegations to nudge[] their claims across the line from conceivable to plausible." *Garvey v. Face of Beauty, LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022) (quotations omitted). Marsh's claim is deficient for the same reason.

**3. Marsh fails to plausibly allege that Gronovius knowingly participated in any underlying tortfeasor's breach of duty or that he substantially assisted any such breach.**

Marsh fails to plausibly allege that Gronovius possessed actual knowledge of the unspecified breaches by unspecified employees necessary to state an aiding and abetting claim. *See Seagrape Inv'rs LLC*, 2020 WL 5751232, at *22 ("a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty"). Nor does Marsh adequately allege that Gronovius substantially assisted any such breach; the most Marsh alleges is that Gronovius participated in a handful of phone calls with colleagues, SAC ¶ 134, which is plainly insufficient to state a claim. *See Taboola, Inc.*, 2019 WL 465003, at *10. Marsh's aiding and abetting claims against Gronovius therefore should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Alfred Gronovius respectfully requests that the Court dismiss with prejudice Counts IV, V, VI, X, XI, XII, and XIII of the Second Amended Complaint as against him.

Dated: August 14, 2026

Respectfully submitted,

CARLTON FIELDS, P.A.

By: *<u>/s/Kevin P. McCoy</u>*
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
(T): 813.229.4272
(F): 813.229.4113
kmccoy@carltonfields.com

Michael L. Yaeger
730 Third Avenue, 19th Floor
New York, New York 10174
(T): 212.380.9623
(F): 212.785.5203
myaeger@carltonfields.com

Steven J. Brodie
CARLTON FIELDS, P.A.
2 Miami Central
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
(T): 305.539.7302
(F): 305.530.0055
sbrodie@carltonfields.com
*Attorneys for Defendant Alfred Gronovius*

**WORD COUNT CERTIFICATION**

I, Kevin P. McCoy, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 and Individual Rule 3.C. that the foregoing complies with the word limit set forth in this Court's Local Civil Rule 7.1 and Individual Rule 3.C. because it contains 4,725 words, excluding the parts of the memorandum exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: August 14, 2026

*/s/ Kevin P. McCoy*_______________
Kevin P. McCoy