**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

MARSH & McLENNAN COMPANIES, INC., *et al.*,

Plaintiffs,

-against-

HOWDEN GROUP HOLDINGS LIMITED, *et al.*,

Defendants.

----------------------------------------------------------------------X

**25 Civ. 9130 (JLR) (GS)**

**ORDER**

**GARY STEIN, United States Magistrate Judge:**

On September 16, 2026, the Court held a conference on two letter motions seeking to compel discovery: (1) a motion by the Marsh Plaintiffs ("Marsh") to compel the Howden Defendants ("Howden") to produce documents concerning Howden's contemplated acquisition of Risk Strategies and documents concerning Howden's projected U.S. revenues and (2) a motion by Howden to compel Marsh to further identify the asserted trade secrets and information related to the same. (*See* Dkt. Nos. 298, 307, 309, 316). After careful consideration of the parties' arguments, the Court disposes of the motions as set forth below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating what information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (cleaned up).

The party moving to compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Sportvision*, 2022 WL 2817141, at *1.

Federal district courts have broad discretion in ruling on a motion to compel discovery. *See Grand Cent. P'ship. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999); *see also EM Ltd. v. Rep. of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process.").

## DISCUSSION

In brief, this case involves claims of unlawful corporate raiding in the insurance brokerage industry. Marsh alleges that beginning in July 2025, Howden lured away more than 100 Marsh brokers and other employees in violation of non-solicitation and non-compete agreements and misappropriated Marsh clients, confidential information, and trade secrets. (Second Amended Complaint, Dkt. No. 256 ("SAC")). Judge Rochon issued a preliminary injunction in Marsh's favor in February 2026 (Dkt. No. 180) and the case is now in discovery.

### A. Marsh's Motion to Compel

#### 1. Risk Strategies

Marsh has served document requests seeking production of "[a]ll documents and communications" concerning Howden's "planned or contemplated acquisition of Risk Strategies and any financial valuations, due diligence, or other assessments or analyses conducted . . . with respect to the same." (Dkt. No. 298 at 2; *see, e.g.*, Ex. 4, RFP No. 1). As alleged in the SAC, Howden, which is based in the United Kingdom, entered into talks in early 2025 to acquire Risk Strategies, a large U.S. insurance broker, as a way to enter the U.S. market. (SAC ¶ 99). When those talks collapsed in March 2025, Marsh alleges, Howden "turned to plan B": poaching Marsh's employees, clients, confidential information, and goodwill. (*Id.* ¶¶ 99–100).

Howden has declined to produce documents relating to Risk Strategies on the grounds, *inter alia*, that Marsh's request is irrelevant and unproportional. (Dkt. No. 298 Ex. 6 at 7–8; Dkt. No. 309 at 1–2). As discussed in its letter and during the

September 16 conference, Marsh offers two basic theories for why this material is relevant. First, Marsh contends that this material is relevant to liability because it bears on Howden's motive for allegedly raiding Marsh's employees, as an alternative to lawfully entering the U.S. market through an acquisition of Risk Strategies. (Dkt. No. 298 at 2). Second, Marsh contends that the material is relevant to damages because the contemplated Risk Strategies purchase makes a suitable comparator for measuring the value of the employees and clients Howden allegedly took from Marsh. (*Id.*).

At the outset, the Court notes, as it stated during the conference, that Marsh's request for *all* documents and communications concerning the Risk Strategies transaction is plainly overbroad; the majority (and likely the vast majority) of the documents responsive to this request would be entirely irrelevant and disproportionate to the claims and defenses in this action. When the Court raised this concern at the conference, Marsh disclaimed any intention to enforce its request literally. Rather, Marsh stated that at this juncture, it is simply asking the Court to reject Howden's categorical relevance objections to production of Risk Strategies material. Marsh assured the Court that if those objections are overruled, it is prepared to enter into good faith meet and confer discussions with Howden concerning the scope of what should be produced.

The Court agrees with Marsh that documents concerning the Risk Strategies transaction which might shed light on Howden's motive to enter the U.S. market by obtaining employees and clients from Marsh are relevant. For example, documents

that relate to both the Risk Strategies transaction and to Howden's strategy to enter the U.S. market or to hire or recruit Marsh employees would be relevant. While stating that it is willing to produce those documents, Howden also states that it intends to redact from them the information related to Risk Strategies or, at a minimum, "the highly confidential and sensitive portion of such documents related to Risk Strategies." (Dkt. No. 309 at 2; Dkt. No. 298 Ex. 6 at 8). But the very fact that a document contains discussion of both topics suggests a connection between the two that may bear on Howden's motivation for targeting Marsh employees.

In this district, "redactions on grounds of non-responsiveness or irrelevance are generally impermissible, especially where, as here, a confidentiality stipulation and order . . . is in place." *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018); *see John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."); *see also Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2022 WL 1684271, at *1–2 (S.D.N.Y. May 26, 2022) (noting general rule against redactions while noting that exceptions may be made based on "good cause").[1] That rule applies with even greater force here, where there is a significant likelihood that the information Howden seeks to redact *would* be relevant. As a result, there does not appear to be good cause to permit Howden's proposed redactions.

---

[1] Of course, parties are free to enter into their own protocols governing redaction of documents produced in discovery. *See We the Protesters, Inc. v. Sinyangwe*, 348 F.R.D. 175, 178 (S.D.N.Y. 2024).

That Howden claims to be precluded from disclosing such information based on a non-disclosure agreement ("NDA") with Risk Strategies is no obstacle to this discovery. It is well settled that "nondisclosure agreements do not preclude discovery in federal litigation." *Doe v. Benjamin Zaremski M.D., P.C.*, No. 21 Civ. 3187 (ER), 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022); *see also Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18 Civ. 7689 (LB), 2022 WL 1687156, at *2 (N.D. Cal. May 26, 2022) ("[P]arties cannot simply vitiate their discovery obligations by asserting third party privacy rights based on NDAs"). Instead, protective orders, of the kind that exist in this case (Dkt. No. 156), "can be used to maintain confidentiality of information disclosed in discovery." *Doe*, 2022 WL 2966041, at *10 (citing *Perez v. Byrnes*, No. 15 Civ. 93 (FJS) (DJS), 2016 WL 11763718, at *1–2 (N.D.N.Y. Feb. 24, 2016)).[2]

However, the Court finds Marsh's second justification for seeking discovery of the Risk Strategies documents—that they would be relevant in determining damages—unpersuasive. The acquisition of the entire Risk Strategies insurance brokerage, on the one hand, and the recruitment of selected Marsh brokers and employees (even a large number of them) focused in a particular geographic region, on the other hand, are fundamentally different business propositions. The mere fact that the two may have represented alternative ways for Howden to enter the

[2] At the September 16 conference, counsel noted that the parties are preparing an amended protective order to be submitted to the Court. The parties may include specific protections in the amended protective order for information subject to the NDA, to the extent appropriate.

U.S. market does not mean that the value of one is a proxy for the value of the other. Further, even assuming that Howden's valuation of Risk Strategies might yield useful metrics in assessing the value of what Howden has obtained from hiring Marsh employees, such a discovery exercise would likely entail review and production of a significant volume of material out of proportion to the minimal relevance it may have. This proffered explanation therefore does not independently warrant discovery of documents relating to the Risk Strategies transaction.

Accordingly, Marsh is permitted discovery as to Howden's contemplated acquisition of Risk Strategies to the extent such material is relevant to Howden's motive for its recruitment of Marsh employees. The Court will not attempt to delineate here the full metes and bounds of such discovery. The Court anticipates, however, that the production would encompass documents referring to both the Risk Strategies transaction and Marsh (as discussed above) along with high-level documents (*e.g.*, board presentations, management decks, etc.) discussing the basic terms of the deal, the strategic rationale and potential benefits to Howden, and the reasons why the transaction did not go forward. The Court does not anticipate that the production would include documents provided to Howden by Risk Strategies or necessitate a production of emails based on search terms specific to Risk Strategies. But the precise contours of the discovery will need to be hashed out in meet and confer discussions between the parties.

### 2. Projected U.S. Revenues

Marsh also seeks documents sufficient to show Howden's projected revenues in the U.S. through 2028. (Dkt. No. 298 at 3). Howden has agreed to produce such projections, but only those prepared prior to July 21, 2025 (the date Howden hired the Marsh employees) and not those prepared afterwards. (Dkt. No. 309 at 2–3).

Howden suggests that projections for its U.S. business "developed *after* the events at issue in the litigation took place" have no relevance. (*Id.* at 2 (emphasis in original)). That suggestion lacks merit. Marsh is pursuing damages theories based on, *inter alia*, the future profits it was deprived of as a result of Howden's alleged raid of Marsh's employees. (Dkt. No. 298 at 3). Projections of the revenues and profits Howden expects to earn from the activities of those same employees would plainly be relevant to Marsh's lost profits analysis. Indeed, as Marsh notes (Dkt. No. 298 at 3), Howden's post-July 2025 projections, developed after Howden's U.S. operations were up and running, would likely be more relevant than projections created when the business was still a twinkle in Howden's eye.

Howden also objects to this request on the basis that Marsh's former employees and clients make up only a "fraction" of Howden's total U.S. operations. (Dkt. No. 309 at 2). However, at the conference, Howden's counsel estimated that former Marsh employees comprise approximately one-sixth of Howden's total U.S. employees, which is a substantial percentage. Moreover, former Marsh employees seeded the launch of Howden's U.S. operations in July 2025 (SAC ¶¶ 1, 4), and so projections prepared thereafter would have, for some period of time, related to a

business staffed primarily by ex-Marsh personnel. Finally, Marsh claims that the subsequent growth of Howden's U.S. operations was attributable to Howden's initial raiding of Marsh's employees, which may give Marsh a basis for pursuing damages theories predicated on the overall value and profits of Howden's U.S. operations.

For all these reasons, Marsh's requested discovery as to post-July 2025 projections for Howden's U.S. operations seeks material that is relevant and proportional in this case, and such material must therefore be produced.

**B. Howden's Motion to Compel**

Since Marsh alleges that Howden stole Marsh's trade secrets (*see, e.g.*, SAC ¶¶ 2, 12, 16) and asserts causes of action under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* (*see* SAC ¶¶ 250–87), Howden served interrogatories asking Marsh to identify each trade secret that Marsh contends was misappropriated, the measures Marsh has undertaken to protect each trade secret, and the independent economic value attributed to each trade secret. (Dkt. No. 307 at 2 & Ex. 1 (Interrogatory Nos. 7 and 8)). On July 13, 2026, Marsh responded to these interrogatories. (*See id.*). Claiming that Marsh's responses are insufficient, Howden seeks to compel Marsh to supplement its responses to more specifically identify the asserted trade secrets and the information sought related to the trade secrets. (Dkt. No. 307 at 2–3).

Federal courts require trade secrets plaintiffs, during discovery, to identify the alleged trade secrets with "reasonable particularity." *Uni-Sys., LLC v. U.S.*

*Tennis Ass'n*, No. 17 Civ. 147 (KAM) (CLP), 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017). That standard generally requires the plaintiff to "provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Id.* "[T]he strength of the showing sufficient to identify trade secrets with sufficient particularity varies with the facts and stage of the case." *Id.* However, "generic descriptions of categories" are insufficient. *Id.*

Having reviewed Marsh's interrogatory responses, the Court finds that they are sufficient at this stage of the litigation. Marsh's response to Interrogatory No. 7 identifies five different categories of trade secrets, and within each category provides specific information about what it contends constitutes a trade secret and citations to documents reflecting non-exhaustive examples of these trade secrets. (Dkt. No. 307-1 at 5–7). This disclosure "is broken down by trade secret and identifies documents reflecting each trade secret, with narratives pointing Defendants directly to the source of the trade secrets." *Toptal, LLC v. Andela Inc.*, No. 24 Civ. 4027 (JHR), 2024 WL 6913063, at *2 (S.D.N.Y. Sept. 13, 2024) (internal quotations omitted). "The information [it] ha[s] provided informs [D]efendants of the nature of [Plaintiffs'] claims and allows [Defendants] to determine the relevancy of discovery requests." *Uni-Sys.*, 2017 WL 4081904, at *4.

To be sure, Marsh's trade secret designations are extremely broad and, as Howden points out, would appear to encompass vast swaths of business information that may not truly qualify for trade secret protection. But "the requirement of

reasonable particularity 'does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists.'" *Uni-Sys.*, 2017 WL 4081904, at *4 (quoting *Prolifiq Software, Inc. v. Veeva Sys., Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014)); *see also CapRate Events, LLC v. Knobloch*, No. 17 Civ. 5907 (NGG) (SJB), 2018 WL 4378169, at *2 (E.D.N.Y. Mar. 9, 2018) ("[Defendant] appears to be litigating summary judgment or motion to dismiss arguments about whether customer lists can qualify as a trade secret. Such cases do not assist in articulating the standard for what level of specificity is necessary at this [discovery] stage of the case." (internal citations omitted)).

As an example, Marsh identified its "client-specific folders and files" as trade secrets. (Dkt. No. 307-1 at 5). At the conference, Howden objected that these files likely contain client-provided information and even public information that does not belong to Marsh. Marsh countered that the *compilation* of such information together with Marsh's own information, in its view, constitutes a trade secret. Whether or not Marsh's view is correct, it has sufficiently *identified* what it contends to be the trade secret in question—the client files themselves. Howden is in a position to intelligently explore the bases for Marsh's contention in discovery, which is what matters at this point.

Similarly, Marsh's response identifies its compilations of client relationship data, including its lists of clients and other specified categories of client information, as trade secrets and provides citations to documents as non-exhaustive examples.

(Dkt. No. 307-1 at 6). Other than the information provided, "it is not obvious what [Howden] would have [Marsh] do to identify trade secrets in a customer list case." *CapRate Events,* 2018 WL 4378169, at *3. "If the content of the files does not amount to trade secrets, [Howden] may press such an argument at summary judgment." *Id.*

As authority for its position, Howden primarily relies on two cases decided at the summary judgment stage, which dismissed trade secret claims as insufficiently specific. *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008); *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d Cir. 2015). Those cases were not addressing what level of trade secret identification must be provided during discovery and thus are inapposite here. *See Arvinas Operations, Inc. v. Qian*, No. 3:22-CV-00717-RNC, 2024 WL 4834258, at *3 (D. Conn. Nov. 20, 2024) ("The Court finds the cases primarily relied upon by the Accutar Defendants [including, *inter alia*, *Big Vision*] in support of their Motion to be irrelevant, as they concern the particularity of disclosures after completion of discovery, at the summary judgment stage."); *Toptal*, 2024 WL 6913063, at *2 (citing *Sit-Up* and *Big Vision* while commenting that "[p]erhaps more specificity may be required *post-discovery*, when the Court evaluates the merits" (citation omitted and emphasis added)); *CapRate Events,* 2018 WL 4378169, at *2 (rejecting defendant's reliance on *Big Vision* as that case "resolves a trade secret claim at summary judgment and does not involve a discovery motion").

In answering Interrogatory No. 8, Marsh provided a reasonably detailed description of the security measures and other steps it takes to safeguard its confidential information and trade secrets. (Dkt. No. 307-1 at 9–11). Howden objects that Marsh has not specified what measures are taken for *each* trade secret. But it appears likely that the measures described apply, at least in general, to all of the identified trade secrets, and the Court sees little utility in a trade-secret-by-trade-secret breakdown. *See Arvinas Operations,* 2024 WL 4834258, at *4 (rejecting defendants' argument that plaintiff's interrogatory response did not "identify reasonably protective measures for each alleged trade secret" where responses "sufficiently la[id] out [plaintiff's] theory of the case" and "detail[ed] the various [applicable] 'companywide' confidentiality policies, protocols, and agreements").[3]

Finally, the Court notes that Marsh has agreed to supplement its responses to the trade secret interrogatories, and represented during the conference that the supplemental responses will provide more specificity. At the conference, it was represented that depositions in this action related to Marsh's trade secrets are scheduled to begin in the latter part of October 2026. Accordingly, the Court directs that Marsh provide its supplemental responses by Friday, October 2, 2026, so that Howden has sufficient time to incorporate them into its preparation for the depositions. Howden's motion to compel greater specificity, however, is denied.[4]

[3] At the conference, Howden appeared to abandon, or at least did not press, its request for further specificity as to the independent economic value component of Interrogatory No. 8.

[4] In supplementing its responses, Marsh should take into account that, if its witnesses provide further identification of its trade secrets that could have been provided in Marsh's interrogatory

## CONCLUSION

For the reasons given above, Marsh's motion to compel is **GRANTED IN PART** and **DENIED IN PART** and Howden's motion to compel is **DENIED**. The parties shall meet and confer regarding the scope of production of documents relating to Risk Strategies. Marsh shall supplement its responses to Howden's trade secrets interrogatories by no later than October 2, 2026. The Clerk of Court is respectfully directed to close the open motions at Docket Numbers 298, 299, and 307.

**SO ORDERED.**

DATED: New York, New York
September 18, 2026

The Honorable Gary Stein
United States Magistrate Judge

responses, and Howden is unable to ask proper follow-up requests during the depositions, Marsh runs the risk that the witnesses may need to be recalled for further depositions.